Edward W. Ciolko
Joseph H. Meltzer
Peter H. LeVan, Jr.
Joseph A. Weeden
BARROWAY TOPAZ KESSLER
 MELTZER & CHECK, LLP
280 King of Prussia Road
Radnor, PA 19087
 (610) 667-7706

Mark Hanna
MURPHY ANDERSON PLLC
1389 Broad St.
Clifton, NJ 07013
(973) 916-0999

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRUSTEES OF THE LOCAL 464A UNITED FOOD AND COMMERCIAL WORKERS UNION PENSION FUND, TRUSTEES OF THE LOCAL 464A FINAST PENSION FUND, TRUSTEES OF THE LOCAL 464A OFFICERS, BUSINESS REPRESENTATIVES & OFFICE EMPLOYEES RETIREMENT PLAN, TRUSTEES OF THE LOCAL 464A WELFARE AND PENSION BUILDING FUND, and the OFFICERS OF UFCW LOCAL 464A, | CIVIL ACTION NO. |
| Plaintiffs, | **COMPLAINT** |
| v. | |
| WACHOVIA BANK, N.A., EVERGREEN INVESTMENT MANAGEMENT COMPANY, LLC, TATTERSALL ADVISORY GROUP and WELLS FARGO & CO., | **JURY TRIAL DEMANDED** |
| Defendants. | |

## INTRODUCTION

1.      This is an action for equitable relief and damages under ERISA.  Defendants, in violation of their fiduciary duties, have engaged in investment activities that involved improper and undisclosed risk which caused losses to the fixed-income assets of the Plans (defined below).

2.      Specifically, the Plans were victims of a bait-and-switch.  Instead of investing in conservative fixed-income portfolios authorized by Plaintiffs' investment guidelines, Defendants imprudently invested and maintained their investments in speculative non-agency mortgage backed securities (MBSs) and collateralized mortgage obligations (CMOs).

3.      During the relevant time period, as described herein, Defendants managed and were self-acknowledged fiduciaries of the Plans' assets.  Plaintiffs bring this action on behalf of the Plans to recover losses sustained by the Plans as a result of Defendants' unlawful conduct.

## JURISDICTION AND VENUE

4.      This Court has original subject matter jurisdiction over the claims of the ERISA Plaintiffs (described below) pursuant to 28 U.S.C. § 1331 and Section 502(e)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(e)(1).

5.      This Court has supplemental jurisdiction over the claims of the Non-ERISA Plaintiffs (described below) pursuant to 28 U.S.C. § 1367(a), because such claims are so related to the claims of the ERISA Plaintiffs that they form part of the same case or controversy under Article III of the United States Constitution.

6.      Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plans are administered in this district, one or more of Defendants resides or may be found in this district and/or the alleged breach occurred in this district.

## PARTIES

**THE ERISA PLAINTIFFS**

1.      The Local 464A United Food and Commercial Workers Union Pension Fund ("Pension Fund") is a joint-labor-management-sponsored trust fund established for the purpose of providing retirement benefits to members of the Local 464A United Food and Commercial Workers Union (the "Union").  Plaintiff Trustees of the Pension Fund is the governing body of the Pension Fund and is a named fiduciary of the Trust.  Specifically, the Pension Fund is a "multiemployer plan" within the meaning of ERISA § 3(37).  *See* Agreement and Declarations of Trust for the Pension Fund, as modified and/or amended (the "Trust Agreement"), Article V, § 21, attached hereto as Exhibit A. The Pension Fund is the largest of the UFCW Local 464A-sponsored Funds, at one time holding more than $500 million in assets.  The majority of the Pension Fund's assets are managed by Wachovia.

2.      The Local 464A Finast Pension Fund ("Finast Fund") is a joint-labor-management-sponsored trust fund established for the purpose of providing retirement benefits to members of the Union.  Plaintiff Trustees of the Finast Pension Fund is the governing body of the Finast Fund and is a named fiduciary of the Finast Fund.

3.      The Local 464A Officers, Business Representatives and Office Employees Retirement Plan ("Office Staff Plan") is a single-employer ERISA fund established for the purpose of providing retirement benefits to office staff of the Union, the Pension Fund and related entities.  Plaintiff Trustees of the Office Staff Plan is the governing body of the Office Staff Plan and is a named fiduciary of the Office Staff Plan.

4.      Each of these ERISA Plaintiffs are "employee pension benefit plans" as defined by ERISA § 3(2)(A).

5.      The Pension Fund and the Finast Funds are joint labor-management trusts, within the meaning of 29 U.S.C. § 186(c)(5), established to provide retirement and related benefits to Union employees and their families and dependents.

6.      The Pension Fund is administered by trustees consisting of: (a) four trustees appointed by the Union and (b) four trustees appointed by a majority of the Pension Fund's contributing employers.  Trust Agreement, Article IV, § 1(a).  The Finast Fund and the Office Plan are administered in a similar manner with fewer trustees.

7.      Under the trust agreements, the Trustees are authorized to, among other things: (a) enter into all contracts and agreements for carrying out the terms of the Trust Agreement and for the administration of the Funds; and (b) do all acts which the Board deems necessary or proper for the protection of the Funds' assets.  Trust Agreement, Article V, § 3.

8.      Further, the Trustees are specifically authorized to appoint an investment manager who is registered as an investment advisor under the Investment Advisors Act of 1940, is a bank as defined in such Act or is an insurance company qualified to perform services under the laws of more than one state and who has acknowledged its fiduciary status in writing.  Trust Agreement, Article V, § 4.

**THE NON-ERISA PLAINTIFFS**

9.      The Local 464A Welfare and Building Fund ("Building Fund") is a trust governed by state law established to manage the facilities in which the Union, the Pension Fund and other ERISA employee benefit plans sponsored by UFCW Local 464A reside.  Plaintiff Trustees of the Local 464A Welfare and Building Fund is the governing body of the Building Fund, and the Trustees are named common-law fiduciaries.

10.     The Local 464A United Food and Commercial Workers Union (the "Union") is a labor organization within the meaning of 29 U.S.C. § 152(5), representing approximately 20,000 service workers primarily in food and related industries located in New Jersey, New York and a portion of Pennsylvania. The various jobs represented include meat cutting/packing, food manufacturing and processing, cashiers and grocery clerks. Plaintiff Officers of UFCW Local 464A are the governing body of the Union and are common-law fiduciaries of the Union.

11.     The above-described funds are collectively referred to herein as the "Plans."

**DEFENDANTS**

12.     Defendant Wachovia Bank, N.A. ("Wachovia Bank"), a national banking association, was a subsidiary of Wachovia Corp., a Delaware corporation headquartered in Charlotte, North Carolina, prior to the December 31, 2008 merger of Wachovia Corp. with Wells Fargo & Co. ("the merger"). Wachovia Bank provides a wide range of commercial and retail banking and trust services through full-service banking offices throughout the nation.

13.     Defendants Evergreen Investment Management, LLC ("Evergreen") and Tattersall Advisory Group ("Tattersall") were also subsidiaries of Wachovia Corp. prior to the merger. Evergreen is an asset and investment management organization that, through various affiliates and subsidiaries, services millions of investors through a variety of investment products. Tattersall is an investment advisory firm that specializes in fixed-income management and operates as an affiliated sub-advisor of Evergreen. *See* http://www.tagfolio.com; http://www.evergreeninvestments.com.

14.     Wells Fargo & Co. is a Delaware corporation headquartered in San Francisco, California. As described in press release issued by Wells Fargo & Co. on January 1, 2009, pursuant to the merger, effective December 31, 2008, Wells Fargo & Co. "acquired all of

Wachovia Corp. and its businesses and obligations in a stock-for-stock transaction." *See* https://wellsfargo.com/press/2009/20090101_Wachovia_Merger. Wells Fargo & Co. is named as a defendant in this action as successor-in-interest to Wachovia Corp., its businesses and obligations.

15.     Herein, where appropriate by context, the term "Wachovia" refers to all Defendants.

## FACTUAL ALLEGATIONS

**A.    Background**

16.     As further described below, Plaintiffs entered into an investment agreement with First Union Bank, which later became Wachovia Bank.

17.     The agreement called for Wachovia, in its **sole discretion**, to invest the assets of the Plaintiffs.

18.     Wachovia Bank delegated management of the Plans' assets to Evergreen. Evergreen then delegated management of the Pension Fund's fixed-income account to Tattersall. Tattersall directly invested the Pension Fund's assets as an individually managed account, rather than as a mutual fund.

19.     With respect to the fixed-income assets of the Finast Fund, the Office Staff Plan, the Building Fund and the Union, Wachovia invested the fixed-income assets in the Evergreen Core Bond Fund, a mutual fund.

20.     The same Tatersall investment group managed the Pension Fund's fixed-income account and the Evergreen Core Bond Fund, using the same strategies and similar sector allocations.

21.     Through the Investment Agreement, their conduct, and under ERISA and common-law fiduciary principles, each of the Defendants is a fiduciary and owed, and continues to owe, fiduciary duties with respect to their management and oversight of the Plans' assets.

22.     Under the Investment Agreement, Wachovia expressly acknowledged and accepted its status as: (a) a "fiduciary" under section 3(21) of ERISA, to the extent it exercises any discretionary authority and (b) an "investment manager," within the meaning of section 3(38) of ERISA.   *See* Custodial and Investment Management Agreement (the "Investment Agreement), §§ 4.2(a) and 4.4, attached hereto as Exhibit B.

23.     During the relevant time period, the Plans' assets were divided roughly equally between equity and fixed-income accounts, depending on the investment guidelines of each Plan.

24.     The fixed-income portfolios were purportedly designed to track a conservative index, the Lehman Aggregate Bond Index.

25.     Unlike equity portfolios, the primary function of fixed-income portfolios is capital preservation.

26.     All of the materials provided by Defendants to Plaintiffs, including statements provided to Trustees at meetings, provide that the fixed-income portfolios should be measured against the Lehman Aggregate Bond Index.

27.     Further, the materials Defendants provided stated that the strategies and sector breakdowns employed would by-and-large match the conservative Lehman index.

28.     Contrary to Defendants' representations and in contravention of the parties' Investment Agreement, Defendants imprudently caused the fixed-income portfolios to be heavily invested in high-risk non-agency mortgage backed securities (MBSs) and collateralized mortgage obligations (CMOs).   As a result, the Plans' fixed-income portfolios significantly

underperformed the benchmark Lehman index, experiencing large and avoidable losses and creating exposure to future losses.

29.     The overweighting of non-agency MBSs and CMOs, together with the resulting underweighting of corporate bonds, treasuries and government agency securities, resulted in the Plans' fixed-income portfolios having little in common with the sector breakdown of the Lehman Aggregate Bond Index.

30.     By so acting, Defendants breached their fiduciary duties owed to the Plans under ERISA §§ 404(a), 405, 29 U.S.C. §§ 1104(a), 1105, and under common law fiduciary principles.

31.     Specifically, Defendants breached their fiduciary duties by: (a) exposing the Plans' fixed-income portfolios to excessive levels of risk through highly risky and speculative securities and derivatives instead of the stable and conservative investments that are more appropriate for fixed-income portfolios; (b) materially altering the investment strategy for the fixed-income portfolios in a way that was inconsistent with Defendants' prior representations; (c) overweighting the fixed-income portfolios with non-agency MBSs and CMOs such that the fixed-income portfolios were not diversified pursuant to Lehman Aggregate Bond Index and consequently failed to maintain adequate diversification through inclusion of treasuries and agency securities in the portfolios; (d) purchasing additional MSBs and CMOs at a time when prudent investors were not purchasing but in fact were divesting such securities, and (e) generally failing to invest and manage the Plans' fixed-income portfolios in the manner of a reasonably prudent fiduciary acting under similar circumstances.

32.     Plaintiffs bring this action, on behalf of the Plans, to seek restitution of losses and other appropriate relief pursuant to ERISA §§ 409, 502(a)(2) and 502(a)(3), 29 U.S.C. §§ 1109, 1132(a)(2) and 1132(a)(3) and common-law fiduciary principles.

**B.     The Investment Agreement**

33.     Pursuant to the Investment Agreement, Plaintiffs contracted with Wachovia to establish a custodial account (the "Custodial Account") and appoint Wachovia to hold and invest the Plans' assets.[1]

34.     Under the Investment Agreement, Wachovia is obligated to invest and reinvest the principal and income of the Custodial Account in its **sole discretion**, subject to Plaintiffs' established investment guidelines and subject to Wachovia's fiduciary duties.  *See* Investment Agreement, § 2.1.  This includes the power to purchase, retain and sell investments, including bonds, debentures, notes or other evidence of indebtedness, stocks, or other evidence of ownership of a corporation, mutual funds, common or collective trust funds, pooled investment funds and real property.

35.     In return for its services, Wachovia receives compensation, which may be paid directly by the Board or charged against the Custodial Account.

36.     Under the Investment Agreement, Wachovia expressly acknowledged and accepted its status as: (a) a "fiduciary" under section 3(21) of ERISA and (b) an "investment manager," within the meaning of section 3(38) of ERISA.  *See* Investment Agreement, §§ 4.2(a) and 4.4.

37.     Further, pursuant to the Investment Agreement, Wachovia expressly acknowledged that it shall be liable for: (a) any failure to perform its duties in accordance with the applicable fiduciary standards under ERISA and (b) any losses resulting from its negligence, malfeasance or bad faith in performance of its duties.  *See* Investment Agreement, § 4.2(c).

38.     The Pension Fund's Investment Guidelines provided, in part:

---

[1] The original party contracted was First Union National Bank, a subsidiary of First Union Corp.  In September 2001, First Union Corp. and Wachovia Corp. merged.  Following this merger, Wachovia succeeded First Union National Bank as custodian and investment manager under the Investment Agreement.

    a.   The portfolio should be diversified to minimize risk;

    b.   Fixed-income securities must be rated investment grade by at least two of the three primary rating agencies (Moody's, Fitch Ratings and Standard and Poor's); and

    c.   Securities rated BBB must not constitute any more than 10% of the market value of fixed-income assets at time of purchase. . . .

39.    Fixed-income funds are typically regarded by investors as safe—generally, as way to generate a modest return with limited risk and the preservation of capital. Investors typically regard fixed-income funds as being dependable because they limit the level of risk while preserving capital. Typical investments for a fixed-income fund include shorter-term, higher-quality debt instruments that tend to have less risk, such as bonds, certificates of deposit and U.S. Treasury securities.

40.    Tattersall operates as Evergreen's premier U.S. Taxable Fixed Income manager. *See* http://www.tagfolio.com.

41.    Tattersall managed the Pension Fund's fixed-income portfolio and the Evergreen Core Bond Fund.

42.    In documents provided to the Plaintiffs, Tattersall represented that it would:

    a.   follow a "conservative, risk-conscious approach to investing and a quality-oriented style";

    b.   provide value-added performance balanced by risk control;

    c.   avoid issues with strong risk/reward characteristics and avoid those where risk outweighs the reward;

    d.   deliver a portfolio with minimal credit and volatility risk;

     e.   produce consistent value-added performance versus the Lehman Brothers Aggregate Bond Index, without sacrificing credit quality; and

     f.   provide active management based on a disciplined, conservative approach.

    43.    Tattersall used the Lehman Brothers U.S. Aggregate Bond Index—a conservative bond index—as a benchmark index for the fixed-income portfolios.[2]  To a reasonable investor, and in accordance with the Fund's Investment Guidelines, the very selection of that particular Lehman Index as the benchmark for the fixed-income portfolios signaled that the fixed-income portfolios was a low-risk, stable investment with predictable returns.  The selection of this benchmark thus reinforced Defendants' representation that the fixed-income portfolios would follow the Investment Guidelines and abide by ERISA's fiduciary mandates by executing and following a low-risk, conservative investment strategy.

**C.    Defendants Invested Plaintiffs' Fixed-Income Portfolios Imprudently by Concentrating Heavily in Risky Non-agency MBSs and CMOs**

    44.    Rather than comply with ERISA and common-law fiduciary principles, the terms of the Fund's Investment Guidelines, and Defendants' own averments, Defendants chose to invest a substantial portion of the fixed-income portfolio investments in inherently risky mortgage-related financial instruments.  These high-risk (and ultimately illiquid) investments directly exposed the fixed-income portfolios to the volatility of the blighted mortgage market at precisely the time that mortgage loan defaults were skyrocketing and numerous mortgage lenders were facing dire financial conditions.

---

[2] The Lehman Brothers Aggregate Bond Index is a broad-based index composed of securities from the Lehman Brothers Government/Corporate Bond Index, the Mortgage-Backed Securities Index, and the Asset-Backed Securities Index.  This index is presently called the Barclays Aggregate Bond Index following Lehman's bankruptcy in September 2008.

45.     Mortgages are generally sold by lenders to the secondary market, pooled, securitized and sold to investors as mortgage-backed securities.  The value of such securities is thus inextricably tied to the quality of the underlying mortgage loans.

46.     The Plans' exposure to risky non-agency MBSs and CMOs —and, consequently, to the instability of the underlying mortgages—became extremely problematic, as the financial and credit markets experienced severe problems.

47.     As home prices declined and interest rates began to rise in late 2006 and early 2007, the default rates for mortgage loans rose.  Throughout 2007 and 2008, the mortgage and financial crisis continued, with increasingly debilitating effects upon Wall Street investment banks that had gambled upon securities backed by bad loans.  The substantial increase in mortgage loan defaults had a tremendous impact upon the financial market.

48.     As a result, non-agency MBSs and CMOs became illiquid and/or severely devalued as the market for such securities vanished.   The value of the underlying assets plunged, sparking across-the-board downgrades.

49.     As the turmoil within the financial services sector increased, Defendants' imprudent investment of the Plans' assets in risky non-agency MBSs and CMOs caused the fixed-income portfolios to sustain substantial losses.

50.     For instance, in February 2008, the Pension Fund's fixed-income portfolio suffered as non-agency MBSs and CMOs recorded over $2.7 million in unrealized losses and realized $37,000 in losses.  In March 2008, the losses continued, as the fixed-income portfolio's non-agency MBSs and CMOs recorded over $1.8 million in unrealized and $26,000 in realized losses.

51.     The losses continued throughout the summer of 2008.  In June 2008, the Pension Fund's fixed-income portfolio's non-agency MBSs and CMOs recorded over $1.1 million in unrealized and $935,000 in realized losses; in July 2008, the portfolio's non-agency MBSs and CMOs recorded over $4.4 million in unrealized and $472,000 in realized losses; in August 2008, the Pension Fund's fixed-income portfolio's non-agency MBSs and CMOs recorded over $1.9 million in unrealized and $755,000 in realized losses.

52.     As both the Pension Fund's fixed-income portfolio and the Evergreen Core Bond Fund experienced substantial losses, due to their heavy concentration in non-agency MBSs and CMOs and corresponding underweighting of conservative securities, the portfolio's benchmark index remained relatively stable.  As of September 30, 2008, the fixed-income portfolio had lost 11.7% year-to-date; in comparison, its benchmark index, the Lehman Brothers Aggregate Bond Index, gained 0.63% year-to-date.

53.     This divergence from the benchmark's performance was solely due to Defendants' imprudent investment strategy.  For example, as of October 31, 2008, while the Lehman Brothers Aggregate Index—the index the Pension Fund and the Evergreen Core Bond Fund was purportedly designed to track—included approximately 20% of its assets in U.S. Treasury securities, the Pension Fund's fixed-income portfolio held only a small fraction of U.S. Treasury securities. As of November 11, 2008, the portfolio held only 5% of its assets in U.S. Treasuries, while holding 31% in collateralized mortgage obligations.  By contrast, the Lehman Brothers Aggregate Bond Index includes a mix of approximately 22% of U.S. Treasury securities. *See* http://www.lehman.com/fi/indices/.

54.     Rather than focus on conservative investments designed to imitate the performance of the designated benchmark index, and contrary to Defendants' obligations under

ERISA, common law fiduciary principles and the Investment Guidelines, Defendants chose to gamble a substantial amount of the Plans' assets in risky collateralized mortgage obligations or similar vehicles. As of the beginning of 2008, the market value of the fixed-income portfolio's CMOs-obligations was over $113 million. By mid-November 2008, the market value of the fixed-income portfolio's collateralized mortgage obligations had plummeted to approximately $53 million.

55.    The Evergreen Core Bond Fund was similarly imprudently invested in non-agency MBSs and CMOs. As of mid-January 2009, the Evergreen Core Bond Fund was down approximately 30% over the prior 12-month period, whereas the Lehman Aggregate Bond Index was stable.

**D.    Defendants Knew or Should Have Known that the Heavy Concentration of non-agency MBSs and CMOs in Plaintiffs' Fixed-Income Portfolios was Imprudent**

56.    Defendants knew or should have known that the fixed-income portfolios' substantial entrenchment in non-agency MBSs and CMOs was imprudent. Simply put, the mortgage crisis did not occur overnight. Defendants had plenty of warning signs and clearly should have known that such a substantial investment into risky mortgage-backed securities was improper for a fixed-income fund. *See, e.g.,* Vikas Bajaj and Christine Haughney, *Tremors at the Door – More People with Weak Credit Are Defaulting on Mortgages*, N.Y. Times at C1, C4 (Jan. 26, 2007).

57.    The substantial increase in mortgage loan defaults had a tremendous impact upon the mortgage market. During the first half of 2007, dozens of lenders participating in the subprime mortgage market went out of business as defaults and delinquencies on recent loans spiked.

58.    Even as the problems within the mortgage and credit markets came to light, throughout 2007 Defendants actually **increased** the fixed-income portfolio's allocation of non-agency MBSs and CMOs and reduced their positions in conservative investments like treasuries and agency paper.

59.    Certainly as mortgage default rates skyrocketed during 2008, Defendants knew or should have known that their heavy concentration of non-agency MBSs and CMOs in the Pension Fund's fixed-income portfolio was excessively risky and contrary to: (a) the dictates of the Investment Guidelines; (b) Tattersall's representations; and (c) their fiduciary duties under ERISA and common law.  Defendants knew that the Trustees has opted to invest approximately 50% of the Plans' assets in a fixed-income fund—this fact alone should have indicated to Defendants the Trustee's firm commitment to a conservative investment strategy.

60.    Nonetheless, in a letter dated November 3, 2008, from William A. Stokes, director of client management for Evergreen, Evergreen continued to assure the Trustees that its heavy holdings in non-agency MBSs and CMOs continued to "offer substantial value."  *See* Letter dated November 3, 2008, attached hereto as Exhibit C.

61.    In the same letter, Evergreen assured the Trustees that prices in the non-agency residential mortgage-backed securities sector "already reflect the risk of current downgrades and potential principal write-downs," that the recent downgrades of such securities "do not affect the fundamental value of these securities" and that "many buyers of this sector currently disregard ratings." *See Id.*

62.    In short, despite representations regarding the conservative manner in which the fixed-income portfolios would be managed, Defendants imprudently raised the risk associated

with the fixed-income portfolios by investing a substantial portion of the Plans' assets into risky non-agency MBSs and CMOs.

63.     As fiduciaries of the Plans, Defendants were required to discharge their duties with respect to the Plaintiffs solely in the interest of the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and their beneficiaries, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

64.     Further, Defendants were obligated by the Investment Guidelines and by ERISA Section 404(a)(1)(C) to diversify the investment of Plaintiffs' assets so as to minimize risk. However, Defendants failed to do so—resulting in substantial losses to the Plans.

65.     An adequate (or even cursory) investigation by Defendants would have revealed to a reasonable fiduciary that their substantial investment of the fixed-income portfolios' assets in non-agency MBSs and CMOs was an imprudent investment of the Plans' assets.  A prudent fiduciary acting under similar circumstances would have acted to protect participants and beneficiaries against unnecessary losses and would have made different decisions.

66.     Because Defendants knew or should have known that their substantial investment of the fixed-income portfolios' assets in non-agency MBSs and CMOs was an imprudent investment of the Plans' assets, they had an obligation to protect the Plans from unreasonable and entirely predictable losses incurred as a result of Defendants' mismanagement of the Plans' fixed-income portfolios, yet they failed to do so.

**E.       Defendants Undertook Only Belated Efforts to Stop the Bleeding**

67.     In December 2008, Wachovia's Investment Committee fired the Tattersall Fixed Income Manager because of poor performance and transferred responsibility for managing the assets of the Pension Fund to the Offit Strategies Team.

68.     The Offit Strategies Team is another fixed-income investment arm of Wachovia that did not make risky investments in non-agency MBSs and CMOs and likewise did not suffer needless losses.  Instead, funds managed by the Offit Strategies Team actually matched or exceeded the quality of the Lehman Aggregate Bond Index.

69.     In what is likely to make the Plans' paper losses realized losses, the Offit Strategies Team is reviewing the entire Pension Fund portfolio and is liquidating many assets, including the toxic non-agency MBSs and CMOs.  These actions will cause the Plans' paper losses to be fully realized.

70.     Likewise, in December 2008, Wachovia liquidated the Evergreen Core Bond Funds of the Finast Plan, the Office Plan, the Building Fund and the Union and replaced the mutual fund with the PIMCO Total Return Fund, another mutual fund.

71.     Like the Offit Strategies Team, the performance, sector weightings and strategy of the PIMCO Total Return Fund mirrors or exceeds the quality of the Lehman Aggregate Bond Index.

72.     Wachovia's decision to finally change strategy and provide the Plans what Plaintiffs thought they were investing in from the beginning -- a conservative Lehman Aggregate Bond Index-like fixed-income fund --came much too late and failed to remediate the unlawful actions and consequential losses caused by Tattersall.

73.     As of mid-January 2009, approximately 30% of the value of the Plans' fixed-income portfolios was eliminated, whereas the Lehman Aggregate Bond Index was stable.

## CLAIMS FOR RELIEF UNDER ERISA AND
## COMMON LAW FIDUCIARY PRINCIPLES

74.     At all relevant times, Defendants were and acted as fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  The fiduciary principles dictated by ERISA are based on and are similar to those of the common law.

75.     ERISA § 502(a)(2), 29 U.S.C. §1132(a)(2), provides, in pertinent part, that a civil action may be brought by a participant for relief under ERISA § 409, 29 U.S.C. §1109.

76.     ERISA § 409(a), 29 U.S.C. §1109(a), entitled "Liability for Breach of Fiduciary Duty," provides, in pertinent part, that any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by ERISA shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

77.     ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B), provides, in pertinent part, that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and their beneficiaries, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

78.     These fiduciary duties under ERISA §§ 404(a)(1)(A) and (B) are referred to as the duties of loyalty, exclusive purpose and prudence, and are the "highest known to the law." They entail, among other things:

    (a)    The duty to conduct an independent and thorough investigation into, and continually to monitor, the merits of a plan's investments;

    (b)    A duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves; and

    (c)    A duty to disclose and inform, which encompasses: (1) a negative duty not to misinform; (2) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (3) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries.

79.     ERISA § 405(a), 29 U.S.C. § 1105 (a), entitled "Liability for breach by co-fiduciary," provides, in pertinent part, that:

> [I]n addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (A) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (B) if, by his failure to comply with section 404(a)(1), 29 U.S.C. § 1104(a)(1), in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (C) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

80.     Plaintiffs bring this action under the authority of ERISA § 502(a) and common law fiduciary principles to recover losses arising out of the breaches of fiduciary duties by the Defendants for violations under ERISA §§ 404(a)(1) and 405(a) and the common law.

**COUNT I**
**FAILURE TO PRUDENTLY AND LOYALLY MANAGE PLAINTIFFS' ASSETS**
**(BREACHES OF FIDUCIARY DUTIES IN VIOLATION OF**
**ERISA §§ 404 AND 405)**

81.     The ERISA Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

82.     In Section 4.4 of the Investment Agreement, Wachovia acknowledged its status as an "Investment Manager," within the meaning of ERISA § 3(38), 29 U.S.C. § 1002(38), with respect to the Plans' assets to the extent that it exercised discretionary authority.

83.     Under ERISA fiduciary principles, fiduciaries who exercise discretionary authority or control over management of a plan or disposition of a plan's assets are responsible for ensuring that assets within the plan are prudently invested.  Pursuant to Section 2.1 of the Investment Agreement, Defendants exercised discretionary authority over the investment of the Plans' assets.

84.     Further, a fiduciary's duty of loyalty and prudence requires it to disregard plan documents or directives that it knows or reasonably should know would lead to an imprudent result or would otherwise harm plan participants or beneficiaries. ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).  Thus, a fiduciary may not blindly follow plan documents or directives that would lead to an imprudent result or that would harm plan participants or beneficiaries, nor may it allow others, including those whom they direct or who are directed by the plan, to do so.

85.     Defendants were not only obligated to ensure that all investments were consistent initially with the conservative investment guidelines established for the fixed-income portfolios,

including the diversification requirements, but also were required to continuously monitor all investments to ensure that such investments remained prudent throughout the period of the investment. *See, e.g.*, *Defelice v. U.S. Airways, Inc.*, 497 F.3d 410, 423 (4th Cir. 2007) (a fiduciary must continually monitor investment alternatives for plan assets); *Harley v. Minnesota Mining and Mfg. Co.*, 42 F. Supp. 2d 898, 906 (D. Minn. 1999) ("Once the investment is made, a fiduciary has an ongoing duty to monitor investments with reasonable diligence and remove plan assets from an investment that is improper.").

86.   Regardless of the whether the non-agency MBSs and CMOs were prudent investments at the time of purchase, if, over time, such investments became imprudent due to their excessive risk and/or the inadequate level of diversification within the fixed-income portfolios, Defendants were obligated to take action to protect the Plans' assets.

87.   Defendants breached their duties to prudently and loyally manage Plans' assets. As described herein, Defendants knew or should have known that the substantial investment in risky MBSs and CMOs in the fixed-income portfolio program was not a proper investment of the Plans' assets; however, Defendants failed to adequately protect the Plans from the inevitable losses that they knew or should have known would ensue.

88.   Defendants breached their fiduciary duties by, among other things: (a) exposing the Plans' fixed-income portfolios to excessive levels of risk through highly risky and speculative securities and derivatives instead of the stable and conservative investments that are appropriate for fixed-income portfolios; (b) materially altering the investment strategy for the fixed-income portfolios in a way that was inconsistent with Defendants' prior representations; (c) overweighting the fixed-income portfolios with non-agency MBSs and CMOs such that the fixed-income portfolios were not diversified pursuant to standard Lehman Aggregate Bond indexes and

consequently failing to adequately maintain diversification through inclusion of corporate bonds, treasuries and agency securities in the portfolios; (d) purchasing additional non-agency MBSs and CMOs at a time when prudent investors were selling such securities; (e) generally failing to invest and manage the Plans' fixed-income portfolios in the manner of a reasonably prudent fiduciary acting under similar circumstances; and (f) failing to comply with applicable law.

89.     Defendants further breached their duties of loyalty and prudence by failing to provide complete and accurate information regarding the true level of risk associated with their investment strategy for the Plans' fixed-income portfolios.  Defendants failed to adequately disclose negative material information concerning their management of the Plans' fixed-income portfolios.  Defendants bore sole responsibility for investing the assets of the fixed income portfolios and were obligated to ensure that the Plans' assets were prudently invested.

90.     Defendants also breached their co-fiduciary obligations by, among their other failures: knowingly participating in, or knowingly undertaking to conceal, the other Defendants' imprudent management of the Plans' fixed-income portfolios.  Each Defendant: (a) knowingly participated in the conduct of the other Defendants; and (b) by its failure to comply with its fiduciary duties under Section 404(a)(1) of ERISA, enabled the other Defendants to breach their fiduciary duties; and (c) had knowledge of the breaches by the other Defendants, yet failed to make reasonable efforts to remedy such breaches.

91.     As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plans lost a significant portion of their assets.

92.     Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409(a), 29 U.S.C. § 1109(a), Defendants are liable to restore the losses to the Plans.

## COUNT II
### FAILURE TO ADEQUATELY MONITOR OTHER FIDUCIARIES
### (BREACHES OF FIDUCIARY DUTIES IN VIOLATION OF ERISA § 404
### BY WACHOVIA BANK)

93.     The ERISA Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

94.     At all relevant times, as alleged above, Wachovia Bank was a "fiduciary" within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

95.      Wachovia Bank's fiduciary duties included the responsibility to appoint, evaluate, and monitor other fiduciaries, including, without limitation, Evergreen and Tattersall.

96.     Wachovia Bank breached its duty to monitor other fiduciaries of the Plans, including Evergreen and Tattersall.  As described herein, Wachovia Bank knew or should have known that Evergreen and Tattersall were exposing the Plans' fixed-income portfolios to excessive levels of risk and materially altering the investment strategy for the  Plaintiffs' fixed-income portfolios in a way that was inconsistent with Defendants' prior representations.  As a monitoring fiduciary, Wachovia Bank was responsible for ensuring that Evergreen and Tattersall invested and managed the Plans' fixed-income portfolios in the manner of a reasonably prudent fiduciary acting under like circumstances.

97.     As a direct and proximate result of the breach of fiduciary duties alleged herein, the Plans lost a significant portion of their assets.

98.     Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C. § 1109(a), Wachovia Bank is liable to restore the losses to the Plaintiffs caused by its fiduciary breach.

### COUNT III
### COMMON LAW BREACH OF FIDUCIARY DUTY
### (SUPPLEMENTAL CLAIM BY
### THE BUILDING FUND AND THE UNION)

99.     The Building Fund and Union Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

100.     In addition to Defendants' fiduciary obligations under ERISA, Defendants have a separate common-law fiduciary duty to prudently invest the assets of the Building Fund and the Union.

101.     The standards for fiduciary conduct embodied in the common-law meet or exceed those provided in ERISA and detailed above.

102.     As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Building Fund and the Union lost a significant portion of their assets.

103.     Defendants are liable to restore the losses to the Building Fund and the Union caused by its fiduciary breaches.

### COUNT IV
### BREACH OF CONTRACT
### (SUPPLEMENTAL CLAIM BY
### THE BUILDING FUND AND THE UNION)

104.     The Building Fund and Union Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

105.     The Investment Agreement obligated Defendants to perform their duties in accordance with the standard of care described therein and in accordance with applicable fiduciary standards.

106.     The Investment Agreement obligated Defendants to prudently invest and manage the Plans' assets, to the extent that Defendants exercised discretionary authority.  Defendants

exercised discretionary authority with respect to the investments of the Plans' fixed income portfolios.

107.   Defendants' failure to perform their duties in accordance with the standard of care set forth in the Investment Agreement in accordance with applicable fiduciary standards constitutes a breach of the Investment Agreement.

108.   Under the terms of the Investment Agreement, Defendants agreed to assume liability for losses resulting from their failure to perform their duties in accordance with the standard of care set forth in the Investment Agreement in accordance with applicable fiduciary standards.

109.   The Plans sustained actual damages as a direct result of Defendants' breach of the Investment Agreement.

110.   Accordingly, in this Count, the Building Fund and the Union Plaintiffs seek appropriate relief on behalf of the Building Fund.

## CAUSATION

111.   As a direct and proximate result of Defendants' unlawful actions, the Plans suffered millions of dollars in losses.

112.   Had Defendants properly discharged their fiduciary, co-fiduciary duties and common law obligations, the Plans would have avoided a substantial portion of the losses that they have suffered.

## REMEDY

113.   ERISA § 502(a), 29 U.S.C. § 1132(a) authorizes a plan fiduciary to bring a civil action for appropriate relief under ERISA § 409, 29 U.S.C. § 1109. Section 409 requires "any person who is a fiduciary . . . who breaches any of the . . . duties imposed upon fiduciaries . . . to

make good to such plan any losses to the plan . . ." Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate . . ."

114.    On behalf of the Plans, Plaintiffs seek restitutionary, equitable and other appropriate relief as a result of Defendants' unlawful actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for:

A.    A declaration that Defendants, and each of them, have breached their ERISA and common law fiduciary duties to the Plans, in violation of ERISA;

B.    A declaration that each Defendant is jointly liable for the acts of the other Defendants as a co-fiduciary;

C.    An Order compelling Defendants to make good to the Plans all losses resulting from Defendants' breaches of their fiduciary duties, to restore to the Plans all profits Defendants made through use of the Plans' assets, and to restore to the Plans all profits which they would have made if Defendants had fulfilled their fiduciary and contractual obligations;

D.    Imposition of a constructive trust on any amounts by which any Defendant was unjustly enriched at the expense of the Plans as the result of breaches of fiduciary duties;

E.    Actual damages in the amount of any losses the Plans suffered;

F.    An Order awarding costs pursuant to 29 U.S.C. § 1132(g);

G.    An Order awarding attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

H.    An Order for equitable restitution and other appropriate equitable relief against the Defendants.

Respectfully submitted,

**BARROWAY TOPAZ KESSLER
MELTZER & CHECK, LLP**

DATE: February 13, 2009   By:   /s/   <u>Edward W. Ciolko</u>
Edward W. Ciolko
Joseph H. Meltzer
Peter H. LeVan, Jr.
Joseph A. Weeden
280 King of Prussia Road
Radnor, PA 19087
 (610) 667-7706

- AND -

Mark Hanna
**MURPHY ANDERSON PLLC**
1389 Broad St.
Clifton, NJ 07013
(973) 916-0999

*Attorneys for Plaintiffs*

27

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

I hereby certify that the matter in controversy is not the subject matter of any other action pending in any court, or of any pending arbitration or administrative proceeding.

BARROWAY TOPAZ KESSLER
MELTZER & CHECK, LLP

DATE:  February 13, 2009   By:   /s/   Edward W. Ciolko
                                               Edward W. Ciolko

**<u>EXHIBIT A</u>**

AGREEMENT AND DECLARATION OF TRUST OF LOCAL 464A,

UNITED FOOD AND COMMERCIAL WORKERS UNION PENSION BENEFIT FUND

This Agreement and Declaration of Trust is made and entered into this 9th day of September 1992.

WHEREAS, this Agreement and Declaration of Trust of Local 464A, United Food and Commercial Workers Union Pension Benefit Fund supersedes the Agreement and Declaration of Trust executed the 13th day of April 1976, and

WHEREAS, there have been in subsequent years changes in the composition of the trustees signatories thereto, and changes in the laws governing such Pension Funds, and

WHEREAS, the present Trustees desire that the original and Amended and Restated Agreement and Declaration of Trust executed and adopted the 13th day of April 1976 be restated so as to incorporate therein all of the Amendments heretofore adopted, and the said Trust Agreement reflects the necessary changes, to incorporate therein current operational requirements and policies, and to comply with the laws governing such Benefit Funds, and

WHEREAS, the Trust is intended as joint labor management Trust within the meaning of Section 302(c)(5) of the Labor Management Relations ("Taft Hartley") Act of 1947, as amended, so as to permit Employer contributions and it is further intended that the Trust qualify as a tax-exempt Trust under Section 501(a)    of the



Internal Revenue Code of 1986, as amended, and satisfy the requirements under Section 403 of the Employee Retirement Income Security Act of 1974, as amended, (ERISA) and

WHEREAS, the Union will continue to enter into Collective Bargaining Agreements with the Employers and with other participating Employers requiring, among other things, payment by said Employers to the Fund of periodic contributions for the purpose of providing, retirement and related benefits as now are or may hereafter be authorized or permitted by law for eligible employees, their families and dependents as determined hereunder, and

WHEREAS, the purpose of the Trust is to provide such retirement and related benefits in conformance with all applicable laws and regulations, and

WHEREAS, the Trustees have been duly appointed in accordance with the provisions of the Agreement.

NOW, THEREFORE, the Trustees designated and in office as such, have executed this Restated Agreement and Declaration of Trust as indicating their acceptance of the respective duties imposed upon them as Trustees under the terms of this Agreement, and in consideration of the premises and of the mutual covenants and agreements of the parties hereto, it is hereby agreed and declared that the following shall be and constitute the Restated Agreement and Declaration of Trust Local 464A, United Food and Commercial Workers Union Pension Fund, effective as of the date first above stated:

2

## ARTICLE I

### DEFINITIONS

**Section 1.   Employer.**   Except as may be otherwise specified hereinafter, the term "Employer" or "Contributing Employer" shall mean an Employer who employs Employees, as defined in Section 2 hereinbelow, in a bargaining unit represented by the Union, and whether or not pursuant to a collective bargaining agreement with the Union, pays monies required therein to the Fund for the purpose of having benefits provided by the Fund, or some of said benefits provided to said bargaining unit Employees.  The term "Employer" or "Contributing Employer" shall also include the Union to the extent that the Union may, with respect to its own employees, pay monies to the Fund, in character and amount identical with the monies then being paid by the Employers for the benefits to be provided, and the term "Employer" or "Contributing Employer" shall also include the Fund itself and other affiliated Local 464A pension and welfare funds to the extent that the Trustees specifically agree to provide the benefits of the Fund to the Employees of the Fund and the other affiliated Local 464A funds and the term "Employer" or "Contributing Employer" shall also include any other Employer who executes a Participation Agreement with the Fund.

**Section 2.   Employees.**   Except as may be otherwise specified hereinafter, the term "Employees" shall mean all of the Employees of an Employer, as defined in Section 1 hereinabove, employed in the bargaining unit under a collective bargaining agreement executed with the Union or, if no collective bargaining agreement, then employees represented by the Union and working for an employer as defined herein, and for whom the Employer pays required monies to the Fund.  The term "Employees" shall also mean Employees of the Union and of the Fund to the extent provided in Section 1 hereinabove and the term "Employees" shall also include the Employees of any other Employer who execute a Participation Agreement with the Fund.

3

**Section 3.   Union.**   The term "Union shall mean Local 464A, United Food and Commercial Workers Union AFL-CIO, together with such other labor organizations as the Trustees may permit to participate in the Fund through the entering into by such other labor organizations of collective bargaining agreements requiring periodic contributions by the Employers party thereto of monies into the Fund.

**Section 4.   Trustees.**   The term "Trustees" shall mean the Trustees herein named together with their successors designated in the manner hereinafter provided.  The Trustees, collectively, shall be the "administrator" of this Fund as that term is used in ERISA.

**Section 5.   Amended, Supplemented and Restated Agreement and Declaration of Trust, Restated Agreement, Trust, Trust Agreement, Amended Trust Agreement, Trust Fund, Pension Fund.**   The terms "Trust Fund", "Trust Agreement", "Amended, Supplemented and Restated Agreement and Declaration of Trust", Restated Agreement", "Trust", Agreement and Declaration of Trust", "Restated Agreement and Declaration of Trust", "Amended Trust Agreement", "Pension Fund" shall mean the Trust Agreement made and entered into as of 13th day of April 1976, to be known as Local 464A, United Food and Commercial Workers Union Pension Fund, as same is restated and supplemented by this Instrument, the Trust Agreement including any future amendments hereto or modifications hereof as may from time to time be made, and said terms shall further generally refer to the Trust Estate created hereunder.

**Section 6.   Fund.**   The term "Fund" shall mean the Trust Estate created under this instrument which shall consist of all monies and property received and/or held by the Trustees for the uses and purposes hereof, all income therefrom and all policies and

contracts issued to the Trustees by insurance carriers and others.

**Section 7.   Policies.**   The term "Policy" or "Policies" as used herein shall mean the policy of insurance issued to the Trustees which provide for the benefits hereinafter set forth.

**Section 8.   Benefits.**   The term "Benefit" as used herein, shall consist of such retirement and related benefits as may from time to time be established and provided by the Trustees.

**Section 9.   Employer Contributions, Employer Payments.**   The terms "Employer Contributions" or "Employer Payments" shall mean the payments made by the Employer to the Fund pursuant to a collective bargaining agreement with the Union and the Rules and Regulations of the Trustees, for the purpose set forth in Section 1 of Article II of this Amended Trust Agreement.

**Section 10.   Pension Plan.**   The term "Pension Plan" shall mean the program or programs established by the Trustees, and the agreements and contracts made in accordance therewith, in order to provide retirement benefits for the employees, and shall include the methods and procedures prescribed by the Trustees for the making of Employer Contributions for the payment of Employee benefits and the Rules and Regulations established by the Trustees relating to eligibility requirements for Employees for benefits, as the Trustees may from time to time establish, amend and revise.   The term shall also refer to such benefits as the Trustees may establish for spouses and dependents of said Employees, and the eligibility requirements thereof.

**Section 11.   ERISA.**   The term "ERISA" shall mean the Employee Retirement Income Security Act of 1974, and any amendments thereto

5

as may from time to time be made, and any regulations promulgated pursuant to the provisions of the said Act.

**Section 12.  Participant.**  The term "Participant" shall mean an Employee on whose behalf an employer to this Agreement is required to make contributions, who is eligible for benefits under plan.

**Section 13.  Beneficiary.**  The term "Beneficiary" shall mean any person who, as a member of the household of a "Participant", is or may become entitled to a benefit provided under the terms of the Pension Plan, created pursuant to this Agreement and Declaration of Trust.

**Section 14.  Covered Employment.**  The term "Covered Employment" shall mean employment by the Employee with an Employer.

**Section 15.  Code.**  The term "Code" shall mean the Internal Revenue Code of 1986, and any amendments thereto.  As may from time to time be made, and any regulations promulgated pursuant to the provisions of the said act.

**ARTICLE II**

**PURPOSE OF THE TRUST AND APPLICATION OF THE FUND**

**Section 1.    Purpose of the Trust.**  The Trust Fund is created, established and maintained, and the Trustees agree to receive, hold and administer the Trust Fund, for the purpose of providing such retirement and related benefits as now are, or hereafter may be determined by the Trustees for eligible Employees and their dependents in accordance with the provisions herein set forth.  The Trustees do hereby affirm and redeclare that the Trust shall operate and exist for the exclusive benefit of the participants pursuant to applicable law and to the purposes permitted by this Trust Agreement.

6

**Section 2.**     **Benefits Provided.**  Such benefits may consist of any types and kinds of benefits as are permitted by law for a fund of this nature, including but not limited to a monthly amount of Normal Pension Benefit, Early Pension Benefit, Disability Pension Benefit, Vested Benefit or Spouse Benefit which may be payable to a Pensioner or a Surviving Spouse.  As the levels of contributions by Employers may vary from Employer to Employer, the Trustees may provide types and amounts of benefits for Employees in accordance with the levels of contributions of their Employers.

**Section 3.  Fund Objectives and Application of Fund.**  To effectuate the purposes of the Trust, the Trustees shall, without previous approval of or subsequent ratification by any party hereto or any court, tribunal or agency, continue to: formulate, adopt and administer a Pension Program for the exclusive benefit of the Employees, and as the Trustees deem advisable, their spouses and/or dependents, provided that the Fund shall continue to be administered at all times, and the Pension Program shall continue to be effectuated so as to continue the qualification of the Fund under the Code in order that contributions of Employers to the Fund will continue to be deductible by such Employers for tax purposes under said Code; promulgate and establish rules and regulations and amendments thereto for the administration and operation of the fund in order to effectuate the purposes hereof, and pursuant thereto (but without limitations on the powers of the Trustees by reason of such enumeration), formulate and establish provisions to govern eligibility in respect to participation of Employees in the Fund and qualifications to the entitlement to benefits of Employees, their spouses and/or dependents, rules and regulations to govern the mode and manner of the making of Employer contributions and the forms necessary in connection therewith, enter into contracts with insurance companies to provide benefits and other concerns as may be necessary or advisable to administer the payment of benefits; exercise the discretionary authority to establish eligibility

7

criteria and to construe the terms of the Pension Plan,, invest and reinvest assets of the Fund in the manner the Trustees deem most beneficial to the Fund, and not limited to the types or kinds of investments, or amounts or quantities or ratios of investments, otherwise provided for by law in any State; to hold cash uninvested in such amounts and for such periods as the Trustees deem advisable; to deposit monies in banks, savings institutions, or with insurance companies; to establish and accumulate as part of the Trust such reserve or reserves as the Trustees deem advisable; to borrow money, with or without security, on such terms as the Trustees deem advisable; to amend the Pension Program from time to time, provided that such amendments comply with the purpose thereof; to formulate and establish rules and regulations to protect the Fund against accumulations of delinquencies in Employer contributions and expenses connected with the recovery thereof, including but not limited to, requiring payment of interest upon such delinquencies to the maximum extent permitted by law, requiring receipt of security for payment of delinquencies or protect against future delinquencies, establishing penalties in the event of delinquencies, requiring payment of counsel fees and other costs and expenses which would be otherwise incurred by the Fund in connection with the recovery of Employer delinquencies, as the Trustees deem advisable; enter into agreements, contracts and other instrument for the deposit of funds with banks, trust companies or other institutions and authorize same to act as custodian of the funds, whether in cash or in securities or other property, and authorize such depository to convert, invest and reinvest the funds, in whole or part, into securities of any kind and nature whatsoever; to secure premises for the office of the Fund through rental or purchase agreements, to purchase equipment for the operation of the Fund and its office and make payment therefore, to retain and determine compensation and benefits for such Employees as the Trustees deem necessary, and retain or employ an office administrator, accountant, attorney, actuaries and other Employees and professional assistance as the Trustees deem advisable; to pay

8

such taxes as may be imposed by law (no income tax being contemplated to become due hereunder as it is intended that this Trust qualify at all times under Section 501(c)(9) of the Code); to compromise, settle, adjust, institute suit, commence administrative proceedings, and take such other action in the prosecution of or in the defense of any matter involving the Fund, its assets, or the collection of the Employer contributions as the Trustees deem advisable; to exercise or to delegate to an investment manager the exercise of such powers attendant to the ownership of securities, including the voting in person or by proxy, as would be the case were such securities not held in the name of the Fund or the Trustees; to purchase, acquire, retain, administer or assign any life insurance or annuity contract or other similar contract, and pay the premiums and exercise the rights, privileges, options and benefits contained in such contract; to exercise any rights, options and privileges granted in connection with bonds, mortgages, commercial paper, preferred stocks, common stocks, or other securities or properties, real, personal or mixed, including but not limited to shares and certificates of participation issued by investment companies or investment trusts, ordinary life insurance contracts, endowment contracts, or other similar forms of contracts, similarly without being bound as to the character of any investment, or proportion of any investment to the entirety of the assets of the Fund, by any statute, rule of court or custom governing the investment of trust funds; collect Employer contributions; apply to a court of competent jurisdiction for guidance with respect to the disposition of the Welfare Fund, but nothing herein contained shall be deemed or construed as imposing any duty upon the Trustees to make such application or as a limitation of any kind or nature upon the powers, rights and prerogatives of the Trustees; authorize any two or more of the Trustees to execute any notice or other instrument in writing and all persons, partnerships, corporations or associations may rely upon same that such notice or instrument has been duly authorized and is binding upon the Pension Fund and the Trustees; designate

9

and authorize an Employee of the Pension Fund to sign checks upon such separate and specific bank accounts as the Trustees may designate and establish for such purpose; pay for premiums for bonds to cover those required to be covered, and in the amounts require for coverage, by applicable state and federal laws; make, execute and deliver as Trustees any and all instruments in writing necessary or proper for the effective exercise of any of the Trustees' powers as stated herein or as is otherwise necessary to accomplish the purposes of the Pension Fund; as an Employer of Employees, exercise such rights, powers and privileges that private Employers have a right to exercise with respect to the hiring, employment and termination of Employees; pay to, for and on behalf of the Trustees such reasonable compensation and/or expenses or reimbursement therefor, as the Trustees deem proper and is in compliance with ERISA; and do all other acts, and take any and all other action, whether expressly authorized herein or not expressly authorized herein, which the Trustees may deem necessary or appropriate for the protection of the properties, contracts, and maintenance of the Pension Fund.

**Section 4. Compliance with Law.** The Trustees shall have the power to do all acts which may be necessary to comply with any of the requirements of ERISA or any other applicable law.

ARTICLE III

EMPLOYER PAYMENTS TO THE FUND AND
COLLECTION OF EMPLOYER CONTRIBUTIONS

**Section 1. Receipt of Payment and Other Property of Trust.** The Trustees or such other person or entity designated by the Trustees are hereby designated to receive the contributions made to the Trust Fund by the Employer. The Trustees are hereby vested with all right, title, and interest in and to such monies and all interest which may be accrued thereon. All contributions required

10

from an Employer to the Fund shall, after the due date, and until the payment is made in full by the Employer to the Trustees, be deemed to constitute a trust fund in the possession of such Employer, and said Employer shall be responsible and liable therefor as a fiduciary.

**Section 2. Employer Contributions.** In order to carry out and effectuate the purpose hereof, the Employers shall pay to the Fund as such regular intervals as the Trustees may determine, and continuing until termination of the Fund, the amounts required of them by the applicable collective bargaining agreements between the Union and the Employer, or under such terms as such Employer may be obligated, in writing, to obtain the benefits provided and for reasonable expenses and reserves, as fixed and accepted by the Trustees from time to time. The Trustees may determine such additional rate of contributions from a Contributing Employer or Employers as may be necessary, at the discretion of the Trustees, to avoid substantial adverse actuarial and economic impact upon the Trust and its resources. In the event the Contributing Employer or Employers fail or refuse to contribute on the basis of such additional rate, the Trustees may terminate the Employer(s) as hereinafter provided.

**Section 3. Collection of Contributions.** The Trustees shall have the power to demand, collect, receive and hold Employer contributions and may take such steps, including but without limitation, the institution and prosecution of or the intervention in any proceedings at law, in equity, or in bankruptcy or arbitration, as may be necessary for the collection of monies due and owing or which may become due and owing to the Fund. The Trustees shall hold such monies as part of the Fund for the purpose specified in Section 1 of Article II of this Restated Agreement and Declaration of Trust. In the event that it shall become necessary to institute a legal action against an employer to collect delinquent contributions, the Trustees shall,

11

in addition to the unpaid contributions, recover interest, penalties and other remedies provided in Section 502 of ERISA.

**Section 4. Production of Records.** The Trustees shall have the power to require an Employer to furnish to the Trustees such information and reports as the Trustees may require in the performance of their duties. The Trustees, or any authorized agent or representative of the Trustees, shall have the right at all reasonable times during normal business hours to examine and copy such of the books, records, papers and reports of said Employers as may be necessary to permit the Trustees to determine the amounts of Employer contributions required by the collective bargaining agreements and to verify the accuracy of said records. In the event that any such records are not made reasonably available to the Trustees, their agents or representatives, or are located within the State of New York, the Trustees may require an Employer to produce such records at the office of the Pension Fund.

**Section 5. Rules and Regulations.** The Trustees shall have the right and power to enforce against any Employer, and an Employer shall be bound by, all rules and regulations duly formulated and established by the Trustees, including such rules and regulations designated to protect the Fund against accumulations of delinquencies or arrearage in contributions and the additional expenses of administration and collection connected therewith, including, but not limited to, those requiring the payment of interest upon such delinquencies, requiring the giving of security for payment of such delinquencies or to protect against future delinquencies, and requiring the payment by the Employer to the Fund of counsel fees, auditing fees and such other costs and expenses incurred, or otherwise incurrable, by the Fund in connection with the recovery of Employer delinquencies.

**Section 6. Forms for Reporting Contributions.** The Trustees shall have the right and power to prescribe such forms as they deem

necessary for the Employers to utilize in the making of contributions, and the Employers shall utilize said forms as prescribed by the Trustees in the making of the contributions, and shall make such contributions on such weekly, monthly or other periodic basis as the Trustees shall determine.

**Section 7.   Effective Date of Contributions.**   All contributions shall be made upon the dates, and for such periods as shall, from time to time be determined by the Trustees, and shall continue to be paid as long as the Employer is so obligated pursuant to the collective bargaining agreement with the Union, by law or until the Employer ceases to be an Employer within the meaning of this Agreement and Declaration of Trust.

**Section 8.   Mode of Payment and Completion of Reports.**   All contributions shall be payable to the Fund and shall be accompanied by such forms completed by the Employers as may, from time to time be designed and determined by the Trustees.

**Section 9.   Default in Payment.**   Non-payment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payments.   In addition to any other remedies to which the parties may be entitled, an Employer in default for ten (10) working days shall pay such reasonable rate of interest and late fees as the Trustees may fix on the monies due to the Trustees from the date when the payment was due to the date when payment is made, together with all expenses of collection included reasonable attorneys' fees incurred by the Trustees.   Such amounts shall be payable in addition to any recovery by the Union against an Employer in default pursuant to pertinent provisions of applicable collective bargaining agreements.   The Trustees may, at their option or discretion, take any action to enforce payment of the contributions due hereunder, including but not limited to, arbitration proceedings.

**Section 10.  Actions for Recovery of Employer Contributions.**  All suits and proceedings to recover contributions or any other payments due to the Trustees of the Fund, or to enforce or protect any other right, demand or claim on behalf of the Fund, may be brought by the Fund in its own name or in the name of the Chairman or the Secretary of the Fund, or in the names of all the Trustees. In all suits and proceedings for the recovery of Employer contributions or any other payments due to the Trustees or to the Fund, the Employer shall be liable not only for the contributions or other payments which may be due but for all expenses incurred in the collection thereof as herein elsewhere set forth.

**Section 11.  Audits.**  The Trustees may at any time conduct an audit by certified public accountants of the payroll, wage and other records of any Employer in connection with contributions and/or reports.

**Section 12 (a).  Discontinuation of Benefits.**  In addition to any other powers herein set forth, the Trustees are also empowered to discontinue providing any benefits to Employees or their dependents in the event the Trustees, in their sole discretion, determine that such Employees' Employer is delinquent in the payment of contributions.  Reasonable notice shall be given to Employer of the discontinuance of benefits as hereinbelow set forth.

**Section 12 (b).**  In addition to any other powers herein set forth, the Trustees shall have the power to discontinue providing benefits under the Welfare Plan to Employees and their dependents and to discontinue the receipt of Employer Contributions, at any time, when in the opinion of the Trustees, such action is necessary to avoid adverse actuarial and economic impact upon the Trust and its resources.

**Section 12 (c).**  Prior to the discontinuance of benefits under the Plan, the Trustees shall provide to the Contributing Employer and

14

the Union at least thirty (30) days advance written notice of its intent to discontinue benefits.

**Section 12 (d).**  The Trustees may, at their discretion, permit a Contributing Employer to pay a Supplementary Charge as defined below, which will be in addition to the Employer Contribution, equal to the difference between (i) the Fund's expenses (i.e., claims incurred on behalf of the Employees of the Contributing Employer (and their dependents) and the Contributing Employer's allocable share of the Trust Fund's administrative expenses) and (ii) the required contributions of the Contributing Employer (the "Supplementary Charge").   The  Trustees  shall  advise  the Contributing Employer and Union in writing of the amount of the Supplementary Charge.

**Section 12 (e).**  In the event that the Contributing Employer pays to the Fund the Employer Contributions and the Supplementary Charge, the benefits to which the Employees and their dependents are entitled under the Plan will be continued without interruption.

**Section 13 (f).**  In the event that the Contributing Employer fails or refuses to pay the Supplementary Charge, as determined by the Trustees, the Trustees shall have the power to discontinue the benefits of the Employees of the Contributing Employer (and their dependents) as hereinabove provided.

## ARTICLE IV

### ADMINISTRATION OF THE FUND

**Section 1 (a).  Composition of Administrators.**  The Fund shall be jointly administered in accordance with and subject to the provisions of this Amended, Supplemented and Restated Agreement, and Declaration of Trust by four (4) Trustees appointed by Local 464A, United Food and Commercial Workers Union, and herein called

the Union Trustees; and by four (4) Trustees appointed by a majority of non-delinquent current Contributing Employers, and herein called Employer Trustees. The Trustees appointed shall be known collectively as the "Trustees" or "Board of Trustees."

**Section 1 (b). Trustees Herewith Named.** John T. Niccollai, Ramon Rando, John Niccollai, Sr., and Walter Biernacki are herewith designated Union Trustees. Gilbert Vuolo, Martin Quinn, Isadore Zalkin and Dewey V. Cannella are herewith designated as Employer Trustees and together constitute the Board of Trustees.

**Section 1 (c). Chairman and Secretary.** The Trustees shall appoint one of their number as Chairman of the Board, one as Co-Chairman of the Board, one of their number as Secretary-Treasurer of the Board, and one as Chairman of Fund Investments. The Chairman and Secretary-Treasurer shall be designated by and from the Union Trustees; the Co-Chairman and Chairman of Fund Investments shall be designated by and from the Employer Trustees.

**Section 2. Representation.** There shall always be an equal number of Employer Trustees and Union Trustees, all of whom are the named fiduciaries under the Trust.

**Section 3. Successor Trustees.** Any Successor Trustee shall

immediately upon his designation as Successor Trustee and his acceptance in writing filed with the Trustees become vested with all the property, rights, powers and duties of a Trustee hereunder with like effect as if originally named as a Trustee and all the Trustees then in office shall be notified immediately of the designation as Trustee. No Successor Trustee shall in any way be responsible for anything done or committed in the administration of the Trust prior to the date he became a Trustee or subsequent to the time his term as Trustee terminated.

**Section 4. Acceptance of Trusteeship.** All Trustees shall immediately meet and sign this Agreement and Declaration of Trust. The Trustees, by affixing their signatures to this Agreement and Declaration of Trust, agree to accept the Trusteeship and act strictly in accordance with the provisions of the Amended, Supplemented and Restated Agreement and Declaration of Trust.

**Section 5. Operation of Fund.** The operation and administration of the Welfare Fund shall be the joint responsibility of the Trustees appointed by the Employers and the Trustees appointed by the Union, as herein provided.

**Section 6. Terms of Trustees.** Each Trustee, and each Successor Trustee shall continue to serve as such until his death, incapacity, resignation or removal, as herein provided. An Employer Trustee may be removed and replaced by his appointors, and a Union Trustee may be removed and replaced by his appointor. A vacancy shall be deemed to have occurred whenever a Trustee is removed by the party which appointed him, or by reason of resignation, death or incapacity. Each of said Trustees shall serve until the Union or the Employers shall select a Successor Trustee when a vacancy or vacancies occur amongst the respective appointees.

**Section 7. Written Notice of Removal or Resignation.** In the event

17

any Trustee shall be removed, replaced, or succeeded, a statement in writing by the President of the Union that appointed him shall be sufficient evidence of the action taken by the Union, and a statement in writing signed by the Chairman of the appointors of the Employer Trustees shall be deemed sufficient evidence of any action taken with respect to the removal or replacement of an Employer Trustee.  Any resignation by a Trustee shall be by written notice sent to the Office of the Fund and shall state the date the resignation is to take effect.

**Section 8.  Assets Held in Trust.**  The assets of the Fund shall be held in Trust by the Trustees named in the Trust Agreement and their successors appointed or designated in accordance with the provisions of this Agreement and Declaration of Trust for the exclusive purpose of providing benefits to Employees and their dependents.

## ARTICLE V

### POWERS, DUTIES AND OBLIGATIONS OF THE TRUSTEES

**Section 1.  Property and Assistance.**  The Trustees are authorized and empowered to lease or purchase such premises, materials, supplies, and equipment, and to hire and employ and retain such legal counsel, investment counsel, administrative, accounting, actuarial, professional, expert, clerical and other assistance or employees as in their discretion they may find necessary or appropriate in the performance of their duties.

**Section 2.  Construction of Agreement.**  The Trustees shall have the discretionary authority and power to interpret, apply and construe the provisions of the Agreement and Declaration of Trust and the Welfare Plan, and the terms used herein and any construction, interpretation and application adopted by the Trustees in good faith shall be binding upon the Union, the Employers and the

Employees and their families and dependents.  The provisions of this Trust Agreement shall be liberally construed in order to promote and effectuate the establishment and operation of the Pension Plan.

**Section 3.  General Powers.**  The Trustees are hereby empowered, in addition to such other powers as set forth herein or conferred by law:

(a)  To enter into any and all contracts and agreements for carrying out the terms of this Agreement and Declaration of Trust and for the administration of the Trust Fund and to do all acts as they, in their discretion may deem necessary and advisable.

(b)  To compromise, settle, arbitrate and release claims or demands in favor or against the Trust Fund or the Trustees on such terms and conditions as the Trustees may deem advisable.

(c)  To establish and accumulate as part of the Trust Fund a reserve or reserves, adequate, in the opinion of the Trustees, to carry out the purpose of such Trust.

(d)  To pay out of the Fund all real and personal property taxes, income taxes and other taxes of any and all kinds levied or assessed under existing law or future laws upon or in respect to the Fund or any money, property or securities forming a part thereof.

(e)  To receive contributions or payments from any source whatsoever to the extent permitted by law.

(f)  To establish Advisory Committees composed of Local Union and Employer representatives and to set forth the duties and functions of the members of such Advisory Committees.

(g)  To do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary or proper for the protection of the property held hereunder.

(h)  To do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary to accomplish the general objective of enabling the Employees and their dependents to obtain Pension benefits in the most efficient and economical manner.

19

(i)  To do all acts which may be necessary to comply with any of the requirements of ERISA or any other federal law.

(j)  Consistent with applicable law, to allocate fiduciary responsibilities among the Trustees and to designate persons other than Trustees to carry out fiduciary responsibilities by the adoption of a resolution designating the persons who shall carry out such fiduciary responsibilities.   The power to allocate fiduciary responsibilities shall not apply to the allocation of the responsibility to manage the assets of the plan other than the power to appoint an investment manager or managers as permitted by Section 402(c) of ERISA.

(k)  The Fund, through its Trustees and Administrators, is encouraged and directed, whenever possible, to participate through membership and attendance at conference and seminars in the obtaining of knowledge, information and expertise, for the better, more efficient and smoother operation of the Fund conducted by groups or organizations in the field of Employee Benefit Plans.

**Section 4.  Asset Management.**  The Trustees shall have exclusive authority and discretion to manage and control the assets of the Trust in accordance with this Trust Agreement and applicable law, except to the extent that such authority to manage, acquire, or dispose of the assets of the Plan is delegated to one or more investment managers pursuant to the following paragraph.

(1)  The Trustees are hereby empowered, but shall not be required, to appoint an investment manager or managers to manage, acquire, or dispose of any assets of the Fund pursuant to Section 402(c) of ERISA.  Such an investment manager may or may not be designated a "Corporate Trustee" or "Corporate Agent."  An "investment manager" is any fiduciary who had been designated by the Trustees to manage, acquire, or dispose of any assets of the Fund, who is registered as an investment advisor under the Investment Advisors Act of 1940, is a bank as defined in the Act or an insurance company qualified to perform services under the laws of more than one state and who has acknowledged in writing that it is a fiduciary with respect to the

20

Plan.  The fees of such investment manager and its expenses to the extent permitted by law shall be paid out of the Trust Fund.

**Section 5.   Limitation of Liability.**   The Trustees are hereby empowered to do all acts whether or not expressly authorized herein, which the Trustees may deem necessary to accomplish the general objectives of maintaining the Plan solely in the interests of the Employees and their dependents for the exclusive purpose of (1) providing benefits to Employees and their dependents; and (2) defraying reasonable expenses of administering the Plan.   Such actions shall be taken with care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

**Section 5 (b).**  Such actions shall include the diversification of the investments of the Plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so, and all such actions shall be in accordance with the documents and instruments governing the Plan in so far as such documents and instruments are consistent with applicable law.

**Section 5 (c).**  If an investment manager or managers has been appointed in accordance with the terms of this Agreement and Declaration of Trust, no Trustee shall be liable for the acts or omissions of such investment manager or managers or under an obligation to invest or otherwise manage any asset of the Plan which is subject to the management of such investment manager.

**Section 6.  Compensation.** The Union Trustees and Employer Trustees shall not receive any compensation for the performance of their duties as Trustees or Officers of the Board of Trustees.

**Section 7 (a).  Personal Liability.**  The Trustees, to the extent permitted by law, shall be fully protected in acting upon any

instrument, certificate, or paper believed by them to be genuine and to be signed or presented by the proper person or persons, and shall be under no duty to make any investigation or inquiry as to any statement contained in any writing, but may accept the same as conclusive evidence of the truth and accuracy of the statements therein contained.

**Section 7 (b).** Neither the Employers nor the Union shall in any way be liable in any respect for any of the acts, omissions, or obligations of the Trustees acting individually or collectively.

**Section 7 (c).** The Trustees may appoint a qualified consultant to serve as technical advisor to the Trustees and also such actuaries and accountants and attorneys as they may from time to time find necessary or advisable. The Trustees shall be fully protected in respect to any action taken or suffered by them in good faith in reliance upon the advice of such consultant, counsel, accountants or actuaries, and all actions so taken or suffered shall be conclusive upon each of them and upon all Employees and their dependents covered under the Plan.

**Section 8. Books of Account.** The Trustees shall keep true and accurate books of account and records of all their transactions, which shall be audited annually or more often by an independent certified public accountant selected by the Trustees. A copy of such audit shall be available at all times upon reasonable notice inspection by signatories to this Agreement at the principal office of the Fund. The Trustees, or such persons as they may properly designate, shall be responsible for maintaining records sufficient to comply with any requirement of ERISA and for the filing of all reports with the U.S. Department of Labor, and the U.S. Treasury Department which may be required under provisions of ERISA or the regulations issued thereunder.

**Section 9. Execution of Documents.** The Trustees may authorize an

Employer Trustee and a Union Trustee or any joint group equally composed of Employer and Union Trustees to execute jointly any notice or other instrument in writing and all persons, partnerships, corporations or associations may rely thereupon that such notice or instrument has been duly authorized and is binding on the Fund and the Trustees.

**Section 10 (a).   Deposit and Withdrawal of Funds.**   All monies received by the Trustees hereunder shall be deposited by them in such bank or banks as the Trustees may designate for that purpose and all withdrawals of monies form such account or accounts shall be made only by checks signed by such individual as is authorized in writing by the Trustees to sign such checks.   Except as hereinafter provided, no check shall be valid unless signed by two persons of whom one shall be a Union Trustee and one an Employer Trustee.

**Section 10 (b).**   The Employer Trustees shall designate in writing the names of the particular Employer Trustees who may sign checks in the above manner, and the Union Trustees shall likewise designate in writing the names of the particular Union Trustees who may sign checks in the above manner.

**Section 10 (c).**   The Trustees may, in their discretion, designate and authorize an Employee of the Trust to sign checks upon such separate and specific bank account or bank accounts as the Trustees may designate and establish for such purpose.

**Section 11.   Surety Bonds.**   Every fiduciary under the Plan and every person who handles funds or other property of the Plan shall be bonded by a duly authorized surety company in the amount fixed in accordance with applicable legal requirements.   This section shall be construed and interpreted in accordance with Section 412 of ERISA and the cost of the premium of the bonds shall be paid out of the Fund.

**Section 12.  Trustees' Insurance.**  The Trustees may authorize the purchase of insurance for themselves collectively and/or individually, and for any other fiduciary employed by the Trustees to cover liability or losses occurring by reason of the act of commission or omission of a fiduciary, but such insurance shall permit recourse by the insurer against the Trustee in case of a breach of fiduciary obligation by such Trustee.  The cost of the premiums on such insurance shall be paid out of the Fund.  Nothing in this Section shall prohibit a named fiduciary or the Union or the Employers or Employers' representatives from purchasing insurance to cover potential liability of one or more persons who serve in a fiduciary capacity in which the insurer's rights of recourse is waived.

**Section 13.  By-laws, Rules, Regulations.**  The Trustees are empowered and authorized to adopt By-Laws and to promulgate any and all rules and regulations necessary or desirable to facilitate the proper administration of the Trust Fund, provided same are not inconsistent with the terms of the Trust Agreement and applicable law.

**Section 14. Administrator of the Fund.**  The Trustees may employ or contract for the services of individuals to be knows as "Administrators of the Fund" who shall, under the direction of the Trustees, administer the office or offices of the Trust Fund and of the Trustees, coordinate and administer the accounting, bookkeeping and clerical services, provide for the coordination of actuarial services furnished by the consulting actuary, prepare (in cooperation, where appropriate, with the consulting actuary and independent auditor) all reports and other documents to be prepared, filed or disseminated by or on behalf of the Trust in accordance with the law, assist in the collection of contributions required to be paid to the Trust Fund by Employers, and perform such other duties and furnish such other services as may be assigned, delegated or directed or as may be contracted by

or on behalf of the Trustees.

**Section 15.   Reliance by Others.**   No party dealing with the Trustees shall be obligated to see the application to the stated Trust purposes, of any funds or property of the Trust Fund, to see that the terms of this Trust Agreement have been complied with or to inquire into the necessity or expediency of any act of the Trustees.   Every instrument executed by the Trustees shall be conclusive evidence in favor of every person relying thereon (a) that at the time of the execution of said instrument; the Trust was in full force and effect, (b) that the instrument was executed in accordance with the terms and conditions of this Trust Agreement and (c) that the Trustees were duly authorized and empowered to execute the instrument.   The Administrator of the Fund shall be the custodian, on behalf of the Trustees, of all documents and other records of the Trustees and of the Fund.

**Section 16.   Refund of Contributions.**   Nothing in this Agreement and Declaration of Trust shall prevent an overpayment or a contribution which is made by an Employer by a mistake of fact or law to be returned by the Trustees to such Employer, provided the refund is made within six (6) months after the plan administrator determines that the contribution was made by such a mistake.

**Section 17.   Non-Liability of a Trustee.**   No Trustees shall be personally liable for any loss resulting to the Fund arising from any act or omission on the part of any other Trustees as a result of the performance or non-performance of any responsibility; obligation and/or duty which is allocated to such other Trustees pursuant to this Agreement.

**Section 18.   Prior Breach.**   No Trustee shall be liable with respect to a breach of fiduciary duty if such breach was committed before he became or after he ceased to be a fiduciary.

**Section 19.  Receipt of Notices.**  The Trustees shall not be bound by any notice, direction, requisition, advice or request, unless and until it shall have been received by the Trustees at the principal place of business of the Trust Fund.

**Section 20.  Information to Participants and Beneficiaries.**  The Trustees shall provide Employees and their dependents such information as may be required by law.

**Section 21.  Multi-Employer Plan.**  The Trustees shall maintain and administer this Fund and Plan as a "Multi-Employer Plan" as that term is defined in Section 3(37)(A) of ERISA.

**Section 22.  Reserve Fund.**  The Trustees may maintain a reserve for expected administrative expenses reasonably anticipated to be incurred.

**Section 23.  Legal Action by Trustees.**  The Trustees may seek judicial protection by any action or proceeding they may deem necessary to settle their accounts or obtain a judicial determination or declaratory judgment as to any question of construction of this Trust Agreement or Welfare Plan or instruction as to any action thereunder.  Any such determination shall be binding upon all parties to or claiming under this Trust Agreement or the Pension Plan.

**Section 24.  Reimbursement of Legal Fees of Trustees and Employees.**
(a)  In the event any Trustee is made a defendant in any legal action (criminal or civil) instituted by a private individual, a government agency, the United States or a State or is called to testify before a Grand Jury with respect to any matter arising out of, either directly or indirectly, his or her duties as a Trustee, said Trustee may be reimbursed for such reasonable legal fees incurred in the defense of such action provided that:

(1)  Unless waived by the Trustees, said Trustee shall obtain

26

the prior written approval of the Fund of the compensation arrangement with the Trustee's attorney; and

(2)  Said Trustee is exonerated in the said legal action for any alleged wrongdoing, or the legal action or charges are dismissed as against said Trustee or in the case of a Trustee called to testify before a Grand Jury, said Trustee has been advised by the prosecuting authorities that he is not a target in said investigation.

(b)  In the event any employee of the Fund is made a defendant in any legal action (criminal or civil) instituted by a private individual, a governmental agency, the United States or a State, or is called to testify before a Grand Jury, in connection with any matter arising out of, either directly or indirectly, his or her duties as an employee of the Fund, said employee may be reimbursed for such reasonable legal fees incurred in defense of such action, provided that:

(1)  Unless waived by the Trustees, said employee shall obtain the prior written approval of the Fund of the compensation arrangement with the employee's attorney, and

(2)  Said employee is exonerated in the said legal action for any alleged wrongdoing, or the legal action or charges are dismissed or against said employee, or in the case of an employee called to testify before a Grand Jury, said employee is advised by the prosecuting authority that he or she is not a target of said investigation, and

(c)  The allegation(s) or claim(s) against the employee, or the subject matter of his/her Grand Jury testimony, occurred during the within the course of the employee's employment with the Fund.


C.  Nothing contained in this Section 24 shall be construed to grant any rights, demands or causes of action to any attorney(s) of said Trustee or employee, or to any Third Party.


**Section 25.   Funding Policy.**   The Trustees shall establish a Funding Policy which satisfies Part 3.  Title 1 of ERISA, and meet

at least annually to review such Funding Policy and methods.

**Section 26.   Indemnification.**   Except as otherwise provided by applicable law, the Fund shall protect, indemnify and hold harmless each Trustee and any person to whom a fiduciary responsibility with respect to the Fund has been allocated or delegated pursuant to this Agreement from and against all liabilities, damages, taxes, penalties, losses, claims, costs and expenses (including reasonable attorneys and other professional fees) incurred by such person as a result of any act, omission or conduct in connection with the performance of his or her duties under the Trust, Pension Plan, ERISA, Code or other applicable law, except for liabilities, damages, taxes penalties, losses, claims, costs or expenses arising from such person's own fraud, willful misconduct or gross negligence.

## ARTICLE VI
### ELIGIBILITY FOR AND METHOD OF PROVIDING BENEFITS

**Section 1.   Eligibility Requirements for Benefits.**   The Trustees shall have full authority to determine eligibility requirements for benefits and to adopt rules and regulations setting forth same which shall be binding on the Employee and their dependents.

**Section 2.   Method of Providing Benefits.**   The benefits shall be provided and maintained by such means as the Trustees shall in their sole discretion determine including the selection of administrators licensed or authorized to do business in the State of New Jersey.

**Section 3.   Written Plan of Benefits.**   The detailed basis on which payment of benefits is to be made shall be specified in writing by appropriate resolutions of the Trustees subject, however, to such change or modification by the Trustees from time to time as they in

their discretion may determine.  All such changes or modifications shall similarly be specified in writing by appropriate resolution of the Trustees.

ARTICLE VII

APPOINTMENT OF TRUSTEES, TERM OF OFFICE,<br>RESIGNATION AND REMOVAL

**Section 1.  Term as Trustee.**  Each Trustee shall continue to serve as such until (a) his death, (b) his incapacity, or (c) he is succeeded in the manner herein provided.

**Section 2 (a).  Appointment of Union Trustees.**  The Trustees appointed by the Union shall serve at the pleasure of same, a written certification by the President of that organization of the appointment or removal.  A Trustee may not be removed without, in the said certification or simultaneously therewith, an appointment being made designated his successor.

**Section 2 (b).  Appointment of Employer Trustees.**  The Employer Trustees shall be appointed by a majority of the non-delinquent then current Employers making contributions to the Fund in the month in which the appointment of an Employer Trustee is made. Employer Trustees shall serve at the pleasure of their respective appointors, a written certification of their appointment or removal by their appointors, filed with the Fund, being the sole and conclusive evidence of their appointment or removal.  A Trustee may not be removed without, in said certification or simultaneously therewith, an appointment being made designating his successor.

**Section 2 (c).**  In the event of the death of a Trustee, his proper removal, or his resignation in the manner provided hereinafter, a successor shall be immediately designated as is provided in Subsection (a) or (b) hereinabove, as applicable.  A notice of such

29

death, removal or notice of the receipt of a resignation shall be sent by the Fund, to the other Trustees and to all other appointors of the Trustees.  A Trustee may resign and become discharged from further duty and responsibility hereunder only in the following manner:  He shall give at least thirty (30) days notice in writing to the Fund and to his appointor and shall state therein the date that the resignation shall become effective, and the resignation shall become effective on such day unless (1) the resignation is withdrawn prior to such day, or prior to the appointment of a successor, whichever comes first, or (2) a successor Trustee shall have been appointed at an earlier date, in which event such resignation shall take effect immediately upon the appointment of such successor.  It is intended, however, that the resignation or removal of a Trustee shall not be effective until a successor Trustee has been designated and has accepted the Trusteeship.

**Section 2 (d).**  In the event that an Employer party hereto and having the power to appoint a Trustee ceases to be a contributing Employer or participant in the Fund, its Trustees shall thereupon be deemed to have resigned effective simultaneously therewith. Until such time as another contributing Employer, satisfactory to the other parties hereto, agrees to become a party to this Amended, Supplemented and Restated Agreement and Declaration of Trust with the power to appoint a Trustee, the remaining Employer Trustees shall appoint an interim Employer Trustee as provided hereinabove, who shall serve until said new Employer party appoints its Trustee.

**Section 2 (e).**  Any successor Trustee shall immediately upon his appointment as successor Trustee and his acceptance in writing thereto become vested with all the property, rights, powers, duties and obligations of a Trustee hereunder as if originally named as a Trusted hereunder.

**Section 2 (f).**  No successor Trustee shall any way be responsible for anything done or committee in the administration of the Trust

prior to becoming a Trustee or subsequent to the termination of his Trusteeship.

## ARTICLE VIII
### MEETINGS AND DECISIONS OF TRUSTEES

**Section 1.  Meetings of the Trustees.**  Meetings of the Trustees shall be held at such times and such place or places as they may from time to time determine, but not less often than quarterly. Written notice of a meeting shall not be required.

**Section 2.  Action by Trustees Without Meeting.**  Action by the Trustees may also be taken by them in writing without a meeting, provided, however, that in such cases there shall be unanimous written concurrence by all of the Trustees, which concurrence shall be set forth at the next scheduled meeting of the Trustees.

**Section 3.  Trustee's Decisions.**  Any or all decisions rendered by the Trustees with regard to any question or dispute shall require the concurrence of at least three (3) Trustees to such decision.

**Section 4.  Quorum.**  A quorum of all meetings of Trustees, regular or special, shall consist of at least two (2) Union Trustees and two (2) Employer Trustees.  In the absence of a quorum, the meeting may, nevertheless, proceed in the discretion of the Trustees present, but all action taken shall be subject to future approval or disapproval of the absent Trustees.

**Section 5.  Voting.**  Each Trustee shall have one vote on all matters, provided, however, if there are an unequal number of Union Trustees present as opposed to Employer Trustees, or vice versa, present at any meeting (provided a quorum is present, however) than in that event, the group of Trustees being the lesser in number shall be entitled to cast an equal number of votes as the group

31

that has the larger number present at such meetings.

**Section 6.   Minutes of Meetings.**   The Trustees shall keep minutes of all meetings but such minutes need not be verbatim.   Copies of the minutes shall be sent to all Trustees.

**Section 7.   Liabilities of Trustees.**   The Trustees shall not be personally liable for any act of omission or commission in the administration of the Fund except in the event of willful misconduct or fraud, and no Trustee shall be personally liable for the declaration of any other Trustee, except in the case of actual knowledge or participation therein.   The Trustees shall not be personally liable for any action taken or omitted by any agent or employee of the Fund duly selected or hired, nor for any loss incurred through investments of money or properties of the Fund or the failure to invest, nor for any liabilities or debts of the Fund contracted by them as Trustees, absent willful misconduct or fraud. No Trustee shall be liable for any action pursuant to this Agreement and Declaration of Trust taken in good faith or omitted, nor for any action or omission of any other Trustee except for his own gross negligence or willful misconduct.   The Trustees may consult with counsel selected in accordance with this Agreement and Declaration of Trust, and the opinion of said counsel shall be full and complete authority and protection in respect of any action taken up or omitted by the Trustees in good faith in accordance with the opinion of said counsel.   The Trustees shall be protected in acting upon a notice, resolution, request, consent, order, certificate, report, appraisal, opinion, telegram, cablegram, radiogram, telefax letter or other paper or document believed by them to be genuine and to have been signed or represented by the proper party or parties.   The provisions of this Section shall be subject to any limitations, restrictions or modifications that may be prescribed by ERISA, or by any other applicable statutes, and to the extent that this Section or any other provisions of this Agreement shall be in conflict with or in violation of any

pertinent provisions of ERISA, or any other applicable statutes, the latter shall prevail and the offending provisions hereof shall be deemed amended, modified or nullified accordingly.

**Section 8. Deadlocked Disputes and Resolution Thereof.** In the event of a deadlocked dispute between the Trustees in the course of the administration of the Fund, the Trustees shall endeavor to agree upon an impartial arbitrator to decide the matter and the decision of the arbitrator shall be final and binding upon them, and upon any Employees or persons claiming rights or benefits through such Employees affected by the matter. In the event of the failure of the Trustees to agree upon such impartial arbitrator within three (3) days, any Trustee or the Trustees shall have a right to apply to the United States District Court for the Eastern District of New Jersey for the designation of an impartial arbitrator. The decision of said arbitrator shall be final and binding upon all Trustees, the Union, all Employers, all Employees and all other persons claiming rights through or on behalf of the aforesaid or any of them. The fees of the arbitrator shall be borne by the Fund.

**Section 9. Delegation of Ministerial Duties.** The Trustees may delegate all of their ministerial duties or powers hereunder to any agents or employees of the Fund, including another Trustee or Trustees.

**Section 10. Trustee Vote.** A vote by a Trustee shall be considered nothing more than an expression of his opinion on any proposal concerning the affairs of the Fund.

**Section 11. Execution of Documents.** The Trustees may authorize an Employer Trustee and a Union Trustee or any joint group equally composed of Employer and Union Trustees to jointly execute any notice or other instrument in writing and all persons, partnerships, corporations or associations may rely thereupon that

such notice or instrument has been duly authorized and is binding on the Funds and Trustee.

**Section 12.  Allocation of Fiduciary Responsibilities.**  Consistent with applicable law, the Trustees may allocate fiduciary responsibilities amongst Trustees and designate persons other than Trustees to carry out fiduciary responsibilities by the adoption of any solution designating the person who shall carry out such fiduciary responsibilities.   The power to allocate fiduciary responsibility shall not apply to the allocation of the responsibilities to manage the assets of the Plan other than the power to appoint the investment manager or managers as permitted by Section 402(c) of ERISA.

**Section 13.  Telephone Action by Trustees.**  Action may also be taken by the Trustees by telephone communication provided however, in these such cases there shall be written concurrence of at least six (6) Trustees set forth at the next meeting of the Trustees.

**Section 14.  Special Meetings by Notice.**  Special meetings of the Trustees may be held by giving three (3) days written notice thereof, and the three (3) day time limit shall commence running from the date notice is received.

**ARTICLE IX**

**TERMINATION OF EMPLOYERS**

**Section 1.**  An Employer shall cease to be an Employer as defined in Section 1 of Article 1 of this Amended, Supplemented and Restated Agreement and Declaration of Trust, whenever:

**Section 1 (a).**  Such Employer fails to make its contributions when due or within the period of time allowed by the Trustees for the payment thereof or otherwise fails to comply with demands made by

34

the Trustees pursuant to Rules and Regulations and amendments thereto duly formulated and established, or demands made by the Trustees pursuant to this Restated Agreement and Declaration of Trust and amendments hereto fully formulated and established, and the Trustees declare such Employer as no longer an Employer within the meaning of Section 1 Article 1; or

**Section 1 (b).** Such Employer no longer qualifies as an Employer as defined in Section 1 of Article I.

**Section 2. Effect of Termination of Individual Employer.** When as provided in Section 1 of this Article IX an Employer ceases to be an Employer hereunder, it shall have not further rights under this Restated Agreement and Declaration of Trust and its Employees shall cease to be Employees as defined in Section 2 of Article I and shall not thereafter qualify for benefits under the Pension Plan for such period or periods in which contributions were not made by the Employer or for benefits arising from employment in such periods in which said contributions were not made, except as hereinafter provided in this Article IX or otherwise provided under the Pension Plan.

**Section 2. Obligations of Discontinued Employer.** An Employer who ceases to be an Employer hereunder for the reasons stated in Section 1(a) of this Article IX, upon payment to the Trustees of all amounts then due from it, including such interest, penalties or security for payment, as may be demanded by the Trustees properly hereunder, and any expenses, including costs and fees incurred by the Fund by reason of the Employer's default, may be reinstated as an Employer hereunder by the Trustees in their discretion, and in such event the Employees of said Employer shall be deemed as Employees as defined in Section 2 of Article I and entitled to the benefits of this Restated Agreement and Declaration of Trust and of the Pension Plan, subject to such

35

conditions as may be provided therefore in the Pension Plan and except as may otherwise be provided in the Pension Plan.

**Section 4.  Liability of Discontinued Employer.**  An Employer who ceases to be an Employer hereunder for the reasons stated in Section 1(a) of this Article IX shall continue to remain fully liable for all contributions and the satisfaction of proper demands and other payments required to be made.  An Employer who ceases to be an Employer for the reason stated in Section 1(b) of this Article IX shall remain liable for all contributions, interest and penalties through the date of termination as aforesaid or otherwise in accordance with the Rules and Regulations duly promulgated by the Trustees.

**ARTICLE X**

**AMENDMENTS TO TRUST AGREEMENT**

**Section 1.   Amendments Permitted and Not Permitted to Trust Agreement.**  This instrument may be amended to any extent at any time or form time to time by the majority vote of the Trustees serving at the time, except that no amendment may be made which will in any manner be contrary to or inconsistent with, or divert the Fund or any part thereof from the purpose of the Fund as set forth in Section 1 of Article II, or permit a return of payments or assets of the Fund to Employers (except in order to adjust overpayment made by Employers or return payment not otherwise properly made by Employers or received by the Fund to the extent permitted by law), or eliminate the requirement for an annual audit, or provide that the Fund shall be administered other than by an equal number of Employer Trustees and Union Trustees, or be contrary to the laws governing Trust Funds of this nature, including but not limited to, ERISA.

**Section 2. Meetings for Amendment Action.**  Any action taken by the

36

Trustees pursuant to Section 1 of this Article X may be taken either at a regular meeting or a special meeting called with written notice to all Trustees of the purpose of the meeting to propose an amendment or amendments, or in writing without a meeting.

## ARTICLE XI

## BENEFICIAL RIGHTS

**Section 1. Rights in Fund of Employer or Union.** No Employer, or Union, shall have any right, title or interest in or to the Trust Fund or any part thereof, other than as provided in the plan of benefits. No Employee or beneficial shall have any right to receive any part of the Employer's contribution in lieu of the benefits to which he may be entitled. Said benefits shall be free from the interference and control of any creditor, and no benefits shall be subject to any assignment or other anticipation, nor subject to seizure or sale under legal, equitable or any other process, except to the extent permitted by law; and in the event that any claim or benefit shall, because of any debt incurred by or resulting from any other claim or liability against any Employee or beneficiary, by reason of any sale, assignment, transfer, encumbrance, anticipation or other disposition made or attempted by said Employee or beneficiary, or by reason of any seizure or sale or attempted sale under any legal, equitable or other process, or in any suit or proceeding, become payable, or be liable to become payable, to any person other than the Employee or beneficiary for whom the same is intended, the Trustees shall have power to withhold payment of such benefit to such Employee or beneficiary until such assignment, transfer, encumbrance, anticipation or other disposition, writ, or legal process is canceled or withdrawn in such manner as shall be satisfactory to the Trustees.

37

ARTICLE XIII

## TERMINATION, MERGER OR CONSOLIDATION OF THE TRUST

**Section 1a).  By the Trustees.**  The Agreement and Declaration of Trust may be terminated by an instrument in writing executed by all the Trustees only when there is no longer in force and effect a collective bargaining agreement between any Employer and any Union requiring contributions to the Fund.

**Section 1b).  Conditions of Termination.**  This Trust Agreement shall cease and terminate upon the happening of any one or more of the following events:

(a)  In the event the Fund shall, in the opinion of the Trustees, be inadequate to carry out the intent and purpose of this Trust Agreement, or inadequate to meet the payments due or to become due under this Trust Agreement and under the plan of benefits to Employees and their dependents already drawing benefits;

(b)  In the event there are no individuals living who can qualify as Employees hereunder;

(c)  In the event of termination by resolution of the Union and the Employers.

**Section 2.   Procedure on Termination.**   In the event of the termination of this Agreement and Declaration of Trust, the Trustees shall apply the Fund to pay or to provide for the payment of any and all obligations of the Fund and shall distribute and apply any remaining surplus in such manner as will in their opinion best effectuate the purpose of the Fund; provided, however, that no part of the corpus or income of said Fund shall be used for or diverted to purposes other than for the exclusive benefit of the Employees, their families, beneficiaries, or dependents, or the administrative expenses of the Fund or for other payments in accordance with the provisions of the Fund.  Under no circumstances shall any portion of the corpus or income of the Fund, directly or indirectly, revert or accrue to the benefit of any contributing Employer or Union.

38

**Section 3. Notification of Termination.** Upon termination of the Fund in accordance with this Article, the Trustees shall forthwith notify each Union and each Employer of any policies or contracts which may be held as part of the Fund and also all other necessary parties, and the Trustees shall continue as Trustees for purposes of winding up the affairs of the Trust and amy take any action with regard to any policies or contracts which may be required by Law. In the event that there are no Employees at the time the Trust is terminated, the Trustees may apply to a court of competent jurisdiction in the State of New Jersey for instructions regarding the distribution of the assets remaining, if any, after payment of all obligations.

**Section 4. Merger or Consolidation.** If it appears to the Trustees that it would be in the best interests of the Fund and the Employees to merge or consolidate the Trust with another trust fund in order to maintain or provide benefits to the Employees, or in order to avoid hardship caused by a termination of the Fund, the Trustees shall have the power to effectuate such a merger or consolidation upon such terms and under such conditions as they deem reasonable and appropriate. The Fund may be merged or consolidated at any time by the unanimous vote of all Trustees either at a regular meeting, a special meeting called with written notice to all Trustees of the purpose of the meeting to propose a merger or consolidation, or in writing without a meeting.

**ARTICLE XIII**

**CLAIM PROCEDURES AND EXHAUSTION REMEDIES**

**Section 1 (a). Claim Procedures; Exhaustion of Remedies.** Neither the Union, Employee or person claiming rights or entitlement other than to benefits through any Employee, nor any Employer shall institute any suit at law or in equity, or before any

39

administrative tribunal, against the Fund or the Trustees without having first, and within a reasonable time after the asserted claim shall have arisen, demanded a hearing before the Trustees, in writing, and at such hearing having apprised the Trustees of the basis of the claim, supplied to the Trustees such evidence as may be necessary to a fair determination of the claim by the Trustees, and given the Trustees a reasonable opportunity to investigate the claim and determine its propriety.  In the event that a hearing is denied by the Trustees or such claim is rejected by the Trustees after a hearing, the claimant shall follow the procedure specified in subsection (b) hereinbelow.

Section 1 (b).  To reduce the amount of Trust funds which might otherwise have to be diverted to the defense of suits at law or in equity, or before administrative tribunals, to a minimum, and to reduce the time to Fund personnel devoted to such claims to a minimum, and to nevertheless provide an alternate hearing procedure for claims rejected by the Trustees after a hearing, or in the event that a hearing is denied by the Trustees, the following procedures shall be deemed mandatory, upon the Union, all Employees or persons claiming rights or entitlement other than to benefits through any Employee, and all Employers, to wit: upon the rejection of such claim after hearing or the denial of a hearing by the Trustees, the said claimant shall in writing, by letter addressed to the Fund, certified mail offer to arbitrate such claim under and in accordance with the Rules of the New Jersey State Board of Mediation, and agree therein or thereby that the decision of the arbitrator so designated by said Board shall be final and binding upon the claimant and the Fund.  The Trustees shall advise the claimant or his representative at the address to be specified in said letter of the claimant, in writing, certified mail, postmarked within ten (10) days of the claimant's said letter in the event that it agrees to such final and binding arbitration.  In the event that the Trustees fail to so agree, nothing in this subsection (b) shall preclude the institution of a suit before an appropriate

court or administrative tribunal by the said claimant.    In the event that the Trustees do so agree to the said arbitration, said claim shall be processed to arbitration by the claimant under and in accordance with the Rules of the New Jersey State Board of Mediation, and the decision of the arbitrator designated by the Board shall be final and binding upon the claimant and upon the Fund and the Trustees.    The arbitrator's fees shall be assessed against the claimant or against the Fund, or may be divided between them, as the arbitrator shall determine in his award.

**Section 1 (c).**    The claim procedures which Employees and their dependents must follow in the event of the denial of their claim for benefits under the Welfare Plan are set forth in the Welfare Plan, which procedures are in compliance with Section 503 of ERISA.

**Section 1 (d).**    The claim procedures and remedies prescribed in subsections (a) and (b) hereinabove shall apply to all Union claims with respect to the payment of contributions by the Union to the Fund as permitted under Article I and any dispute between the Union and the Fund arising therefrom; to all Employer claims with respect to the payment of contributions by the Employer to the Fund and any dispute between the Employer and the Fund arising therefrom, and to all Employee claims of persons through or on behalf of an Employee against the Fund or the Trustees other than for benefits under the Welfare Plan and any dispute between the Employee or persons claiming through or on behalf of the Employee and the Fund arising therefrom.

**Section 1 (e).    Appeals Board.**
1) There shall be an Appeals Board consisting of two (2) Trustees who shall be appointed by the Board of Trustees.    The function of the Appeals Board shall be to (i) hear appeals of the denial of claims of Participants or their dependents ("Claimants"), (ii) to consider the information and data presented by the Claimants with respect to such appeals, and (iii) to recommend to the Trustees as

41

to each appeal whether the Fund Administrator's denial of benefits should be upheld or reversed. The Appeals Board will refer questions of interpretation and application of the Welfare Plan and questions as may arise in connection with the operation of the Plan to the Trustees for resolution.

2)   The Appeals Board shall hold meetings upon such notice and at such times as it may determine is reasonably necessary to effectuate the Pension Plan's appeal procedures. A quorum for such meetings of the Appeals Board shall consist of one Employer Trustee and one Union Trustee. All recommendations made by the Appeals Board to the Trustees on the disposition of an appeal shall be agreed to by both the Employer Trustee and the Union Trustee on the appeals Board. If the disposition of an appeal cannot be so agreed upon, it shall be referred to the Trustees for their review at the next regularly scheduled meeting.

3)   All recommendations of the Appeals Board on the disposition of the appeals shall be reported to the Trustees at the next regularly scheduled meeting. The Trustees shall have the power to (i) accept or reject the recommendation of the Appeals Board, (ii) request that the Appeals Board reconsider its determination of an appeal or (iii) make its own recommendation on an appeal.

4)   Any member of the Appeals Board may resign by delivering his or her written resignation to the Trustees.

5)   This Section 1(e) is not intended to modify in any way the requirements of the benefit claim procedures of the Pension Plan referred to in Section 1(c) of this Article.

## ARTICLE XIV

### MISCELLANEOUS PROVISIONS

**Section 1.   Records to be Furnished Trustees.** Each Employer and each Employee shall furnish to the Trustees such records and information that the Trustees may require in connection with their administration of the Fund, their investigation in connection with

1the Pension Plan and changes thereto, and in connection with verifying the accuracy of Employers' contributions and payment of benefits to Employees.  All persons claiming rights or entitlement through an Employee shall similarly furnish to the Trustee such records and information that the Trustees may require in determining the existence of an entitlement to rights and benefits from the Fund.

**Section 2.  Severability.**   If any provision of this Restated Agreement and Declaration of Trust is held to be invalid by lawful authority, it shall not nullify any other term or provision not otherwise invalid.  The provisions of this instrument shall be deemed as automatically amended to conform with the law and the Trustees shall meet and take the necessary and appropriate action to formally amend this instrument in a manner consistent thereto.

**Section 3.  Agency.  Certification of Trustees' Actions.**   T h e Chairman and Secretary of the Trustees may execute any certificate or document jointly on behalf of the Trustees and such execution shall be deemed execution by all the Trustees.  All persons having dealings with the Fund or with the Trustees shall be fully protected in reliance placed on such duly executed document.

**Section 4.  Refund of Contributions.**   In no event shall any Employer, directly or indirectly receive any refund on contributions made by them to the Trust except in the case of a bona fide erroneous payment or overpayment of contributions, to the extent permitted by law, nor shall any Employer directly or indirectly participate in the disposition of the Trust Fund or receive any benefits from the Trust Fund.

**Section 5.  Approval of Governmental Agencies.**  This Agreement and Declaration of Trust and any benefit plan or plans shall be submitted for such approval by such agencies or government as may

43

be required under applicable law and shall be subject to such approval.  The Trustees shall promptly after consultation with counsel, execute such amendments as may be proper in order to achieve any such approval to the end that all Employer contributions hereunder shall be properly deductible by contributing Employers for income tax purposes, all income to the Fund shall be exempt from such taxes, and all pertinent provisions of ERISA shall be duly complied with.

**Section 6.  Other Employers and Their Employees May Join the Plan.** The Trustees may extend the coverage of this Trust Agreement to such other parties and upon such terms and conditions as the Trustees shall determine, provided such parties are required to conform to the terms and conditions of this Trust Agreement and to make the same or greater rate of contributions required of the Employers herein for the same schedule of benefits.  Such other Employers and their Employees shall have no right to participate in the appointment or replacement of Trustees.

**Section 7.  Reciprocity Agreements.**  The Trustees may, in their sole discretion, enter into such reciprocity agreement or agreements with other welfare funds as they determine to be in the best interests of the Fund, provided that any such reciprocity agreement or agreements shall not be inconsistent with the terms of this Trust Agreement or the written agreements under which this Agreement is maintained.

**Section 8.  Gender.**  Whenever any words are used in this Trust Agreement in the masculine gender, they shall also be construed to include the feminine or neuter gender in all situations where they would apply; and whenever any words are used in the singular, they shall also be construed to include the plural in all situations where they would so apply and wherever any words are used in the plural, they shall also be construed to include the singular.

**Section 9.   Article and Section Titles.**   The Article and Section Titles are included solely for convenience and shall, in no event, be construed to affect or be construed as part thereof.

**Section 10.    Incorporation of Other Documents.**   All rules, regulations, provisions and requirements established or promulgated by the Trustees pursuant to the terms hereof shall be deemed incorporated in and made a part of this Trust Agreement and shall be binding upon the parties hereto with the same force and effect as if herein originally contained.

**Section 11.  Plan Interpretation.**  No individual or person may act as agent for the Fund unless specifically authorized in writing by the Trustees.  No Employer or Union nor any representative of any Employer or Union,  is authorized to interpret the Plan, nor can any such person act as agent of the Trustees.  Only the Board of Trustees is authorized to interpret the Plan.

**Section 12.   Receipt of Benefit From the Fund.**   The only individuals who shall be entitled to participate in and receive benefits from the Fund shall be Employees and beneficiaries.  It is expected that contributing Employers will submit contributions only on behalf of Employees.  The receipt by the Fund of contributions on behalf of individuals who are not eligible to participate shall not estop the Trustees from declining coverage or terminating the participation of such individuals or persons designated thereby, nor shall it constitute a waiver, by the Trustees, of any of the provisions of this Trust Agreement or the Pension Plan.

**Section 13.  Entire Agreement.**  This Trust Agreement states the entire agreement of the parties hereto, is intended to be the complete and exclusive statement of the terms hereof, and may not be modified or amended except by a writing signed by the parties hereto.

## ARTICLE XV

### SITUS AND CONSTRUCTION OF TRUST

**Section 1(a).    Situs of Trust.**   The Trust shall be deemed as created and accepted by the Trustees in the State of New Jersey and all questions pertaining to the validity of construction of this Trust Agreement and of the acts and transactions of the parties hereto shall be determined in accordance with the laws of the State of New Jersey, except to the extent preempted by ERISA.

IN WITNESS WHEREOF, the undersigned do hereunto cause this instrument to be duly executed on this _9th_ day of _September_ 1992, as the date hereinabove first set forth.

IN WITNESS WHEREOF, the Trustees have caused this Restated Agreement and Declaration of Trust to be executed this _9th_ day of _September_ 1992.

| UNION TRUSTEES | EMPLOYER TRUSTEES |
|---|---|
| John T. Niccollai | Gilbert Vuolo |
| Ramon Rando | Martin Quinn |
| John Niccollai, Sr. | Isadore Zalkin |
| Walter V. Biernacki | Dewey V. Cannella |

46

**EXHIBIT B**

## CUSTODIAL AND INVESTMENT MANAGEMENT AGREEMENT

THIS AGREEMENT made this 20th day of September, 2001, by and among the Trustees of the United Food and Commercial Workers Local 464 benefit plans listed on Attachment A (hereinafter referred to as "Trustees"), sponsors and administrators of the United Food and Commercial Workers Local 464 benefit plans listed on Attachment A (hereinafter referred to as "Plan"), and First Union National Bank as custodian and investment manager (hereinafter referred to as "First Union")

### WITNESSETH

WHEREAS, Trustees are the sponsors and administrators of the Plan; and

WHEREAS, the Plan is designed to comply with applicable provisions of the Internal Revenue Code of 1986, as amended, (Code) and the Employee Retirement Income Security Act of 1974, as amended, (ERISA);

WHEREAS, Trustees and certain contributing employers have executed a trust agreement under each of the plans listed on Attachment A (hereinafter referred to as "Trust Agreement");

WHEREAS, Trustees desire to establish a Custodial Account, as defined below, and appoint First Union to hold and invest the assets of the trust and to perform such functions as directed by the Trustees;

NOW, THEREFORE, in consideration of the premises and the mutual covenants herein contained, it is agreed by and between the Trustees and First Union as follows:

### ARTICLE I

### ESTABLISHMENT OF THE CUSTODIAL ACCOUNT

1.1     The Trustees hereby establish with First Union an account consisting of such sums of money or property as shall from time to time be paid to First Union under the Plan, and such earnings, profits, increments, additions and appreciation thereto and thereon as may accrue from time to time. All such sums of money, all investments made therewith or proceeds thereof, and all earnings, profits, increments, appreciation and additions thereto and thereon, less the payments which shall have been made by First Union, as authorized herein, to carry out the Plan, are referred to herein as the "Custodial Account".

1.2     First Union shall not be responsible for the collection of any funds required by the Plan to be paid by the Trustees to First Union.

1

1.3     It shall be the duty of First Union hereunder:

(a)     To hold and administer the Custodial Account pursuant to the direction of the Trustee,

(b)     Notwithstanding subsection (a), to invest the Custodial Account (or designated portion thereof) pursuant to Article II, and

(c)     From time to time, on the written direction of the Trustee, to make disbursements out of the Custodial Account to such persons, in such manner, in such amounts, and for such purposes as may be specified in such written direction. First Union shall be under no liability for any disbursement made by it pursuant to such a direction.

## ARTICLE II

### INVESTMENT OF THE CUSTODIAL ACCOUNT

2.1     First Union shall invest and reinvest the principal and income of the Custodial Account in its sole discretion (subject to any investment guidelines of the Principal set forth in writing and attached hereto) and keep the same invested without distinction between principal and income.

2.2     First Union shall have the following powers in addition to the powers customarily vested in custodians and investment managers by law and in no way in derogation thereof:

(a)     With any cash at any time held by it, to purchase or subscribe for any authorized investment, and to retain such authorized investment in trust;

(b)     To sell for cash or on credit, convert, redeem, exchange for another authorized investment, or otherwise dispose of, any authorized investment at any time held by it;

(c)     To retain uninvested all or any part of the Custodial Account;

(d)     To purchase authorized investments at a premium or discount;

(e)     To employ suitable agents, actuaries, accountants, investment advisors or managers and counsel and to pay their reasonable expenses and compensation;

2

(f)      To cause any investment in the Custodial Account to be registered in, or transferred into, its name as First Union or the name of its nominee or nominees or to retain them unregistered or in form permitting transfer by delivery, but the books and records of First Union shall at all times show that all such investments are part of the Custodial Account;

(g)      To do all acts which it may deem necessary or proper and to exercise any and all powers of First Union under this Agreement upon such terms and conditions which it may deem are for the best interests of the Custodial Account; and

(h)      To make disbursements from the Custodial Account in amounts and in the manner as directed by the Trustees; provided, however, that First Union shall have no responsibility to ascertain whether such direction complies within the terms of the Plan or the Trust Agreement. . .,

2.3      "Authorized Investment" as used in this Article II shall mean bonds, debentures, notes, or other evidences of indebtedness; stocks, or other evidences of ownership in any corporation, mutual investment fund, common or collective trust fund, pooled investment fund, investment company, including proprietary funds of First Union, association, or business trust; life insurance; retirement income or annuity contracts; and real and personal property of all kinds, including leaseholds on improved and unimproved real estate. Authorized investments shall not be limited to that class of investment which are defined as legal investments for trust funds under the law of the State of New Jersey.

## ARTICLE III

### ACCOUNTS TO BE KEPT AND RENDERED BY FIRST UNION

3.1      First Union shall keep accurate and detailed accounts of all investments, receipts and disbursements and other transactions hereunder, including such specific records as shall be required by law and such additional records as may be agreed upon in writing between the Trustees and First Union. In compiling such information with respect to any unique or non-routine investment which does not have a readily ascertainable market value, First Union shall be entitled to rely on the Trustee's determination of value and shall have no duty to verify the accuracy of the Trustee's determination. All accounts, books and records relating thereto shall be open to inspection and audit by any person or persons designated by the Trustees or Trustee at all reasonable times.

3.2      Within ninety (90) days following the close of each year of the Plan or the receipt of the contribution for such year, whichever is the latter, and within ninety (90) days after the effective date of its removal or resignation; First Union shall file with the Trustees a

3

PAGE 11/24

12/05/2008 15:52 2022238651 Case 2:09-cv-00668-WJM-MF MURPHY ANDERSON PLLC Document 1 Filed 02/13/09 Page 80 of 90 PageID: 80

·DEC. 4.2008 2:49PM NO.635 P. 6

written account, setting forth all investments, receipts and disbursements, and other transactions effected by it during such year of the Plan or during the period from the close of the last preceding year of the Plan to the date of such removal or resignation, including a description of all securities and investments purchased and sold with the cost or net proceeds of such purchases or sales, and showing all cash, securities and other property held at the end of such year of the Plan. Neither the Trustees nor any other person shall have the right to demand or to be entitled to any further or different accounting by First Union, except as may be required by statute or by regulations published by federal government agencies with respect to reporting and disclosure.

3.3 Upon the expiration of two years following the date of filing such annual or other accounting, First Union shall be forever released and discharged from any liability or accountability to anyone as respects the propriety of its acts or transactions shown in such account, except with respect to any acts or transactions as to which the Trustees or the Trustee shall set forth in a written statement claiming negligence or willful misconduct or lack of good faith on the part of First Union which is filed with First Union during such two year period.

## ARTICLE IV

## RIGHTS AND RESPONSIBILITIES OF FIRST UNION

4.1 First Union accepts the Custodial Account hereby created and agrees to perform the duties hereby required by it, subject, however, to the following conditions:

(a) First Union shall incur no liability to anyone for any action taken pursuant to a direction, request or approval given by the Trustees, the Trustee, a Plan Participant or any other party to whom authority to give such directions, requests or approvals is delegated under the Plan or the Trust Agreement.

(b) First Union shall receive as compensation for its services such amounts as may be agreed upon at the time of execution of this Agreement, subject to change at any time and from time to time by agreement between the Trustees and First Union. Except as otherwise provided herein, First Union's compensation and any other proper expense of First Union for the Custodial Account (unless payable out of the Custodial Account) including all real and personal property taxes, income taxes, transfer taxes, and other taxes of any and all kinds whatsoever shall be paid by the Trustees; provided, however, that First Union shall be authorized, but not obligated, to charge such compensation and expenses against the Custodial Account.

(c) First Union shall not be answerable for any action taken pursuant to any direction, consent, request, or other paper or document on the belief that the same is genuine if such direction, consent, request or other paper or document relates to a matter with respect to which the purported initiator or signatory has authority under the Plan or Trust Agreement.

4

12/05/2008  19:52  2022238651                 MURPHY ANDERSON PLLC

(d)    The Trustees shall be liable for, and shall indemnify and hold harmless First Union against any actions, claims demands, losses, damage or expenses of any kind (including attorney's fees), or liabilities (referred to collectively as "Claims") which it or any of its agents, employees, nominees, or affiliated organizations may at any time sustain or incur to the extent such Claims arise out of the events occurring by reason of: (a) the negligence, malfeasance or bad faith of the Trustees in the performance of the Trustees' duties; (b) First Union having acted pursuant to any direction, consent, request, or other paper or document it believed to be genuine; and (c) the Trustees' failure to perform their duties in accordance with the fiduciary standards under ERISA or to comply with applicable law.

4.2    As a condition of its service hereunder, First Union specifically agrees as follows:

(a)    First Union acknowledges that it is a fiduciary under section 3(21) of ERISA with respect to the assets in the Account to the extent it exercises any discretionary authority and represents and warrants that it is a bank within the meaning of the Investment Advisers Act of 1940 and section 3(38) of ERISA.

(b)    First Union shall obtain and maintain a bond satisfying the requirements of Section 412 of ERISA (or alternatively, if it is contended that First Union is not subject to the bonding requirements: First Union represents and warrants that it is not subject to the bonding requirements of Section 412 of ERISA. First Union agrees to promptly notify the Trustees of any change in this representation, and agrees that it will obtain a bond in satisfaction of said requirements at such time as they may become applicable to First Union.)

(c)    First Union shall be liable for, and shall indemnify and hold harmless the Trustees against any actions, claims demands, losses, damage or expenses of any kind (including attorney's fees), or liabilities (referred to collectively as "Claims") which it or any of its agents, employees, nominees, or affiliated organizations may at any time sustain or incur to the extent such Claims arise out of the events occurring by reason of: (a) the negligence, malfeasance or bad faith of First Union in the performance of its duties; and (b) First Union's failure to perform its duties in accordance with the applicable fiduciary standards under ERISA or to comply with applicable law.

4.3    First Union acting hereunder may resign at any time by giving 90 days' written notice to the Trustees. The Trustees may terminate First Union at any time by giving 90 days' written notice to First Union. The above notwithstanding, resignation or termination may be made at any time upon mutual consent of the parties.

4.4    First Union is not a trustee and holds the assets as custodian pursuant to this agreement between Principal and First Union. In no event shall First Union be required or authorized to exercise any powers which would cause First Union to be deemed a trustee. First Union acknowledges that it is an "investment manager" as that term is defined in section 3(38) of ERISA and a fiduciary under section 3(21) of ERISA with respect to the assets in the Account to the extent it exercises any discretionary authority.

5

2022238651

PAGE 13/24

12/05/2008 15:52 2022238651   Case 2:09-cv-00669-WHW-MF   Document 1   MURPHY ANDERSON PLLC   Filed 02/13/09   Page 82 of 90 PageID: 82

.DEC. 4. 2008 2:50PM                                    NO. 635   P. 8

## ARTICLE V

## AMENDMENTS TO CUSTODIAL AND
## INVESTMENT MANAGEMENT AGREEMENT -DISCONTINUANCE OF PLAN

5.1     The provisions of this Custodial and Investment Management Agreement may be amended at any time and from time to time upon mutual agreement between the Trustees and First Union provided that:

(a)     No such amendment shall be effective unless the Custodial and Investment Management Agreement, as so amended, continues to operate for the exclusive benefit of the employees of the contributing employers and their respective beneficiaries.

(b)     No such amendment shall operate to deprive a Participant of any rights or benefits irrevocably vested under the Plan or Trust Agreement prior to such amendment.

(c)     Each such amendment shall be effective when adopted by the Trustees and accepted by First Union within an administratively reasonable amount of time.

## ARTICLE VI

## MISCELLANEOUS PROVISIONS

6.1     Any person dealing with First Union may rely upon a copy of this Agreement and any amendments thereto, certified to be a true and correct copy by any officer of First Union.

6.2     Other than as provided in Section 4.1 hereof, in no circumstances, whether upon amendment or termination of this Agreement, or otherwise, shall any part of the Custodial Account be used for or diverted to any purposes other than the exclusive benefit of employees of the contributing employers who are Participants under the Plan, or their beneficiaries.

6.3     The term "Plan" whenever used herein shall mean the Plan as amended from time to time, and the Trustees will cause a copy of any amendment or a copy of the Plan, as amended, revised or changed, in any way and from time to time to be delivered to First Union.

6.4     The term "Trust Agreement" whenever used herein shall mean the Trust Agreement as amended from time to time, and the Trustees will cause a copy of any

6

amendment, or a copy of the Trust Agreement, as amended, revised or changed, in any way and from time to time to be delivered to First Union.

6.5   Upon any change in the Trustee or an investment manager, the Trustees shall advise First Union in writing thereof, and First Union shall be fully protected in assuming that there has been no change until so advised by the Trustees.

7

12/05/2008  15:52   2022238651              MURPHY ANDERSON PLLC

DEC. 4.2008  2:50PM                                    NO. 635   P. 10

6.6    This Agreement shall be binding on any and all successors to the Trustee.

6.7    This Agreement shall be construed, enforced and regulated under federal law, and to the extent (if any) not preempted thereby, under the laws of the State of New Jersey.

IN WITNESS WHEREOF, the Trustees and First Union have caused this Agreement to be executed and their respective seals to be hereunto affixed and attested as of the day and year first above written.

First Union National Bank                    "Trustees"

By: _____                        By: _____
Title: Vice President                        Authorized Signature
                                             Date: 9/20/01

                                             By: _____
                                             Authorized Signature

                                             Date: 9/20/01

                                             By: _____
                                             Authorized Signature

                                             Date: 9/21/01

By: _____                        By: _____
    Authorized Signature                         Authorized Signature

Date: _____                      Date: 9-20-01

By: _____                        By: _____
    Authorized Signature                         Authorized Signature

Date: _____                      Date: 9/20/01

By: _____                        By: _____
    Authorized Signature                         Authorized Signature

Date: _____                      Date: 9/20/01

8

2022238651

6.6   This Agreement shall be binding on any and all successors to the Trustee.

6.7   This Agreement shall be construed, enforced and regulated under federal law, and to the extent (if any) not preempted thereby, under the laws of the State of New Jersey.

IN WITNESS WHEREOF, the Trustees and First Union have caused this Agreement to be executed and their respective seals to be hereunto affixed and attested as of the day and year first above written.

First Union National Bank                    "Trustees"

By: _____                      By: _____
                                                 Authorized Signature
Title: VICE PRESIDENT                         Date: 9/20/01

                                             By: _____
                                                 Authorized Signature

                                             Date: 9/20/01

                                             By: _____
                                                 Authorized Signature

                                             Date: 9/21/01

By: _____                      By: _____
    Authorized Signature                         Authorized Signature

Date: 10/1/01                                Date: 9-20-01

By: _____                      By: _____
    Authorized Signature                         Authorized Signature

Date: _____                    Date: 9/20/01

                                             By: _____
                                                 Authorized Signature

                                             Date: 9/20/01

8

2022238651

PAGE 16/24

12/05/2008 15:52 2022238651 Case 2:09-cv-00668-WJM-MF Document MURPHY ANDERSON PLLC Filed 02/13/09 Page 86 of 90 PageID: 86

DEC. 4.2008 2:50PM                                        NO.635  P. 11

6.6    This Agreement shall be binding on any and all successors to the Trustee.

6.7    This Agreement shall be construed, enforced and regulated under federal law, and to the extent (if any) not preempted thereby, under the laws of the State of New Jersey.

IN WITNESS WHEREOF, the Trustees and First Union have caused this Agreement to be executed and their respective seals to be hereunto affixed and attested as of the day and year first above written.

First Union National Bank                    "Trustees"

By: _____               By: _____
                                                Authorized Signature
Title: VICE PRESIDENT                        Date: 9/20/01

                                             By: _____
                                                Authorized Signature

                                             Date: 9/20/01

                                             By: _____
                                                Authorized Signature

                                             Date: 9/21/01

By: _____               By: _____
    Authorized Signature                        Authorized Signature

Date: _____             Date: 9-20-01

By: _____               By: _____
    Authorized Signature                        Authorized Signature

Date: _____             Date: 9/20/01

                                             By: _____
                                                Authorized Signature

                                             Date: 9/20/01

                                                       10/2/01

8

2022238651

# ATTACHMENT A
## (List of plans)

Welfare and Pension Funds of Local 464A – Pension Fund

United Food and Commercial Workers International Union AFL-CIO, Local 464A- Excess Benefit Fund

United Food and Commercial Workers International Union AFL-CIO, Local 464A- General Fund

United Food and Commercial Workers International Union AFL-CIO, Local 464A- Retirement Plan for Officers, Business Representatives and Office Employees of Local 464A

Local 464 A Welfare and Pension Building, Inc.

United Food and Commercial Workers Union Local 464A (489) Pension Fund

New York-New Jersey Amalgamated Pension Plan for Full Time A&P Employees

Local 464A Finast Full Time Employees Pension Plan

Local 464A (489) Prepaid Group Legal Services Trust Fund

Strike and Organizational Work Fund

Supplemental Unemployment Fund

Local 464A Political Candidates Fund

Unusual and Emergency Situation Fund

Convention Fund

**<u>EXHIBIT C</u>**



# Evergreen Investments™

401 South Tryon Street
Suite 500
Charlotte, NC 28202

November 3, 2008

Mr. John Niccollai                             **VIA FACSIMILE**
President & Trustee
United Food and Commercial Workers Local 464A
245 Paterson Avenue
Little Falls, NJ 07424

Dear John:

Our overall investment strategy has focused on identifying opportunities in three primary sectors of emphasis in your portfolio: (1) an overweight to commercial mortgage-backed securities (CMBS), (2) an overweight to investment grade corporates, and (3) a position in non-agency residential mortgage-backed securities (RMBS). While all three sectors have continued to lag the market, causing significant underperformance relative to the benchmark, we continue to believe all three areas offer substantial value.

We are contacting you regarding one particular sector: non-agency RMBS. This is the sector where the underlying mortgage collateral fundamentals have been most challenging. Based on our continuous stress testing analysis of these securities, our loss assumptions on the underlying collateral have been increased as the national housing market continues to decline in value. However, our loss assumptions, like those of most in the marketplace (in our opinion) have generally been much more conservative than the loss assumptions of the national rating agencies.

Recently, Standard & Poor's raised its cumulative loss assumptions, causing some significant near-term ratings pressure in the RMBS sector up to the "AAA" level, leading S&P to change its ratings on certain issues. These rating decisions imply a risk of a shortfall to full recovery at par at maturity.

As a consequence of these rating actions, some "AAA" positions held across client portfolios are being downgraded to below investment grade levels. However, to date, this has not had a material impact on the prices of these issues as loss-adjusted yields are already well into the double digits.

Prices in the non-agency RMBS sector have dropped precipitously over the last 12 months and, in our opinion, already reflect the risk of current downgrades and potential principal write-downs. We believe that many buyers of this sector currently disregard ratings when

analyzing the securities and are attracted simply by the significant loss-adjusted yields they expect these securities to generate over the foreseeable future.

While recent rating changes do not affect the fundamental value of these securities, and to-date have not had a material impact on current pricing levels, they may impact your ability to continue holding these securities due to restrictions in your investment guidelines. We believe selling these securities into current credit market illiquidity at "fire sale" levels is not in the best interest of your account. Our analysis of these securities continues to indicate that these issues are priced at significant discounts to fair value. For this reason, we may want to continue to hold such issues after conferring with you and receiving your permission to grant a temporary waiver to the existing guidelines.

We will be contacting you shortly to review your portfolio and provide further information to help assist with making an informed decision (and any necessary or appropriate changes to investment guidelines) based upon current market conditions.

In the meantime, should you have questions or concerns regarding your account, please do not hesitate to contact us.

Sincerely,

William A. Stokes, CFA
Director


cc:    Joe Freeman