**REED SMITH LLP**
*Formed in the State of Delaware*
**Diane A. Bettino, Esquire**
**Princeton Forrestal Village**
**136 Main Street, Suite 250**
**Princeton, N.J. 08540**
**Tel. (609) 987-0050**

**REED SMITH LLP**
*Formed in the State of Delaware*
**Thomas L. Allen, Esquire**
**George M. Linge, Esquire**
**435 Sixth Avenue**
**Pittsburgh, PA 15219**
**Tel. (412) 288-3131**

**Attorneys for Defendants,**
**Wachovia Bank, N.A., Evergreen Investment Management Company, LLC, Tattersall Advisory Group and Wells Fargo & Co.**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY – NEWARK VICINAGE**

TRUSTEES OF THE LOCAL 464A UNITED FOOD AND COMMERCIAL WORKERS UNION PENSION FUND, TRUSTEES OF THE LOCAL 464A FINAST PENSION FUND, TRUSTEES OF THE LOCAL 464A OFFICERS, BUSINESS REPRESENTATIVES & OFFICE EMPLOYEES RETIREMENT PLAN, TRUSTEES OF THE LOCAL 464A WELFARE AND PENSION BUILDING FUND, and the OFFICERS OF UFCW LOCAL 464A,

Plaintiffs,

v.

WACHOVIA BANK, N.A., EVERGREEN INVESTMENT MANAGEMENT COMPANY, LLC, TATTERSALL ADVISORY GROUP and WELLS FARGO & CO.,

Defendants.

Civil Action No: 2:09-cv-668-WJM-MF

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. STATEMENT OF THE CASE ..... 3

III. STANDARD GOVERNING MOTIONS TO DISMISS UNDER FRCP 12(b)(6) ..... 9

IV. ARGUMENT ..... 12

A. The Court Should Dismiss Count I of the Complaint for Failure to State a Claim Upon Which Relief May Be Granted. ..... 12

1. Plaintiffs have not alleged facts sufficient to show that Defendants breached the ERISA fiduciary duty to invest prudently. ..... 15

2. Plaintiffs have not alleged facts sufficient to show that Defendants breached the ERISA fiduciary duty to diversify investments so as to minimize the risk of large losses. ..... 20

3. Plaintiffs have not alleged facts sufficient to show that Defendants breached the ERISA fiduciary duty to invest according to the governing documents. ..... 22

4. Plaintiffs have not alleged facts sufficient to show that Defendants breached the ERISA fiduciary duty to disclose material information. ..... 24

5. Plaintiffs have not alleged facts sufficient to show that Defendants breached the wholly derivative co-fiduciary duty. ..... 28

B. The Court Should Dismiss Count II of the Complaint for Failure to State a Claim Upon Which Relief May Be Granted. ..... 29

C. The Court Should Dismiss Counts III and IV of the Complaint for Lack of Jurisdiction or, in the Alternative, For Failure to State a Claim Upon Which Relief May Be Granted. ..... 30

D. The Court Should Dismiss All Claims Against Defendant Wells Fargo for Failure to State a Claim Upon Which Relief May be Granted. ..... 32

V. CONCLUSION ..... 32

## TABLE OF AUTHORITY

### Cases

Associated Gen. Contractors of Cal., Inc. v. Carpenters
459 U.S. 519 (1983) .......... 10

Bell Atlantic Corporation v. Twombly
550 U.S. 544, 127 S.Ct. 1955 (2007) .......... passim

Brown v. Francis
75 F.3d 860 (3d Cir.1996) .......... 29

Conley v. Gibson
355 U.S. 41 (1957) .......... 11

Edgar v. Avaya, Inc.
503 F.3d 340 (3d Cir. 2007) .......... passim

Edgar v. Avaya, Inc,
2006 WL 1084087 (D.N.J. 2006) .......... 27, 28

Fink v. National Savings and Trust Co.
772 F.2d 951 (D.C.Cir. 1985) .......... 15

Fischer v. Phila. Elec. Co.
96 F.3d 1533 (3d Cir.1996) .......... 24

Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.
421 F.Supp.2d 831 (D.N.J. 2006) .......... 22

Glaziers and Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc.
93 F3d 1171 (3d Cir. 1996) .......... 23

Graden v. Conexant Systems, Inc.
574 F.Supp.2d 456 (D.N.J. 2008) .......... 24

In re Burlington Coat Factory Secs. Litig.
114 F.3d 1410 (3d Cir.1997) .......... 7

In re Unisys Sav. Plan Litig.
74 F.3d 420 (3d Cir.1996) (Unisys I) .......... 13, 15, 16, 18, 19, 23

Martinez v. Dist. 1199J National Union of Hospital and Health Care Employees, AFSCME, AFL-CIO
280 F.Supp.2d 342 (D.N.J. 2003) .......... 13

McCarthy v. Pelino & Lentz, P.C.
1994 WL 649333 (E.D.Pa.,1994) .......... 29

Miller v. Clinton County
544 F.3d 542 (3d Cir. 2008) .......... 22

New Jersey Carpenters Funds v. Kullman Industries
2007 WL 3014660 (D.N.J., 2007) .......... 14, 23, 24

Olsen v. Hegarty
180 F.Supp.2d 552 (D.N.J. 2001) .......... 16, 18, 19

Peterson v. Am. Tel. & Tel. Co.
2004 WL 190295 (D.N.J. 2004) .......... 24

Phillips v. County of Allegheny
515 F.3d 224 (3d Cir. 2008) .......... 10, 11, 13, 21

Stryker Corp. v. U.S. Dept. of Justice
2009 WL 4242323 (D.N.J., February 19, 2009) .......... 5, 7, 12

Taylor v. Peoples Natural Gas Co.
49 F.3d 982 (3d Cir. 1995) .......... 24

United Mine Workers of America v. Gibbs
383 U.S. 715, 86 S.Ct. 1130 (1966) .......... 29

Utility Workers Union of America, Local 601 v. Public Service Electric and Gas Company
2009 WL 331421 (D.N.J., Feb. 10, 2009) .......... 23

Ward v. Avaya, Inc., 487 F.Supp.2d 467 (D.N.J.,2007) .......... 7, 27, 28

**Statutes**

29 U.S.C. § 1104(a)(1)(B) .......... 16

29 U.S.C. § 1104(a)(1)(C) .......... 19

29 U.S.C. § 1105(a) .......... 26

29 U.S.C. §§1104,1105 .......... 9, 12

29 U.S.C. §§1104,1105 .......... 9

29 U.S.C.A. § 1104(a)(1) .......... 12

**Other Authorities**

5 C. Wright & A. Miller, Federal Practice and Procedure, §1216, pp. 233-34 (3d ed. 2004) .. 2, 10

H.R. Conf. Rep. No. 1280, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S. Code Cong. & Admin. News 5038, 5085 .......... 19

Restatement (Second) of Trusts § 227 (1959) .......... 15, 16

Tremors at the Door – More People With Weak Credit Are Defaulting On Mortgages, N.Y. Times, at C1, C4 (Jan. 26, 2007) .......... 17

**Rules**

29 C.F.R. § 2550.404a-1(b)(1)(i) .......... 16

Fed R. Civ. P. 12(b)(1) .......... passim

Fed. R. Civ. P. 12(b)(6) .......... passim

Fed. R. Civ. P. 8(a)(2) .......... 1

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS

### I. INTRODUCTION

This is an action brought by the Trustees of certain pension and other funds seeking recovery for investment losses that allegedly occurred over the past year. Plaintiffs blame these losses on Defendants, who allegedly managed Plaintiffs' investments. Plaintiffs claim that Defendants breached fiduciary duties owed to Plaintiffs under ERISA and the common law by: making imprudent investments; failing to diversify investments; failing to comply with written guidelines that were to govern the investments; and making misrepresentations and non-disclosures in connection with the investments.

Defendants have now moved to dismiss Plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted and under Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction. Plaintiffs' claim for breach of fiduciary duty is based on conclusory allegations with virtually no factual support. Plaintiffs' Complaint falls far short of the Federal Rules requirement to plead facts "showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007).

Essentially, Plaintiffs' Complaint boils down to a claim that Plaintiffs suffered investment losses, coupled with unsubstantiated assertions of fiduciary breaches by Defendants. Plaintiffs base their claims on Defendants' investment in "mortgage-backed securities" and "collateralized mortgage obligations" that were allegedly "speculative" and "risky." But Plaintiffs present no facts supporting these conclusory allegations. Plaintiffs do not even identify the specific investments that they are challenging.

Similarly lacking are Plaintiffs' allegations that Defendants did not comply with the written investment guidelines governing Defendants' investments. A review of the guidelines

demonstrates that Plaintiffs have not alleged facts showing that Defendants' investments violated any of the guidelines. In particular, the guidelines belie Plaintiffs' allegation that Defendants were obligated to "track" the Lehman Aggregate Bond Index in making investments on behalf of the Plaintiffs' funds. To the contrary, the guidelines provide that Defendants should strive to exceed that index, thus recognizing that Defendants' investments would not simply "track" the index.

Plaintiffs do not and cannot allege that they were unaware of the investments that Defendants were making, including the challenged mortgage-backed securities and collateralized mortgage obligations. The securities investments being questioned in this case were made in the Evergreen Core Bond Fund, a mutual fund required to make extensive public disclosures of its investment strategy, its holdings and other information. As a result, Plaintiffs were well aware of the investments being made in their accounts.

Like many investors in America today, Plaintiffs are disappointed with the performance of their portfolios over the past months. Disappointed investors, however, should not be permitted to launch major federal court litigation merely by making conclusory and unsupported allegations of breach of fiduciary duty. As the U.S. Supreme Court recognized in Twombly, *supra*, the pleading requirements of the Federal Rules of Civil Procedure provide an important role in exposing baseless claims "at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 557-558, quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure*, §1216, pp. 233-34 (3d ed. 2004). Enforcing minimum pleading requirements is particularly important in a case such as this one, lest the federal courts invite an avalanche of litigation seeking recovery for investment losses caused by the recent tumult in the securities markets. The Court should take this opportunity to end this litigation now and dismiss Plaintiffs' claims in their entirety.

## II. STATEMENT OF THE CASE

Plaintiffs in this action include trustees of the following funds (hereinafter referred to collectively as the "Local 464A Funds"):

1. The Local 464A United Food and Commercial Workers Union Pension Fund ("Pension Fund"), a joint-labor management-sponsored trust fund established for the purpose of providing retirement benefits to members of the Local 464A United Food and Commercial Workers Union ("Union"). Complaint, at ¶1.

2. The Local 464A Finast Pension Fund ("Finast Fund"), a joint-labor management-sponsored trust fund established for the purpose of providing retirement benefits to members of the Union. Id., at ¶2.

3. The Local 464A Officers, Business Representatives and Office Employees Retirement Plan ("Office Staff Plan"), a single-employer fund established for the purpose of providing retirement benefits to office staff of the Union, the Pension Fund and related entities. Id., at ¶3.

4. The Local 464A Welfare and Building Fund ("Building Fund"), a trust governed by state law established to manage the facilities in which the Union, the Pension Fund and other ERISA employee benefit plans sponsored by UFCW Local 464A reside. Id., at ¶9.

Also named as Plaintiffs are Officers of the Union. Id., at ¶10.

The Defendants are Wachovia Bank, N.A., ("Wachovia Bank"), Evergreen Investment Management LLC ("Evergreen"), Tattersall Advisory Group ("Tattersall"), and Wells Fargo & Co. ("Wells Fargo"). Id., at ¶¶12-14.

The Complaint alleges that Wachovia Bank was a subsidiary of Wachovia Corp. ("Wachovia") prior to Wachovia's merger with Wells Fargo.[1] Id., at ¶12. Evergreen and Tattersall are also alleged to be former subsidiaries of Wachovia. Id., at ¶13. The Complaint describes Evergreen as an asset and investment management organization that services millions

---

1 Plaintiffs make no substantive allegations about Wells Fargo at all and claim to have named this defendant solely "as a successor in interest to" Wachovia. Complaint, at ¶14. This is obviously not a sufficient basis upon which to state a claim against Wells Fargo. See Section IV.D., *infra*.

of investors through a variety of investment products. Id. Tattersall is alleged to be an investment advisory firm that specializes in fixed-income management and operates as an affiliated sub-adviser of Evergreen. Id.

The Complaint alleges that Plaintiffs entered into an investment agreement with Wachovia Bank, pursuant to which Wachovia Bank had sole discretion to invest Plaintiffs' assets. Id., at ¶¶16-17. The Complaint further alleges that Wachovia Bank delegated management of the Local 464A Funds' assets to Evergreen. Id., at ¶18. Evergreen then allegedly delegated management of the Pension Fund's fixed income account to Tattersall. Id. With respect to the Pension Fund's fixed income assets, Tattersall allegedly managed those assets in an individually managed account. Id., at ¶18. With respect to the fixed income assets of the Finast Fund, the Office Staff Plan and the Building Fund, Wachovia allegedly invested these assets in the Evergreen Core Bond Fund, a mutual fund. Id., at ¶19. According to the Complaint, the same Tattersall investment group managed the Pension Fund's separate fixed income account and the mutual fund known as the Evergreen Core Bond Fund, using the same strategies and similar sector allocations. Id., at ¶20.

Plaintiffs' claims in this case arise from alleged investment losses suffered in the Local 464A Funds' fixed income portfolios. The gravamen of plaintiffs' complaint is that these investment losses were caused by Defendants' breach of alleged fiduciary duties under ERISA and the common law. Id., at ¶80.

In their Complaint, plaintiffs do not identify any specific investments allegedly made by Defendants in violation of their fiduciary duties. Instead, plaintiffs merely describe the challenged investments as "non-agency mortgage backed securities (MBSs) and collateralized mortgage obligations (CMOs)." See, e.g., Id., at ¶2. Plaintiffs then characterize these investments as "speculative," "highly risky" and "toxic." Id., at ¶¶2, 28, 31, 44, 46, 54, 59, 69. Plaintiffs, however, do not allege any facts whatsoever to support these characterizations.

Plaintiffs do not contend that they were unaware of the investments being made by Defendants, including the challenged MBSs and CMOs. Nor could they given that the investments for three of the four Local 464A Funds were made in the Evergreen Core Bond, a mutual fund that is required to make extensive public disclosures of its holdings and other information. As a mutual fund, the Evergreen Core Bond Fund was and is required to file a number of documents with the Securities and Exchange Commission on a regular basis, including a Prospectus, an Annual Report, a Semi-Annual Report, a Statement of Additional Information and a Quarterly Schedule of Portfolio Holdings.[2] These documents include detailed information about the investment strategy of the Evergreen Core Bond Fund, the types of assets purchased by the Core Bond Fund, the risks associated with these various types of assets and an identification of the specific securities held by the Core Bond Fund.

For example, page 2 of the Prospectus dated September 2, 2008 (attached hereto as Exhibit A), describes the "Investment Strategy" of the Core Bond Fund as follows:

> The Fund normally invests at least 80% of its assets in U.S. dollar-denominated investment-grade debt securities, including debt securities issued by the U.S. Government, corporate bonds, mortgage-backed securities (including collateralized mortgage obligations ('CMOs')), asset-backed securities and other income producing securities. The Fund currently maintains a bias toward corporate and mortgage-backed securities. The Fund may invest a substantial portion of its assets (including a majority of its assets) in CMOs or other mortgage or asset-

---

[2] As this Court recognized in Stryker Corp. v. U.S. Dept. of Justice, 2009 WL 4242323, *3 (D.N.J., February 19, 2009), a district court may properly consider matters of public record when considering a motion to dismiss under FRCP 12(b)(6). See also Edgar v. Avaya, Inc., 503 F.3d 340, 348 n.13 (3d Cir. 2007).

> backed securities.
>
> Some mortgage-backed securities, such as those issued by the Government National Mortgage Association, are backed by the full faith and credit of the U.S. government. Other mortgage-backed securities, such as those issued by the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation or those issued by private issuers, are not backed by the full faith and credit of the U.S. government and are supported only by the credit of the issuer itself.

Exhibit A., at 2.

Similar disclosures were made in previous prospectuses for the Evergreen Core Bond Fund. See Prospectus dated September 1, 2007, at 8 (attached hereto as Exhibit B); Prospectus dated September 1, 2006, at 6-7 (attached hereto as Exhibit C).

Similarly, Evergreen also regularly files public reports that identify the holdings of the Evergreen Core Bond Fund. This information is included in the Annual Report, see, e.g., the Annual Report dated April 30, 2008, at 15-26 (attached hereto as Exhibit D); the Semi-Annual Report, see, e.g., the Semi-Annual Report dated October 31, 2008, at 12-22 (attached hereto as Exhibit E), and the Quarterly Schedules of Asset Holdings, see, e.g., the Schedule dated January 31, 2008 (attached hereto as Exhibit F) and the Schedule dated July 31, 2007 (attached hereto as Exhibit G). These documents list each security held by the Core Bond Fund, stating the issuer of the security, the interest rate, the date of maturity, the principal amount and the value. These reports also categorize the securities under various headings (e.g., Agency Commercial Mortgage-Backed Securities, Commercial Mortgage-Backed Securities, Corporate Bonds, U.S. Treasury Obligations, etc.).

A core theme of Plaintiffs' Complaint is that the Defendants' management of plaintiffs' fixed income portfolios was not consistent with the "investment guidelines" governing the Local

464A Funds. See, e.g., Complaint, at ¶2. Plaintiffs suggest that the investment guidelines require Defendants to invest the Local 464A Funds' fixed income portfolios so as to "track," "imitate" and "by-and-large match" the "Lehman Aggregate Bond Index." Complaint, at ¶¶24, 27, 54. Plaintiffs allege that "[t]he overweighting of non-agency MBSs and CMOs, together with the resulting underweighting of corporate bonds, treasuries and government agencies securities, resulted in the Plans' fixed income portfolios having little in common with the sector break down of the Lehman Aggregate Bond Index." Id., at ¶29.

Although Plaintiffs reference the investment guidelines repeatedly throughout their Complaint, they did not attach a copy of the guidelines to the Complaint. A review of the actual guidelines shows, however, that the guidelines do not require Defendants to "track," "imitate" or "match" the Lehman Aggregate Bond Index.[3]

---

[3] In Stryker, *supra*, this Court recognized that, when considering a motion to dismiss under FRCP 12(b)(6), a district court may consider documents not attached to the complaint if the plaintiff's claims are based on those documents. 2009 WL 4242323, *3. See also, In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1426 (3d Cir.1997)("On a motion to dismiss, the Court … may consider a 'document integral or explicitly relied upon in the complaint ... without converting the motion to dismiss into one for summary judgment."); Ward v. Avaya, Inc., 487 F.Supp.2d 467, 471, n.4 (D.N.J.,2007)("In this case, Plaintiff's claims center entirely on the benefit plans detailed in the complaint. Accordingly, this Court will consider the Plan documents, which Defendants have included in their motion, without converting this motion to one for summary judgment.").

In January, 2005, the following investment guidelines applicable to the Pension Fund were approved:[4]

## UFCW Local 464A Pension Fund

**Investment Goals & Guidelines 2543000640 & 2543000560**

- The portfolios should be managed under a total return investment philosophy with the portfolio manager(s) striving to produce a total annual real rate of return that exceeds the annualized total return of the stated index(es).
- Performance of the bond portfolio will be measured against the Lehman Brothers Aggregate Bond index and performance of the stock portfolio will be measured against the Standard & Poors' 500 index.
- Performance will be monitored on a regular basis and evaluated over rolling 3-5 year periods.
- These investment objectives are intended as quantifiable benchmarks against which performance will be measured.

**Guidelines & Restrictions**

Portfolios should be diversified to minimize risk. Securities prohibited from purchase are listed below and shall be updated from time-to-time by the client.

Fixed income securities, other than those issued or backed by the full faith and credit of the U.S. Government or other Federal Agency, must be considered investment grade by Standard & Poors' or Moody's. Securities rated BBB are limited to 10% of market value of fixed income assets at the time of purchase. Individual issues, excluding U.S. Government and Agency Obligations, are limited to 5% of the market value of fixed income assets at time of purchase. Corporate securities are limited to a maximum of 25% in any single industry. Bonds and Stocks will be managed as separate accounts, rather than as a balanced portfolio and the portfolio manager(s) will not rebalance between stocks & bonds unless instructed to do so by a duly authorized representative of the pension fund.

**Updated 1/29/04 Restricted Securities**

| AFL – CIO National Boycott List | | Client Specific Restricted List |
|---|---|---|
| Adam's Mark Hotel (Buffalo, NY) | Jet Equipment & Tools, Inc. (Auburn, WA) | BJ's Wholesale Club, Inc. |
| Algood Foods (Reeces Peanut Butter) | KSL Recreation (multiple locations) | Costco Wholesale Corp. |
| Best Western – Grosvenor (Disney World, FL) | New Otanl Hotel & Garden (Los Angeles, CA) | Target Corp. |
| Big League Theatricals Road Co. | RJ Reynolds Tobacco Holdings | Weis Markets Inc. |
| Diamond Walnut Co. | Turtle Bay Resort (Kakuku, HI) | Wal-Mart Stores |
| EchoStar Dish Network | Vance Security | |
| Four Points by Sheraton (Waterbury, CT) | Wackenhut Security | |
| Grand Hotel Minneapolis (Minneapolis, MN) | | |

Exhibit H.

---

4 The guidelines for the Pension Fund have been revised somewhat over the years. See Exhibits I - K hereto. Similar guidelines have been adopted for the other Local 464A Funds. See Exhibits L - T hereto. Those guidelines, however, provide that "[i]f mutual funds are used for equities or bonds, the guidelines in the prospectus will govern." Plaintiffs acknowledge that fixed income assets of the Finast Fund, the Office Staff Plan, and the Building Fund were invested in the Evergreen Core Bond, a mutual fund, and thus the prospectus for the Evergreen Core Bond constitutes the investment guidelines for those three of the Local 464A Funds. Prospectuses for the Evergreen Core Bond Fund are attached hereto as Exhibits A-C.

The first sentence of the guidelines completely undermines Plaintiffs' contention that Defendants were required to "track," "imitate" or "match" the Lehman Aggregate Bond Index. To the contrary, that sentence states that Defendants should strive to "produce a total annual real rate of return that exceeds the annualized total return of the stated index(es)." Exhibits H-T (emphasis added). By definition, an investment manager cannot strive to exceed the index without making investments that differ from those in the index.

In Count I of the Complaint, the Trustees of the Pension Fund, the Finast Fund, and the Office Staff Plan ("the ERISA Plaintiffs") purport to allege a claim for breach of fiduciary duty under Sections 404 and 405 of ERISA, 29 U.S.C. §§1104,1105. In support of this claim, the ERISA Plaintiffs allege that Defendants breached their duties to prudently and loyally manage the ERISA Plaintiffs' assets. Id., at ¶87. Plaintiffs further allege that Defendants breached their duties to diversify investments, to invest according to the governing documents and to disclose material information.

In Count II of the Complaint, the ERISA Plaintiffs purport to allege a claim against Wachovia Bank for failure to adequately monitor other fiduciaries.

Counts III and IV purport to state common law claims for breach of fiduciary duty and breach of contract on behalf of the Building Fund and the Union ("the Non-ERISA Plaintiffs").

Defendants are now moving to dismiss Plaintiffs' Complaint in its entirety pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## III. STANDARD GOVERNING MOTIONS TO DISMISS UNDER FRCP 12(b)(6)

In Twombly, the U.S. Supreme Court explained the standard governing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure as follows:

> Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rest.'

> Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, ibid.; Sanjuan v. American Bd. Of Psychiatry and Neurology, Inc., 40 F3d 247, 251 (7th Cir. 1994), a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. See Papasan v. Allain, 478 U.S. 265, 186, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1216, pp. 235-236 (3d ed. 2004) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact). See, e.g., Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.ed.2d 1 (2002); Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

550 U.S. at 555-56.

The Court in Twombly emphasized the "practical significance of the Rule 8 entitlement requirement," which serves a gatekeeper function "at the point of minimum expenditure of time and money by the parties and the court." 550 U.S., at 558, citing Wright & Miller, § 1216, pp. 233-34. "[A] district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." Twombly, 550 U.S. at 558, quoting Associated Gen. Contractors of Cal., Inc. v. Carpenters, 459 U.S. 519, 528, n.17 (1983). The Court in Twombly expressed its particular concern about the high cost of discovery in antitrust cases. 550 U.S. at 558-559. Those same concerns are triggered by this case, where Plaintiffs seek recovery of "millions of dollars of losses," Complaint, at ¶109, on behalf of four different Local 464A Funds.

In Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008), the Court of Appeals for the Third Circuit recognized "two new concepts in Twombly" governing the standards for a motion to dismiss under Rule 12(b)(6). First, the Court of Appeals noted "the Supreme Court's emphasis on Rule 8's requirement of a 'showing.'" Phillips, 515 F.3d at 232.

In Phillips the Court of Appeals wrote: "[t]he [Supreme] Court explained that Rule 8 requires a 'showing' rather than a blanket assertion of entitlement to relief.'" 515 F.3d at 231. The Court of Appeals went on to "caution that without some factual allegations in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." Phillips, 515 F.3d at 232.

The "second important concept" that the Court of Appeals in Phillips took from the Twombly opinion was the rejection of the "no set of facts" language from the Supreme Court's decision in Conley v. Gibson, 355 U.S. 41, 45-46.[5] "After Twombly," the Court of Appeals wrote in Phillips, "it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" 515 F.3d at 233, quoting Twombly. 128 S.Ct. at 1969 n.8.

Following Twombly and Phillips, this Court has employed the following standard of review when considering a motion to dismiss:

> In evaluating a motion to dismiss under Fed.R.Civ.P. 12(b), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir. 1998). When deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears that no relief could be granted "under any set of facts that could be proved consistent with the allegations," a court may dismiss a complaint for failure to state a claim. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).
>
> Although a complaint does not need to contain detailed factual allegations, "the 'grounds' of [the plaintiff's] 'entitlement to relief' requires more than labels

---

5 In Conley the Supreme Court had referred to "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. at 45-46.

> and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level. See id., at 1964-65. Furthermore, although a court must view the allegations as true in a motion to dismiss, it is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." Baraka v. McGreevey, 481 F.3d 187, 211 (3d Cir. 2007).

Stryker Corp. v. U.S. Dept. of Justice, 2009 WL 4242323, *3-*4 (D.N.J., February 19, 2009).

## IV. ARGUMENT

### A. The Court Should Dismiss Count I of the Complaint for Failure to State a Claim Upon Which Relief May Be Granted.

In Count I of the Complaint the ERISA Plaintiffs purport to state a claim for breach of fiduciary duty in violation of Sections 404 and 405 of ERISA, 29 U.S.C. §§1104,1105. Section 404 of ERISA defines the statutory "prudent man standard of care" applicable to ERISA fiduciaries as follows:

> a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
>
> (A) for the exclusive purpose of:
>
> (i) providing benefits to participants and their beneficiaries; and
>
> (ii) defraying reasonable expenses of administering the plan;
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
>
> (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
>
> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

29 U.S.C.A. § 1104(a)(1).

Additionally, "[i]t is well-established that an ERISA fiduciary 'may not materially mislead those to whom section 1104(a)'s duties of loyalty and prudence are owed.'" Edgar v. Avaya, Inc., 503 F.3d 340, 350 (3d Cir. 2007), quoting In re Unisys Sav. Plan Litig., 74 F.3d 420, 440 (3d Cir. 1996). See also Martinez v. Dist. 1199J National Union of Hospital and Health Care Employees, AFSCME, AFL-CIO, 280 F.Supp.2d 342, 350 (D.N.J. 2003) ("The core of a fiduciary's obligation under ERISA is to administer a benefit plan in the interests of the beneficiaries and members.").

Thus, there are four established duties for an ERISA fiduciary:

1. to invest prudently;
2. to diversify so as to minimize the risk of large losses;
3. to invest according to the governing documents; and
4. to disclose material information.

Count I of Plaintiffs' Complaint appears to allege that Defendants violated each of these duties. These allegations, however, are stated only in the most cursory and speculative manner. At best, Plaintiffs' Complaint simply restates "a formulaic recitation of the elements" of a breach of fiduciary duty under ERISA, and in some instances fails even to do that. Plaintiffs' Complaint fails to "allege facts suggestive of the proscribed conduct" and does not possess "enough heft to show that [Plaintiffs] are entitled to relief" under Count I of the Complaint. Phillips, 515 F.3d at 233, 231, quoting Twombly at 1966, 1965 n.3. As we will explain fully in this section of the brief, Count I of Plaintiffs' Complaint fails to satisfy the Twombly and Phillips threshold and should be dismissed.

A court in this District recently followed Twombly and granted a motion to dismiss in an ERISA breach of fiduciary duty case. In New Jersey Carpenters Funds v. Kullman Industries, Judge Pisano granted defendant's Rule 12(b)(6) motion to dismiss plaintiffs' first amended complaint, which alleged that defendant breached his ERISA-based fiduciary duty in connection with under-funding of certain Funds, writing that:

> [P]ursuant to ERISA, Plaintiffs may bring a cause of action against Lefkus upon an allegation that he breached any of his statutory-imposed fiduciary obligations as an Employer-Trustee of the Funds. However, Plaintiffs' factual allegations fail to set forth any basis on which the Court could conclude that Lefkus breached a fiduciary duty, and Plaintiffs' "formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S.Ct. at 1965.... Moreover, Plaintiffs have not made any factual assertions suggesting that Lefkus affirmatively misled the other Trustees or the beneficiaries in respect of ... contributions to the Funds or failed to disclose any "material facts, known to the fiduciary but unknown to the beneficiary, which the beneficiary must know for its own protection." Glaziers, *supra,* 93 F.3d at 1182. Therefore, assuming as true all factual allegations in Plaintiffs' First Amended Complaint, Plaintiffs' allegations as to Lefkus are not "enough to raise a right of relief above the speculative level" as they have not alleged any breach of any fiduciary duty. Twombly, *supra,* 127 S.Ct. at 1965.

2007 WL 3014660, *4 (D.N.J., 2007). See also Edgar v. Avaya, Inc., 503 F.3d 340, 342 (3d Cir. 2007) ("We agree with the District Court that [plaintiff] failed to plead facts sufficient to establish that defendants breached their fiduciary duties under ERISA by (1) imprudently offering Avaya common stock as an investment option, and (2) failing to disclose material information to plan participants. Accordingly, we will affirm the District Court's dismissal of the amended complaint under Rule 12(b)(6).") As in New Jersey Carpenters and Edgar, Plaintiffs have failed in Count I to plead facts sufficient "to raise a right of relief above the speculative level." It follows, then, that Count I should be dismissed.

**1. Plaintiffs have not alleged facts sufficient to show that Defendants breached the ERISA fiduciary duty to invest prudently.**

It is well-settled in the Third Circuit that "courts measure section 1104(a)(1)(B)'s 'prudence' requirement according to an objective standard, focusing on a fiduciary's conduct in arriving at an investment decision, not on its results, and asking whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment." In re Unisys Sav. Plan Litig., 74 F.3d 420, 434-435 (3d Cir. 1996) (Unisys I). "[T]he thoroughness of a fiduciary's investigation is measured not only by the actions it took in performing it, but by the facts that an adequate evaluation would have uncovered." Unysis I, 74 F.3d at 436, citing Fink v. National Savings and Trust Co., 772 F.2d 951, 962 (D.C.Cir. 1985) (Scalia, J., concurring in part and dissenting in part) ("[T]he determination of whether an investment was objectively prudent is made on the basis of what the trustee knew *or should have known;* and the latter necessarily involves consideration of what facts would have come to his attention if he had fully complied with his duty to investigate and evaluate." (emphasis in original)). A prudent investor "must investigate the safety of the investment and its potential for income by securing reliable information." Unysis I, 74 F.3d at 434, citing Restatement (Second) of Trusts § 227, cmts. a-c, e (1959).

In other words, Defendants, to the extent they were fiduciaries for the Plans[6], had a "duty to conduct an independent investigation into the merits of a particular investment." Unysis, 74

---

6 For purposes of this motion Defendants accept as true Plaintiffs' allegations that Wachovia Bank, Evergreen and Tattersall were ERISA fiduciaries. Defendants dispute Plaintiffs' allegation that Wells Fargo was an ERISA fiduciary. Plaintiffs have not alleged any facts to support the conclusion that Wells Fargo was an ERISA fiduciary. Indeed Plaintiffs have not alleged any facts at all to support a claim against Wells Fargo. See Section IV.D., *infra*.

F.3d at 435. "Critically, the element to be examined under 29 U.S.C. § 1104(a)(1)(B) is the conduct and behavior of the [fiduciary]." Olsen v. Hegarty, 180 F.Supp.2d 552, 568-569 (D.N.J. 2001). The prudence of an investment decision "depends upon the circumstances at the time when the investment is made and not upon subsequent events. Thus, if at the time an investment is made, it is an investment a prudent person would make, there is no liability if the investment later depreciates in value." Unisys I, citing Restatement (Second) of Trusts § 227 cmt. o (1959). In Olsen, the District Court in New Jersey stated the proposition this way:

> Whether the Defendants have violated their fiduciary duty of prudence cannot be decided solely based on a comparison of the Plan's performance in light of the ideal return of a portfolio with a similar purpose over the same time period. It is not within the province of this Court to create an artificial standard of return, against which all portfolios are measured to determine whether a violation of fiduciary duty has occurred. Rather, this Court must examine and analyze the particular behavior and decision-making processes that account for these investments and determine whether these actions or omissions were so imprudent as to constitute a violation of ERISA § 404(a)(1)(B), regardless of the outcome of the investment.

180 F.Supp.2d at 568 -569.

Given this objective standard of prudence defined by the case law, Plaintiffs' Complaint does not allege facts sufficient to show that Defendants violated the duty to make prudent investments under ERISA. Essentially, the Complaint's purported evidence of "imprudence" involves inserting the words "speculative" or "high-risk" before every occurrence of the word "mortgage." The Complaint includes no factual support for the blanket assertion that the challenged investments were "speculative" or "risky." The Complaint does not even allege what specific securities were purchased or when. Perhaps more importantly, the Complaint makes no showing that Defendants failed to conduct an adequate investigation into the merits of the investments prior to their purchase. Nor do Plaintiffs present any adverse information that they claim such an investigation would have turned up. Instead, Plaintiffs rely on wholly conclusory,

unsupported statements about the lack of an adequate investigation. See, e.g., Complaint, at ¶65 ("An adequate (or even cursory) investigation by Defendants would have revealed to a reasonable fiduciary that their substantial investment of the fixed-income portfolios' assets in non-agency MBSs and CMOs was an imprudent investment of the Plans' assets.").

Paragraphs 56 and 57 provide a prime example of the Complaint's deficiencies with respect to the claim of imprudent investments. Paragraph 56 cites a New York Times article from January 2007 to support an allegation that there were "plenty of warning signs" regarding "risky mortgage-backed securities." The article, however, expressly refers to "higher default rates" in the "[m]arket for *subprime* mortgages for people with bad credit." Vikas Bajaj and Christine Haughney, *Tremors at the Door – More People With Weak Credit Are Defaulting On Mortgages*, N.Y. Times, at C1, C4 (Jan. 26, 2007) (attached hereto as Exhibit U) (emphasis added). Similarly, Paragraph 57 alleges that "During the first half of 2007, dozens of lenders participating in the *subprime* mortgage market went out of business ...." Plaintiffs never allege, however, that Defendants invested the Plaintiffs' assets in any *subprime* MBSs or CMOs. Therefore, even if the Court accepts as true that there were warning signs in early 2007 regarding subprime mortgages, this is not sufficient to establish a claim that Defendants disregarded such warning signs when managing the Plaintiffs' portfolios.

In summary, a claim that a fiduciary made imprudent investment decisions must, at a minimum, include facts showing what decisions are alleged to have been imprudent and that the fiduciary had not made the necessary investigation *at the time the investment decisions were made*. A complaint that merely alleges that, at the end of 2008, a portfolio underperformed its benchmark index due to differences in allocations among the index components does not show that the portfolio manager's investment decisions were imprudent. See Olsen, 180 F.Supp.2d at 568-569. At most, such allegations simply establish that the allocation strategy did not work as the portfolio manager intended. Failure to achieve a desired investment objective is not a breach

of fiduciary duty. Unisys I, 74 F.3d at 434-435. The allegations of the Complaint, even if taken as true, prove no greater failing than this.

Apparently recognizing the inadequacy of their claim that the challenged investments were imprudent when made, Plaintiffs include in Count I some references to an ERISA fiduciary's "duty to monitor" investments following the initial purchase. See, e.g., Complaint, at ¶¶ 85-86 ("Regardless of whether the non-agency MBSs and CMOs were prudent at the time of purchase, if, over time, such investments became imprudent ..., Defendants were obligated to take action to protect the Plans' assets."). Plaintiffs, however, do not allege any facts in Count I showing Defendants' failure to monitor the investments. To the contrary, the Complaint includes allegations showing that Defendants were continually monitoring the investments. See, e.g., Complaint, at ¶¶60-61 (referring to a November 3, 2008 letter which discussed Defendants' assessment of the Plaintiffs' non-agency MBS securities.) Moreover, the Complaint alleges no facts showing developments following purchase of the securities that should have prompted Defendants to take action to "protect the Plans' assets." In sum, the allegations of the Complaint provide no basis from which the Court could infer that Defendants ever had an opportunity to sell the securities before they were affected by the tumultuous markets, much less that Defendants failed to take advantage of such an opportunity due to a failure to monitor the investments.

**2. Plaintiffs have not alleged facts sufficient to show that Defendants breached the ERISA fiduciary duty to diversify investments so as to minimize the risk of large losses.**

ERISA requires that a fiduciary "diversify[ ] the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly not prudent to do so." 29 U.S.C. § 1104(a)(1)(C). "ERISA's diversification requirement ... prohibits a fiduciary

from investing the whole or an unreasonably large proportion of the trust assets in either one type of security or different securities that are all dependent on the welfare of one industry or the conditions in one particular geographic location." Olsen, 180 F.Supp.2d at 567 (D.N.J. 2001) (citations omitted). As the Third Circuit has made clear, though,

> ERISA's duty to diversify is not measured by hard and fast rules or formulas. Congress has instructed that "[t]he degree of investment concentration that would violate this requirement to diversify cannot be stated as a true percentage, because a prudent fiduciary must consider the facts and circumstances of each case. The factors to be considered include (1) the purposes of the plan; (2) the amount of the plan assets; (3) financial and industrial conditions; (4) the type of investment, whether mortgages, bonds or shares of stock or otherwise; (5) distribution as to geographic location; (6) distribution as to industries; [and] (7) the dates of maturity."

Unisys I, 74 F.3d at 438, citing H.R. Conf. Rep. No. 1280, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S. Code Cong. & Admin. News 5038, 5085.

Plaintiffs' Complaint alleges a failure to diversify in a conclusory fashion (e.g., Complaint, at ¶64), but provides no factual support for the allegation. Indeed, it appears that Plaintiffs' lack of diversification claim does not rest on any allegation that Defendants put an excessive amount into any single investment. Instead, Plaintiffs appear to be relying on an alleged "overweighting" in non-agency MBSs and CMOs. See, e.g., Complaint, at ¶52. Plaintiffs, however, do not allege substantial facts showing that Defendants' investment in these types of assets violated ERISA's diversification requirement.

Plaintiffs never even allege in their Complaint the proportion of the Funds' assets allocated to various fixed income asset categories. Without this type of information, there simply can be no substantial support for an allegation of a failure to diversify. In paragraph 53 of the Complaint, Plaintiffs do allege that, as of November 11, 2008, the Pension Fund held 31% of its assets in collateralized mortgage obligations. Plaintiffs, however, do not make the type of factual allegations about these investments that could support a finding that the portfolio was not

properly diversified. For example, Plaintiffs do not allege that the mortgage loans supporting these securities were not adequately diversified as to geographic region, type of property securing the loan, size of the loans, loan-to-value ratios, etc. The assets invested in CMOs, therefore, may well have been highly diversified, secured by mortgages on different types of property (i.e., residential and commercial), in diverse parts of the United States, with varying loan amounts and made to borrowers of high creditworthiness.

Plaintiffs also attempt to support their lack of diversification claim by alleging that Defendants' investment allocation among the various fixed income sectors differed from that of the Lehman Aggregate Bond Index. See, e.g., Complaint, at ¶¶52, 88. Plaintiffs, however, have stated no factual basis whatsoever for the conclusion that any allocation differing from the Lehman Aggregate constitutes a *per se* violation of the ERISA diversification requirement. (To the extent that Plaintiffs claim that Defendants agreed to "track" the Lehman Aggregate Index, Defendants strongly dispute that claim, as will be more fully explained in the next section of this brief.)

In sum, Plaintiffs' Complaint sets forth no substantial "facts suggestive of the proscribed conduct" of failing to diversify in violation of ERISA. Phillips, 515 F.3d at 233, quoting Twombly, 128 S.Ct. at 1969 n.8.

**3. Plaintiffs have not alleged facts sufficient to show that Defendants breached the ERISA fiduciary duty to invest according to the governing documents.**

As discussed above in Section II., Plaintiffs repeatedly allege that Defendants failed to comply with the "investment guidelines" governing the fixed income portfolios of the Local 464A Funds. See Complaint, at ¶¶2, 44, 54, 59, 64, 85. In particular, Plaintiffs suggest that the applicable investment guidelines require Defendants to invest the Local 464 Funds' fixed income portfolios so as to "track," "imitate" and "by-and-large match" the "Lehman Aggregate

Bond Index." Id., at ¶27, 54. Plaintiffs claim that Defendants violated this requirement by "overweighting" of non-agency MBSs and CMOs, "which resulted in the Plans' fixed income portfolios having little in common with the sector breakdown of the Lehman Aggregate Bond Index." Id. at ¶29.

Defendants discuss the investment guidelines in Section II, above, and set forth in full the guidelines approved for the Pension Fund in January, 2005. These guidelines do not require Defendants to "track," "imitate" or "match" the Lehman Aggregate Bond Index. To the contrary, the guidelines for the Pension Fund state that Defendants should strive to "produce a total annual real rate of return that exceeds the annualized total return of the stated index(es)." See Exhibits H-T (emphasis added) By definition, an investment manager cannot strive to exceed the index without making investments that differ from those in the index. Accordingly, to the extent Defendants' investment of the Local 464A Funds' fixed income portfolios differed from the assets in the Lehman Aggregate Bond Index, that plainly did not violate the applicable investment guidelines but in fact was entirely consistent with the guidelines.[7]

Moreover, a comparison of the actual guidelines to the Complaint illustrates that Plaintiffs have not alleged facts sufficient to show that Defendants failed in any way to comply with the investment guidelines applicable to the Local 464A Funds. Nothing in the guidelines for the Pension Fund prohibits investments in MBOs or CMOs. See also, Exhibit J (recognizing explicitly that Pension Fund fixed income portfolio may be invested in "Mortgage-Backed,

---

7 A claim must be dismissed if it is contradicted by the clear language of the document on which the claim is based. See, e.g., Miller v. Clinton County, 544 F.3d 542, 550-51 (3d Cir. 2008) (reversing district court and dismissing plaintiff's First Amendment claim because it was predicated upon a document that should have been considered on defendant's motion to dismiss and obviously did not support plaintiff's allegation); Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 421 F.Supp.2d 831, 834 (D.N.J. 2006) (dismissing plaintiff's breach of contract claim because the contract at issue contradicted plaintiff's claim).

Asset-Backed Securities considered as investment grade (BBB or higher)"). Although the guidelines include certain specific requirements for fixed income investments, plaintiffs do not allege that any of these provisions were violated. In particular, Plaintiffs do not allege that any of the challenged investments were not "investment grade." Nor do plaintiffs allege that Defendants purchased any of the "Restricted Securities" explicitly identified in the Guidelines. Finally, Plaintiffs do not even contend that any of the investments in the Evergreen Core Bond Fund were contrary to the terms of its Prospectus, which constitutes the investment guidelines for the Finast Fund, the Office Staff Plan and the Building Fund. See note 4, *supra*.

**4. Plaintiffs have not alleged facts sufficient to show that Defendants breached the ERISA fiduciary duty to disclose material information.**

This Court very recently set forth the basic parameters for a breach of fiduciary duty claim based on alleged misrepresentations and/or the failure to disclose material information:

> To succeed on a breach of fiduciary duty claim, a plaintiff is required to establish the following elements: (1) the defendant's status as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation.

Utility Workers Union of America, Local 601 v. Public Service Electric and Gas Company, 2009 WL 331421, *7 (D.N.J., Feb. 10, 2009) (granting defendant's motion for summary judgment because "[p]laintiffs have failed to demonstrate any misrepresentations by Defendants.") The Third Circuit also has recently discussed an ERISA fiduciary's duty of disclosure:

> It is well-established that an ERISA fiduciary "may not materially mislead those to whom section 1104(a)'s duties of loyalty and prudence are owed." In re Unisys Sav. Plan Litig., 74 F.3d 420, 440 (3d Cir.1996). Indeed, the "duty to inform is a constant thread in the relationship between beneficiary and trustee; it is not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." Id., at 441, quoting Bixler v. Cent. Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292 (3d Cir.1994)). In Unisys, we held that the same duty applies to "alleged material misrepresentations made by fiduciaries to participants regarding the risks attendant to a fund investment." Id., at 442. In the investment context, "a misrepresentation is

> 'material' if there was a substantial likelihood that it would have misled a reasonable participant in making an adequately informed decision about whether to place or maintain monies" in a particular fund. Id.

Edgar v. Avaya, Inc., 503 F.3d 340, 350 (3d Cir. 2007) ("conclud[ing] that defendants fulfilled their duty of disclosure under ERISA by informing Plan participants about the potential risks associated with investment in the Avaya Stock Fund [an EIAP]. That defendants did not inform Plan participants about several adverse corporate developments prior to Avaya's earning's announcement, does not constitute a breach of their disclosure obligations under ERISA.".) However, that duty to disclose is qualified: "'a fiduciary has a legal duty to disclose to the beneficiary only those material facts, known to the fiduciary but unknown to the beneficiary, which the beneficiary must know for its own protection.'" New Jersey Carpenters Funds, 2007 WL 3014660, *3, quoting Glaziers and Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc., 93 F3d 1171, 1182 (3d Cir. 1996).

There are important and eminently logical limitations on a fiduciary's duty to disclose. Primarily, the fiduciary is obligated to disseminate only information that it knew or should have known. "ERISA does not impose a duty of clairvoyance on fiduciaries." New Jersey Carpenters Funds, 2007 WL 3014660, *3, quoting Fischer v. Phila. Elec. Co., 96 F.3d 1533, 1539 (3d Cir.1996); Peterson v. Am. Tel. & Tel. Co., 2004 WL 190295, *5 (D.N.J. 2004). Similarly, an ERISA fiduciary may not be held "liable for failing to offer precise predictions." New Jersey Carpenters Funds, 2007 WL 3014660, *3. A fiduciary's duty to disclose also is wrapped in good faith: "An 'honest statement of belief reasonably grounded in fact does not constitute a misrepresentation.'" Peterson v. Am. Tel.& Tel. Co., 127 Fed.Appx. 67, 73 (3d Cir. 2005), quoting Taylor v. Peoples Natural Gas Co., 49 F.3d 982, 990 (3d Cir. 1995). See also, Graden v. Conexant Systems, Inc., 574 F.Supp.2d 456, 466 (D.N.J. 2008) (dismissing claim for breach

fiduciary duty based on alleged misrepresentations and non-disclosures, in part, on the following premise: "That Defendants' optimistic view of the merger was not ultimately borne out does not mean that, at the time the statements were made, Defendants possessed information to the contrary.")

In support of their misrepresentation/nondisclosure claims, Plaintiffs allege that Defendants misrepresented the "investment strategy for the fixed income portfolios," failed to provide "complete and accurate information regarding the true level of risk associated with their investment strategy," and "failed to adequately disclose negative material information concerning their investment strategy for the Plans' fixed-income portfolios." Complaint, at ¶¶88-89. These allegations, however, are belied by the investment guidelines governing the Pension Fund and by the extensive public disclosures made by Evergreen concerning the Evergreen Core Bond Fund.

As discussed above, the investment guidelines for the Pension Fund state expressly that "[t]he portfolios should be managed under a total return philosophy with the portfolio manager(s) striving to produce a total annual return that exceeds the annualized return of the stated index(es)." Exhibits H-T. The guidelines do not prohibit investment in MBSs or CMOs. See Exhibits H-T. To the contrary, investment in such fixed income securities is expressly allowed, provided that the securities are rated investment grade by two of the three ratings agencies. See, e.g., Exhibits J-K. Plaintiffs do not allege that any of the challenged MBSs or CMOs were not investment grade.

Even more devastating to Plaintiffs' misrepresentation/nondisclosure claims are the regular public disclosures made by the Evergreen Core Bond Fund. Plaintiffs allege in their

Complaint that three of the Local 464A Funds invested their fixed income portfolios in the Core Bond Fund. Complaint, at ¶19. Plaintiffs further allege that "[t]he same Tattersall investment group managed the Pension Fund's fixed-income account and the Evergreen Core Bond Fund, using the same strategies and similar sector allocations." Complaint, at ¶20. As a mutual fund, the Evergreen Core Bond Fund was and is required to make regular filings with the Securities and Exchange Commission, including a Prospectus, an Annual Report, a Semi-Annual Report, a Statement of Additional Information and a Quarterly Schedule of Portfolio Holdings. These documents include extensive disclosures about the investment strategy of the Evergreen Core Bond Fund, the types of assets purchased by the Core Bond Fund, the risks posed by these various types of assets and an identification of the specific securities held by the Core Bond Fund.

In Section II. above, Defendants discuss key disclosures in these public documents regarding the investment strategy and holdings of the Evergreen Core Bond Fund. In addition to these disclosures, the Prospectus includes extensive disclosures of the risks associated with the investments on pages 2-3 and 22-25, including specific risk disclosures about mortgage-backed securities on pages 3 and 24. Exhibit A. See also Exhibit B, at 3-6, 8-9, 78-80; Exhibit C, at 3-7, 58-60

In sum, Evergreen regularly disclosed a considerable amount of information regarding the investment strategy, asset holdings and performance of the Evergreen Core Bond. In light of these disclosures, Plaintiffs' unsupported allegations of misrepresentation and nondisclosure simply cannot stand.

**5. Plaintiffs have not alleged facts sufficient to show that Defendants breached the wholly derivative co-fiduciary duty.**

Count I of the Complaint also purports to allege a claim against the Defendants for violation of their co-fiduciary obligations. See Complaint, at ¶90. When there are multiple fiduciaries vis-à-vis a plan, §405 of ERISA proscribes that one fiduciary may be liable for the breach by another of its fiduciary duty in one of three circumstances:

> (A) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (B) if, by his failure to comply with section 404(a)(1), 29 U.S.C. § 1104(a)(1), in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (C) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a). In other words, a fiduciary may not participate in, enable, or know of a breach by a co-fiduciary. Id. By its very definition, co-fiduciary liability requires a predicate act – a breach of fiduciary duty by a co-fiduciary. The Complaint's purported allegation of co-fiduciary liability, set forth in only one paragraph, presumes and relies upon the existence of a predicate breach of fiduciary duty by one or more Defendants. For all of the reasons set forth above in Sections IV.A-D., however, the Complaint fails to allege "facts suggestive of" a breach of fiduciary duty by any of the Defendants. It must follow, then, that the Complaint also fails to allege "facts suggestive of" a breach of co-fiduciary duty, and should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). See, e.g., Edgar, 503 F.3d at 349 n.15 ("Because we affirm the District Court's dismissal of Edgar's duty of prudence claim, there is no basis for us to disturb the District Court's dismissal of [Edgar's co-fiduciary claim].")

Alternatively, even if one presumes a breach of its fiduciary duty by one of the Defendants, the Complaint offers no factual allegations showing that any of the other Defendants knew about it, enabled it, or participated in it. Absent such central allegations, Plaintiffs' claim

against Defendants for breach of co-fiduciary duty should be dismissed for failure to state a claim per Fed R. Civ. P. 12(b)(6).

**B. The Court Should Dismiss Count II of the Complaint for Failure to State a Claim Upon Which Relief May Be Granted.**

Count II of the Complaint purports to allege that Defendant Wachovia Bank breached its implied duty to monitor other fiduciaries, namely defendants Evergreen and Tattersall. Complaint, at ¶96. A fiduciary with authority to appoint or remove other fiduciaries has a duty to monitor the actions of its appointees. See Ward v. Avaya, Inc., 487 F.Supp.2d 467, 481 (D.N.J. 2007); Edgar v. Avaya, Inc., 2006 WL 1084087, *11 (D.N.J. 2006), aff'd 503 F.3d 340 (3d Cir 2007). Such a duty, however, is wholly derivative; so long as those subject to monitoring – in this case, Evergreen and Tattersall – do not violate their fiduciary duties, there can be no claim for breach of the implied duty to monitor. See Edgar, 503 F.3d at 349 n.15 ("Because we affirm the District Court's dismissal of Edgar's duty of prudence claim, there is no basis for us to disturb the District Court's dismissal of [Edgar's duty to monitor claim]."); Ward v. Avaya, Inc., 487 F.Supp.2d at 481 ("As discussed above, Plaintiff's complaint has failed to state a claim for breach of fiduciary duty in Counts II and III as to any of the Plans' fiduciaries. Consequently, Plaintiff's claims for failing to adequately monitor these fiduciaries must also fail."); Edgar, 2006 WL 1084087, *11 ("Because, however, the Plaintiff's Complaint fails to state a claim for breach of fiduciary duty by any of the Plans' fiduciaries, the Plaintiff's claims for failing to adequately monitor these fiduciaries must also be dismissed.").

Count II of the Complaint confirms its own derivative nature. The central allegation in Count II simply reiterates, incorporates, and relies upon the allegation that Evergreen and Tatersall breached their fiduciary duties. See Complaint, at ¶96. For the reasons set forth above

in section IV.A., Count I of the Complaint fails to set forth a cognizable claim that either Evergreen or Tattersall breached its fiduciary duty to the Funds. Accordingly, Count II also must be dismissed for failure to state a claim.

**C. The Court Should Dismiss Counts III and IV of the Complaint for Lack of Jurisdiction or, in the Alternative, For Failure to State a Claim Upon Which Relief May Be Granted.**

Counts III and IV of the Complaint are not ERISA-based claims. Rather, they are supplemental state common law claims for breach of fiduciary duty and breach of contract brought by non-ERISA Plaintiffs, the Building Fund and the Union. See Complaint, at ¶¶9, 10, 100, 105. As such, this Court does not have direct jurisdiction over either Count III or Count IV, which the Complaint readily admits:

> This Court has supplemental jurisdiction over the claims of the Non-ERISA Plaintiffs (described below) pursuant to 28 U.S.C. § 1367(a), because such claims are so related to the claims of the ERISA Plaintiffs that they form part of the same case or controversy under Article III of the United States Constitution.

Complaint, at ¶5. This is the only jurisdictional basis asserted in the Complaint for Counts III and IV. If the claims of the ERISA Plaintiffs – i.e., Counts I and II – are dismissed, then this Court has no jurisdiction over the purely supplemental claims in Counts III and IV.

For the reasons set forth above in section IV.A., Count I fails to state a cognizable claim that any of the Defendants breached their alleged fiduciary duty to the ERISA Plaintiffs, and hence that Count should be dismissed for failure to state a claim pursuant to Rule 12(b)(6). And for the reasons set forth above in section IV.B., Count II fails to state a cognizable claim that Wachovia Bank breached its alleged duty to monitor Evergreen and Tattersall, and so should be dismissed for failure to state a claim pursuant to Rule 12(b)(6). Without proper ERISA claims to provide a basis for jurisdiction, then, Counts III and IV have no jurisdictional basis and

must be dismissed pursuant to Rule 12(b)(1). See, e.g., United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139 (1966) ("if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). See also Brown v. Francis, 75 F.3d 860, 866 (3d Cir.1996) ("Federal courts only have authority to adjudicate cases over which they have subject-matter jurisdiction."); McCarthy v. Pelino & Lentz, P.C., 1994 WL 649333, *3 (E.D.Pa.,1994) ("Because the ERISA claims are not ripe for adjudication at this time, the Court also cannot assert its supplemental jurisdiction over plaintiffs' state law claims."). In the event that the Court concludes that it may assert federal jurisdiction over these claims Defendants urge that the claims be dismissed under Rule 12(b)(6) for the reasons asserted in previous sections of this brief.

**D. The Court Should Dismiss All Claims Against Defendant Wells Fargo for Failure to State a Claim Upon Which Relief May be Granted.**

The Complaint purports to allege claims against Wells Fargo, but fails to allege a single fact showing that Wells Fargo had any contractual or other relationship whatsoever with Plaintiffs, the Local 464A Funds or the investments at issue. The Complaint refers to Wells Fargo specifically in only two paragraphs. See Complaint, at ¶¶12, 14. Plaintiffs make no substantive factual allegations about Wells Fargo at all and admit having named this Defendant solely "as a successor in interest" to Wachovia. Id., at ¶14. This allegation plainly is not sufficient to state claims against Wells Fargo for breach of fiduciary duty under ERISA, or claims for common law breach of fiduciary duty and breach of contract, as Plaintiffs purport to do in Counts I, III and IV. (Count II purports to state a claim only against Wachovia Bank.) Accordingly, the Court should dismiss all purported claims against Wells Fargo under Rule 12(b)(6).

## V. CONCLUSION

For all of the reasons stated herein, Defendants ask this Court to dismiss Plaintiffs' Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6).

s/ Diane A. Bettino
**Diane A. Bettino, Esquire**
**REED SMITH LLP**
**Princeton Forrestal Village**
**136 Main Street, Suite 250**
**Princeton, N.J. 08540**
**Tel. (609) 987-0050**

**Thomas L. Allen, Esquire**
**George M. Linge, Esquire**
**REED SMITH LLP**
**435 Sixth Avenue**
**Pittsburgh, PA 15219**
**Tel. (412) 288-3131**

Dated: April 17, 2009

**Attorneys for Defendants**