Joseph H. Meltzer
Peter H. LeVan, Jr.
Edward W. Ciolko
BARROWAY TOPAZ KESSLER
 MELTZER & CHECK, LLP
280 King of Prussia Road
Radnor, PA 19087
 (610) 667-7706

Mark Hanna
MURPHY ANDERSON PLLC
1389 Broad St.
Clifton, NJ 07013
(973) 916-0999

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRUSTEES OF THE LOCAL 464A UNITED FOOD AND COMMERCIAL WORKERS UNION PENSION FUND, TRUSTEES OF THE LOCAL 464A FINAST PENSION FUND, TRUSTEES OF THE LOCAL 464A OFFICERS, BUSINESS REPRESENTATIVES & OFFICE EMPLOYEES RETIREMENT PLAN, TRUSTEES OF THE LOCAL 464A WELFARE AND PENSION BUILDING FUND, and the OFFICERS OF UFCW LOCAL 464A, | **Civil Action No**. 2:09-cv-668-WJM-MF |
| Plaintiffs, | **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| WACHOVIA BANK, N.A., EVERGREEN INVESTMENT MANAGEMENT COMPANY, LLC, TATTERSALL ADVISORY GROUP and WELLS FARGO & CO., | |
| Defendants. | |

# **TABLE OF CONTENTS**

I.   STATEMENT OF FACTS ...............................................................................1

II.  LEGAL ARGUMENT ...................................................................................9

    A.   *Twombly* Does Not Mandate Heightened Specificity in Pleading –
        Only thatPlaintiffs' Entitlement to Relief Be "Plausible" Rather than
        Wholly Speculative ..........................................................................10

    B.   Count One Plainly Meets the Notice Pleadings Requirements of Rule
        8(a) ..................................................................................................16

    C.   Defendants' Arguments Based on the Specificity of Factual
        Allegations Lack Merit ....................................................................19

    D.   Wells Fargo is Liable as a Successor to Wachovia ..........................28

III.  CONCLUSION ..........................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abreu v. Barnes*,
　No. 08-cv-3013 (WJM), 2009 WL 260796 (D.N.J. Feb. 4, 2009) ................... 16

*Bell Atlantic Corporation v. Twombly*,
　550 U.S. 544 (2007) ........................................................................ passim

*City of Pittsburgh v. West Penn Power Corp.*,
　147 F.2d 256 (3d Cir. 1998) .......................................................... 21

*Conley v. Gibson*,
　355 U.S. 41 (1957) ............................................................... 11, 14

*Cryofab, Inc. v. Precision Medical, Inc.*,
　No. 08-cv-1236 (JLL), 2008 WL 2705007 (D.N.J. July 8, 2008) .................... 20

*Edgar v. Avaya, Inc.*,
　503 F.3d 340 (3d Cir. 2007) .................................................... 26, 27

*Garcia v. Munoz*,
　No. 08-cv-1648 (WJM), 2008 WL 2064476 (D.N.J. May 14, 2008) ............... 16

*New Jersey Carpenters Fund v. Kullman Industries, Inc.*,
　No. 05-cv-4795 (JAP), 2007 WL 3014660 (D.N.J. Oct. 12, 2007) ................. 26

*Phillips v. County of Allegheny*,
　515 F.3d 224 (3d Cir. 2008) ....................................... 13, 14, 16, 19

*Pierce v. Wabba*,
　No. 08-cv-2366 (WJM), 2008 WL 5105143 (D.N.J. Dec. 1, 2008) ................. 14

*Pietrangelo v. NUI Corp.*,
　No. Civ. 04-3223(GEB), 2005 WL 1703200 (D.N.J. July 20, 2005) ............... 22

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
　566 F. Supp. 2d 363 (M.D. Pa. 2008) ........................................... 20

*Ramon v. Budget Rent-A-Car System, Inc.*,
   No. 06-cv-1905 (WJM), 2007 WL 604795 (D.N.J. Feb 20, 2007) ................... 21

*In re Rockefeller Center Properties, Inc. Sec. Litig.*,
   311 F.3d 198 (3d Cir. 2002) ............................................................ 24

*Serio v. Wachovia Securities, Inc.*,
   No. 06-cv-4681 (DMC), 2007 WL 2462626 (D.N.J. Aug. 27, 2007) ......... 17, 28

*Stryker Corp. v. U.S. Dep't of Justice*,
   No. 08-cv-4111 (WJM), 2009 WL 424323 (D.N.J. Feb. 18, 2009) ................. 19

*Teamsters Pension Trust Fund of Philadelphia & Vicinity v. Littlejohn*,
   155 F.3d 206 (3d Cir. 1998) ............................................................ 28

*Trustees of the I.A.M. District No. 15 Health Fund v. Operant Material*
   *Solutions of New York New Jersey LLC*,
   No. 07-cv-4262 (HAA), 2008 WL 4601792 (D.N.J. Oct. 15, 2008) ........... 18, 28

*Urban v. Comcast Corp.*,
   No. 08-cv-773, 2008 WL 4739519 (E.D. Pa. Oct. 28, 2008) ........................... 22

*Weiner v. Quaker Oats Co.*,
   129 F.3d 310 (3d Cir. 1997) ............................................................ 24

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

Employee Retirement Income Security Act of 1974 ("ERISA") ................... passim

Federal Rule of Civil Procedure 8(a) ............................................. passim

Federal Rule of Civil Procedure 12 .............................................. passim

29 U.S.C. § 1104 ....................................................................... 7

29 U.S.C. § 1105(a) ............................................................... 7, 8

**OTHER AUTHORITIES**

Dan Reichl, *Wells Fargo May Replace Tattersall as Fund Manager*,
   Bloomberg (May 14, 2009), *available at*
   http://www.bloomberg.com/apps/news?pid=newsarchive &sid=
   afmMu9jwfKfQ ......................................................................... 24

Defendants Wachovia Bank, N.A. ("Wachovia"), Evergreen Investment Management Company, LLC ("Evergreen"), Tattersall Advisory Group ("Tattersall") and Wells Fargo & Company ("Wells Fargo") move to dismiss the well-pleaded complaint in this matter on the ground that it purportedly fails to comply with the notice pleading requirements of Federal Rule of Civil Procedure 8(a). In so arguing, however, defendants rely on a fundamental misreading of *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*") and confuse the concept of *plausibility* with *specificity* in pleadings. Even after *Twombly*, a complaint need not contain detailed factual allegations; Rule 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Twombly*, 550 U.S. at 555, 569 n.14. Plaintiffs' detailed and well-supported 26-page complaint easily meets that standard. Accordingly, defendants' motion to dismiss should be denied.

## I.   STATEMENT OF FACTS

The claims in this action were brought by the trustees of four separate pension and pension-related trust funds – Local 464A United Food and Commercial Workers Union Pension Fund ("Pension Fund") and Local 464A Finast Pension Fund ("Finast Fund"), two joint labor-management-sponsored trust funds established for the purpose of providing retirement benefits to members of the Local 464A United Food and Commercial Workers Union ("Union"); Local

464A Officers, Business Representatives and Office Employees Retirement Plan ("Office Staff Plan"), a single-employer fund established for the purpose of providing retirement benefits to office staff of the Union, the Pension Fund and related entities; and Local 464A Welfare and Building Fund ("Building Fund"), a trust established to manage the facilities in which the Union, the Pension Fund and other ERISA employee benefit plans sponsored by UFCW Local 464A reside. (Compl. ¶¶ 1-3, 9.)  The Pension Fund, Finast Fund and Office Staff Plan are employee pension benefit plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, whereas the Building Fund is governed by state law.  (Compl. ¶¶ 1-5, 9.)[1]

Pursuant to the terms of an investment agreement between the parties ("Agreement"), defendant Wachovia had full discretionary authority to invest and reinvest the Funds' assets, subject to investment guidelines and Wachovia's fiduciary obligations.  (*Id.* ¶ 34.)  Wachovia expressly acknowledged its status as an ERISA "fiduciary" and "investment manager" in the Agreement.  (*Id.* ¶ 36.) Wachovia further acknowledged that it would be liable for (a) any failure to perform its duties in accordance with ERISA's strict fiduciary standards and (b)

---

[1] The Pension Fund, Finast Fund, Office Staff Plan and Building Fund will collectively be referred to as the "Funds."  When appropriate, the Pension Fund, Finast Fund and Office Staff Plan will also collectively be referred to as the "ERISA Funds."

any losses resulting from its negligence, malfeasance or bad faith in performance of its duties.  (*Id.* ¶ 37.)

During the relevant period, the Funds' assets were divided roughly equally between equity and fixed-income investments, depending on the investment guidelines for each Fund.  (*Id.* ¶ 23.)   Unlike equity portfolios, fixed-income portfolios are designed to hold safe, low-risk investments – like short-term, high-quality debt instruments such as United States Treasuries – that preserve capital and generate modest returns; indeed, the primary function of fixed-income portfolios is preservation of capital.  (*Id.* ¶¶ 25, 39.)   Defendants had actual knowledge of the conservative investment philosophy of the Funds' trustees, as evidenced by the fact that fully half of the Funds' assets were invested in purportedly low-risk fixed income securities.  (*Id.* ¶ 59.)

Wachovia delegated investment management of the Pension Fund to Evergreen, which in turn delegated investment management of the Pension Fund's fixed-income account to Tattersall.  (*Id.* ¶ 18.)  Tattersall directly invested the Pension Fund assets as an individually managed account (rather than investing in a mutual fund).  (*Id.*)  Wachovia invested the fixed-income assets of the Finast Fund, the Office Staff Plan and the Building Fund in the Evergreen Core Bond Fund, a fixed-income mutual fund also managed by Tattersall.  (*Id.* ¶¶ 19-20.)   Tattersall used the same investment strategies and similar sector allocation in investing the

Pension Fund's assets in fixed-income instruments as it did in managing the Evergreen Core Bond Fund. (*Id.* ¶ 20.)

In written documents provided to the Funds, Tattersall represented, among other things, that it would: (a) follow a "conservative, risk-conscious approach to investing and a quality-oriented style;" (b) provide value-added performance balanced by risk control; (c) avoid issues with strong risk/reward characteristics and avoid those where risk outweighs the reward; (d) deliver a portfolio with minimal credit and volatility risk; and (e) provide active management based on a disciplined, conservative approach. (*Id.* ¶ 42.) Tattersall also used the conservative Lehman Brothers U.S. Aggregate Bond Index (now known as the Barclays Aggregate Bond Index) ("Lehman Index") – a well-recognized index for low-risk and stable investments – as the benchmark index for the fixed-income portfolios. (*Id.* ¶ 43.) Tattersall represented that the investment strategies and sector allocations would by-and-large match the Lehman Index. (*Id.* ¶ 27.) Tattersall's purportedly conservative approach to fixed-income investments appeared entirely consistent with the Funds' own conservative investment philosophy. (*Id.* ¶¶ 38, 59.)

Notwithstanding this purportedly conservative investment strategy, defendants caused the Pension Fund's fixed-income portfolio to become heavily invested in high-risk mortgage-related financial instruments, including non-agency

mortgage backed securities ("MBSs") and collateralized mortgage obligations ("CMOs"). (*Id.* ¶¶ 28, 44.) Despite public warning signs beginning by no later than late 2006, and continuing thereafter, which raised substantial concern over the value and liquidity of these types of mortgage-related financial instruments, defendants continued to *increase* the Pension Fund's investment in non-agency MBSs and CMOs throughout 2007, all the while reducing its investments in conservative investments like United States Treasuries and agency paper. (*Id.* ¶¶ 47-49, 58.) Contrary to Tattersall's prior representations, this investment strategy differed substantially from the Lehman Index: Whereas the Lehman Index held more than 20% of its assets in conservative United States Treasuries, the Pension Fund's fixed-income portfolio held only 5% of its assets in United States Treasuries, compared to 31% of assets in high-risk mortgage-related instruments. (*Id.* ¶ 53.) The Evergreen Core Bond Fund – in which the Finast Fund, the Office Staff Plan and the Building Fund were invested – was similarly imprudently invested in these high-risk mortgage-related financial instruments. (*Id.* ¶ 55.)

The Complaint alleges that defendants failed to conduct an adequate investigation before investing in and maintaining these imprudent mortgage-related financial instruments and that, based upon publicly available information, defendants either knew or should have known that their substantial investment of the fixed-income portfolios' assets in non-agency MBSs and CMOs was

imprudent.  (*Id.* ¶ 65.)   The Complaint further alleges that had defendants conducted an investigation and otherwise complied with their fiduciary obligations, the Funds would have avoided most, if not all, of the substantial losses they have now suffered.  (*Id.* ¶¶ 66, 112.)

As a result of defendants' imprudent investment strategy, the Funds lost tens of millions of dollars.  In 2008 alone, the Pension Fund's fixed-income portfolio lost more than 50% of its value, dropping from approximately $113 million in January 2008 to $53 million in November 2008.  (*Id.* ¶ 54.)   Similarly, the Evergreen Core Bond Fund was down more than 30% over the same period.  (*Id.* ¶ 55.)  In contrast, the Lehman Index – the conservative benchmark against which Tattersall's performance was judged – was stable.  (*Id.* ¶¶ 55, 73; *see also id.* ¶ 52.)

Despite these substantial losses, in a letter dated November 3, 2008, William A. Stokes, Evergreen's Director of Client Management, assured the trustees of the Funds that their heavy holdings in non-agency MBSs and CMOs continued to "offer substantial value" and that the recent downgrades of mortgage-related financial instruments "do not affect the fundamental value of these securities."  (*Id.* ¶¶ 60-61.)   One month later, however, in December 2008, Wachovia fired Tattersall – its own subsidiary – due to poor performance and transferred management of the Pension Fund's fixed-income portfolio to the Offit Strategies

6

Team, a separate investment arm of Wachovia that had not invested in imprudent high-risk mortgage-related financial instruments.  (*Id.* ¶¶ 67-68.)   At that time, Wachovia also liquidated the holdings of the Finast Fund, the Office Staff Plan and the Building Fund in the Evergreen Core Bond Index and transferred those holdings to the PIMCO Total Return Fund, a different mutual fund benchmarked against the Lehman Index.  (*Id.* ¶ 70.)

Based upon these factual allegations, the Complaint asserts four causes of action against defendants.  In Count One, the ERISA Funds allege that defendants breached their fiduciary and co-fiduciary obligations under ERISA Sections 404 and 405, 29 U.S.C. §§ 1104, 1105, by failing to prudently and loyally manage the ERISA Funds' assets.  (*Id.* ¶¶ 81-92.)   Specifically, the ERISA Funds allege that defendants breached their fiduciary obligations by, among other things:

> (a) exposing the [Funds'] fixed-income portfolios to excessive levels of risk through highly risky and speculative securities and derivatives instead of the stable and conservative investments that are appropriate for fixed-income portfolios; (b) materially altering the investment strategy for the fixed-income portfolios in a way that was inconsistent with Defendants' prior representations; (c) overweighting the fixed-income portfolios with non-agency MBSs and CMOs such that the fixed-income portfolios were not diversified pursuant to . . . [the Lehman Index] and consequently failing to adequately maintain diversification through inclusion of corporate bonds, treasuries and agency securities in the portfolios; (d) purchasing additional non-agency MBSs and CMOs at a time when prudent investors were selling such securities; (e) generally failing to invest and manage

7

> the [Funds'] fixed-income portfolios in the manner of a
> reasonably prudent fiduciary acting under similar
> circumstances; and (f) failing to comply with applicable
> law.

(*Id.* ¶ 88.)   The ERISA Funds allege that defendants further breached their

fiduciary obligations by "failing to provide complete and accurate information

regarding the true level of risk associated with their investment strategy" and by

"failing to adequately disclose negative material information concerning their

management" of the fixed-income portfolios.  (*Id.* ¶ 89.)  Finally, the ERISA Funds

allege that defendants are liable under ERISA Section 405(a), 29 U.S.C. § 1105(a),

for the breaches of their co-fiduciaries because each defendant knowingly

participated in, enabled, or had knowledge of and failed to take to remediate, the

breaches of other defendants.  (*Id.* ¶ 90.)

In Count Two, the ERISA Funds allege that Wachovia breached its fiduciary

obligations under ERISA by selecting, failing to adequately monitor and failing to

remediate the imprudent conduct of Evergreen and Tattersall of which it was (or

should have been) aware.  (*Id.* ¶¶ 93-98).

In Counts Three and Four, the Building Fund and the Union assert

supplemental common law claims against all defendants for breach of fiduciary

duty and breach of contract arising out of the same imprudent and unlawful course

of conduct.  (*Id.* ¶¶ 99-110.)

## II.   LEGAL ARGUMENT

Relying nearly exclusively on *Twombly*, defendants have moved to dismiss the entirety of the Complaint for purportedly failing to meet the minimal notice pleading standards of Federal Rule of Civil Procedure 8(a).  Despite submitting a 30-page brief, defendants essentially assert a single argument:  namely, that Count One allegedly fails to sufficiently allege facts showing that defendants breached their fiduciary duties.  (Defendants' Brief in Support of Motion to Dismiss ("Def. Br.") at 12-27.)[2]

In so arguing, however, defendants fundamentally misread the holding of *Twombly*, confuse the requirement for "plausibility" with the level of specificity in a pleading, and misconstrue the factual allegations and legal claims actually asserted in this case.  The detailed Complaint filed in this action unquestionably provides a "short and plain statement of the claim" showing that the Funds are

---

[2] Defendants' remaining arguments – that the Court should dismiss Count Two as derivative of Count One (Def. Br. at 27-28) and decline to exercise supplemental jurisdiction over the state law claims in Counts Three and Four (Def. Br. at 28-29) – are wholly dependent upon their principal argument that Count One purportedly fails to state a cognizable claim.  Because, as set forth *infra*, Count One clearly meets the notice pleading requirements of Rule 8(a), defendants' derivative arguments seeking dismissal of Counts Two, Three and Four fail.  Defendants' argument that the co-fiduciary portion of Count One should be dismissed in the absence of an underlying fiduciary breach (Def. Br. at 25-27) is also without merit.  Because Count One plainly states a claim for breach of fiduciary duty, the co-fiduciary duty claim remains.  Finally, defendants' one-paragraph argument seeking dismissal of all claims against Wells Fargo (Def. Br. at 29-30) is addressed *infra* in Section II.D.

entitled to relief and providing defendants with notice of the claims and the grounds upon which they rest. Nothing further is required at this stage of the proceeding. Accordingly, defendants' motion to dismiss should be denied *in toto*.

### A.    *Twombly* Does Not Mandate Heightened Specificity in Pleading – Only thatPlaintiffs' Entitlement to Relief Be "Plausible" Rather than Wholly Speculative

In arguing that Count One should be dismissed for insufficient specificity, defendants fundamentally misconstrue the reasoning and holding of *Twombly*. Contrary to the thrust of defendants' arguments, *Twombly* does not mandate any heightened level of factual specificity for a party to meet its pleading burden under Federal Rule of Civil Procedure 8(a); instead, *Twombly* focuses solely on the "plausibility" of a party's entitlement to relief. In other words, the *Twombly* Court addressed the plausibility of a legal claim rather than the specificity of factual allegations made to support the claim. Properly understood, *Twombly* lends no support to defendants' specificity arguments and does not provide any basis for dismissing Count One.

In *Twombly*, the Supreme Court of the United States affirmed the dismissal of an antitrust complaint charging the "Baby Bells"[3] with anticompetitive conduct for having allegedly conspired to exclude competition in the local telephone and

---

[3] "Baby Bells" refers to the regional service monopolies that were created from the 1984 divestiture of the American Telephone & Telegraph Company (AT&T). *See Twombly*, 550 U.S. at 549.

high-speed internet service markets.  550 U.S. at 548-49.  Noting that a party's allegations "must be enough to raise a right to relief above the speculative level," *id.* at 555, the Court reasoned that because the complaint merely alleged that the Baby Bells had engaged in parallel conduct – which, as a matter of law, was insufficient to state an antitrust claim (*id.*)[4] – the bare and unsupported assertion of an alleged "conspiracy" could not save the complaint from dismissal: "Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."  *Id.* at 556-57.

The Court held that the requirement of Rule 8(a)(2) for a "short and plain statement of the claim showing that the pleader is entitled to relief" demands "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do;" rather, a party must provide enough factual allegations to provide notice of the "'grounds' on which the claim rests."  *Id.* at 555 & 556 n.3. The Court also rejected a literal interpretation of the oft-quoted language from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that a complaint should not be

---

[4] Because the Sherman Act only prohibits restraints of trade resulting from a conspiracy or agreement between two or more parties – and not those caused by independent business decisions – the courts have long held that the mere existence of parallel conduct by market actors, without more, is insufficient proof of anticompetitive conduct.  *Id.* at 553-54.  The *Twombly* Court noted that "proof on a § 1 conspiracy [under the Sherman Act] must include evidence tending to exclude the possibility of independent action."  *Id.* at 555.

dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Reasoning that *Conley*'s "no set of facts" standard, taken literally, would allow a wholly conclusory statement of a claim to survive a motion to dismiss "whenever the pleadings left open some possibility that a plaintiff might later establish some set of undisclosed facts to support recovery," the Court reasoned the *Conley* language is best understood "as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Id.* at 562-63 (internal quotations and brackets omitted).  *See also id.* at 563 ("*Conley*, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleadings to govern a complaint's survival.").

Applying these standards to the *Twombly* complaint, the Court concluded that the bare assertion of a "conspiracy" – without any supporting facts or inferences of anticompetitive behavior – was insufficient to state a claim under the Sherman Act.  *Id.* at 569-70.  In so ruling, however, the Supreme Court expressly reaffirmed the principle that "a complaint attacked by a Rule 12(b)(6) motion to dismiss *does not need detailed factual allegations*."  *Id.* at 555 (emphasis added).

Indeed, the Court was careful to emphasize that it was neither applying nor requiring any heightened level of specificity in pleadings:

> In reaching this conclusion, we do not apply any "heightened" pleading standard, nor do we seek to broaden the scope of Federal Rule of Civil Procedure 9, which can only be accomplished by the process of amending the Federal Rules, and not by judicial interpretation. . . . Here, our concern is not that the allegations in the complaint were insufficiently particularized; rather, the complaint warranted dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible.

*Id.* at 569 n.14; *see also id.* at 570 ("Here, in contrast, we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."). Thus, while *Twombly* holds that a complaint must allege facts sufficient to show the "plausibility" of the plaintiff's right to requested relief, it does not require the assertion of detailed factual allegations or otherwise alter the notice pleading standards of Rule 8(a).

In *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008), the United States Court of Appeals for the Third Circuit confirmed that *Twombly* does not require a heightened level of factual specificity in a complaint. Noting that the Supreme Court "never said that it intended a drastic change in the law, and indeed strove to convey the opposite impression," *id.* at 230, the Third Circuit recognized that *Twombly* reaffirmed several long-standing pleading tenets: (1) Rule 8(a) requires only a short and plain statement showing that the pleader is entitled to

relief in order to give the defendant notice of the claim and grounds on which it rests; (2) "detailed factual allegations" are not required; and (3) "on a Rule 12(b)(6) motion, the facts alleged must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.* at 231.

The Third Circuit did, however, find two new concepts in *Twombly*: First, the Supreme Court's emphasis on the need for a "showing" of entitlement to relief under Rule 8(a) makes clear that "[c]ontext matters in notice pleading" – "[f]air notice under Rule 8(a)(2) depends on the type of case [and] some complaints will require at least some factual allegations to make out" the requisite showing. *Id.* at 232. "Put another way, in light of *Twombly*, Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief." *Id.* Second, the Third Circuit found that, in rejecting the "no set of facts" standard from *Conley*, the Supreme Court clarified that "it is no longer sufficient to allege mere elements of a cause of action; instead, a complaint must allege facts suggestive of the proscribed conduct." *Id.* at 233 (internal quotations and brackets omitted).[5]

---

[5] *Phillips* also reaffirmed that, unless an amendment would be futile, a district court must afford a plaintiff the opportunity to amend her complaint in the event that it fails to state a claim. 515 F.3d at 228. *See also Pierce v. Wabba*, No. 08-cv-2366 (WJM), 2008 WL 5105143, *2 (D.N.J. Dec. 1, 2008) ("[A] court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility."). While the Funds strongly believe that the Complaint in this matter more

Notwithstanding these concepts, the Third Circuit held that "the notice pleading standard of Rule 8(a)(2) remains intact" and it remains the case that, on a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Id.* (internal quotations omitted).  The Third Circuit held that *Twombly* "does not impose a probability requirement at the pleadings stage," but instead simply calls for "some showing sufficient to justify moving the case beyond the pleadings to the next stage of litigation." *Id.* at 234-35.[6]

This Court, on numerous occasions, has recognized and applied these same pleading standards in the context of motions to dismiss under Rule 12(b)(6).  *See,*

---

than satisfies the notice pleading requirements of Rule 8(a), they nonetheless respectfully request leave to file an amended complaint in the event that the Court finds any legal deficiency.

[6] In addressing comments raised by the dissent, the *Twombly* majority rejected the notion that plausibility of entitlement to relief could be weeded out in the discovery process, noting that base deficiencies in pleadings should be exposed "at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558.  Based on that passage, defendants argue that the *Twombly* Court expressed particular concern about the high cost of discovery in antitrust cases and assert that "[t]hose same concerns are triggered by this case." (Def. Br. at 10.)  But defendants' assertion is meritless: *Twombly* involved a putative class of at least 90 percent of all subscribers to local telephone or high-speed internet service in the United States over a period of at least seven years.  550 U.S. at 559. In contrast, this non-class case principally involves breach of fiduciary duty claims against Wachovia and certain related entities over a discrete period of time.  While any participation in the discovery process necessarily involves expense, discovery in this case would hardly compare to that contemplated in the *Twombly* matter.

*e.g., Abreu v. Barnes*, No. 08-cv-3013 (WJM), 2009 WL 260796, *6-7 (D.N.J. Feb. 4, 2009) (discussing *Twombly* and *Phillips* at length); *Garcia v. Munoz*, No. 08-cv-1648 (WJM), 2008 WL 2064476, *2 (D.N.J. May 14, 2008) (recognizing *Twombly* and noting that *Phillips* "provided a detailed and highly instructive guidance as to what kind of allegations qualify as pleadings sufficient to pass muster under the Rule 8 standard").

### B.   Count One Plainly Meets the Notice Pleadings Requirements of Rule 8(a)

Taking the Complaint as a whole, Count One clearly states a cognizable claim that more than satisfies the notice pleading standards of the Federal Rules of Civil Procedure.  Rule 8(a) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair grounds upon which it rests."   *Phillips* 515 F.3d at 231 (internal quotations omitted).  The Complaint in this matter alleges that: (1) defendants are fiduciaries by virtue of the Investment Agreement and the control they exercised over the Funds' assets (Compl. ¶¶ 18-22, 34, 36, 82); (2) defendants breached their fiduciary duties in numerous specifically-identified ways (*id.* ¶¶ 1-2, 28-31, 44, 63-66, 87-90); and (3) defendants' breaches directly and proximately caused the ERISA Plans to suffer losses (*id.* ¶¶ 3, 49-51, 54-55, 69, 73, 91, 111-12).  Far from being a mere "formulaic recitation of the elements of a cause of action," the Complaint contains numerous factual allegations that plainly meet the Rule 8(a)

standard and more than adequately put defendants on notice of the claims against them.  Nothing further is required.

Courts within this district that have faced *Twombly*-based motions to dismiss have repeatedly upheld the sufficiency of ERISA-based complaints that contain far fewer details than the Complaint in this matter.  For instance, in *Serio v. Wachovia Securities, Inc.*, No. 06-cv-4681 (DMC), 2007 WL 2462626, *7 (D.N.J. Aug. 27, 2007), the court examined "whether Plaintiffs have alleged sufficient facts to support a claim that the Plans fall within the definition of ERISA 'pension plan' such that Plaintiffs may survive Defendant's Rule 12(b)(6) motion to dismiss." Reviewing the complaint as a whole, Judge Cavanaugh found that a single one-sentence allegation was sufficient to meet the *Twombly* standard:

> To support Plaintiffs' claim that the "surrounding circumstances" of the Plan indicate that it was a retirement plan, Plaintiffs allege that The MasterShare Plan was promoted by Prudential to Plaintiffs and other eligible employees, through brochures, memoranda, presentations to employees, and other promotional materials, as a method of saving money for retirement.
>
> Am. Class Action Compl. ¶ 23.  This allegation is sufficient to raise a question of fact regarding the "surrounding circumstances" of the Plans.  Plaintiffs succeed in citing factual allegations to raise their right to relief "above a speculative level."  *Twombly*, 127 S. Ct. at 1965.

*Serio*, 2007 WL 2462626 at *7.

Similarly, in *Trustees of the I.A.M. District No. 15 Health Fund v. Operant Material Solutions of New York New Jersey LLC*, No. 07-cv-4262 (HAA), 2008 WL 4601792, *4 (D.N.J. Oct. 15, 2008), Judge Ackerman rejected a *Twombly*-based motion to dismiss, finding that the allegations of the complaint adequately stated a claim:

> The Complaint specifically alleges that Dixon (1) had "ownership, management, supervision, operation, and/or control" over the accounts of Defendant corporation Operant NY/NJ; (2) that she "made or authorized payroll deductions from the paychecks of employees for [two ERISA-governed employee benefit plans];" (3) that she had a continuing "obligat[ion] to forward deductions from [employee] paychecks to the [plans];" and (4) that she "failed to forward payroll deductions to the [plans]." (Am. Compl. at ¶¶ 61, 74-76, 85-87.) These allegations go beyond conclusory statements of law and formulaic recitals of the elements of a claim. Indeed, the Complaint adequately sets forth a fact pattern of Dixon's authority to administer ERISA plan assets and the wrongful exercise of that discretion that, if proven, would establish Defendant's fiduciary status and breach of fiduciary duty. *Twombly* demands nothing more of the complaint.

*Operant*, 2008 WL 4601792 at *4.

Like the complaint in *Operant*, the Complaint in this matter "go[es] beyond conclusory statements of law and formulaic recitals of the elements of a claim" and sets forth a fact pattern that, if proven true, would establish defendants' fiduciary status and breaches of fiduciary duty. *Twombly* and Rule 8(a) do not require more than that.

## C.  Defendants' Arguments Based on the Specificity of Factual Allegations Lack Merit

Defendants nonetheless argue that Count One fails to "raise a right to relief above the speculative level" because its allegations are purportedly stated "only in the most cursory and speculative manner."  (Def. Br. at 13, 14.)  Despite paying lip-service to the "plausibility" standard set forth in *Twombly* and *Phillips*, defendants' argument is actually premised entirely – and improperly – on the level of specificity associated with Count One's factual allegations.

Plausibility and specificity are two distinct concepts.  While *Twombly* and *Phillips* each hold that a complaint must contain allegations sufficient "to raise the right to relief above the speculative level" – *i.e.*, the "plausibility" of entitlement to the relief sought – each decision equally holds that detailed factual allegations are not required.  *Twombly*, 550 U.S. at 555, 569 n.14; *Phillips*, 515 F.3d at 231.  *See also Stryker Corp. v. U.S. Dep't of Justice*, No. 08-cv-4111 (WJM), 2009 WL 424323, *4 (D.N.J. Feb. 18, 2009) ("[A] complaint does not need to contain detailed factual allegations.")  The issue, then, is one of the plausibility of entitlement to relief, not the specificity of factual assertions made in support of that relief.  The problem in *Twombly* was not that the complaint was insufficiently detailed but, rather, that the complaint averred only non-actionable parallel conduct with no basis for suggesting that such conduct arose from an illegal agreement or conspiracy.  *See Twombly*, 550 U.S. at 569 n.14 ("Here, our concern is not that the

allegations in the complaint were insufficiently particularized; rather, the complaint warranted dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible.") (internal citation and brackets omitted).

Despite this standard, defendants focus entirely on the alleged lack of detail in the factual allegations supporting the Funds' legal claims. Defendants start their attack by recognizing that an ERISA fiduciary has a number of obligations, including the duty to act prudently, to diversify holdings so as to minimize risk, to act in accordance with governing documents, and to disclose material information. (Def. Br. at 12-13.) Defendants then divide Count One into various "sub-claims" associated with each of these fiduciary duties and argue that each "sub-claim" fails to allege certain detailed facts, thus requiring dismissal of Count One. (Def. Br. at 15-27.) But defendants are wrong – both on their approach and on the merits of their argument.

First, defendants' attempt to dismember Count One into certain (unidentified) "sub-claims" associated with breach of fiduciary duty is entirely improper. "Nothing in *Twombly* . . . contemplates this 'dismemberment' approach to assessing the sufficiency of a complaint. Rather, a district court must consider the complaint in its entirety without isolating each allegation for individualized review." *In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F. Supp. 2d 363, 373 (M.D. Pa. 2008). *See also Cryofab, Inc. v. Precision Medical, Inc.*, No. 08-cv-

1236 (JLL), 2008 WL 2705007, *4 (D.N.J. July 8, 2008) (denying motion to dismiss based on *Twombly* because "the Complaint *as a whole* passes muster under Rule 8(a)") (emphasis added).  The Third Circuit has long held that "courts have an obligation in matters before them to view the complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable." *City of Pittsburgh v. West Penn Power Corp.*, 147 F.2d 256, 263 (3d Cir. 1998).  *See also Ramon v. Budget Rent-A-Car System, Inc.*, No. 06-cv-1905 (WJM), 2007 WL 604795, *2 (D.N.J. Feb 20, 2007) (in resolving a motion to dismiss, courts should "draw on the allegations of the complaint . . . in a realistic, rather than a slavish, manner") (internal quotations omitted).

Thus, in resolving defendants' motion to dismiss, the Court must consider the Complaint as a whole rather than focus on the "sub-claims" that defendants manufactured out of Count One.  As set forth *supra*, the Complaint as a whole clearly sets forth a cognizable claim for breach of fiduciary duty that, consistent with the law of this district, satisfies both Rule 8(a) and *Twombly*'s plausibility standard.  Nothing supports defendants' attempts to dissect Count One into discrete "sub-claims" which they then argue are somehow deficient for failing to contain certain detailed information.

In addition to employing a faulty approach, defendants' various arguments concerning each of these "sub-claims" are equally flawed.  Defendants demand a level of particularity that is not required even under the inapplicable heightened pleading standard of Rule 9(b), demand detailed "showings" of certain factual matters, and improperly assert numerous merits-based arguments that are not appropriate given the procedural posture of this case.

For instance, defendants complain that the Complaint fails to allege "what specific securities were purchased or when" or the specific "proportion of the Funds' assets allocated to various fixed income asset categories."  (Def. Br. at 16, 19.)   But this case is governed by Rule 8(a) – not the heightened pleading requirements of Rule 9(b), which only applies only to fraud or mistake.  *See, e.g., Urban v. Comcast Corp.*, No. 08-cv-773, 2008 WL 4739519, \*9 (E.D. Pa. Oct. 28, 2008) (ERISA breach of fiduciary duty claims grounded on unreasonable or imprudent conduct subject to "more liberal pleading standard of Rule 8(a)"); *Pietrangelo v. NUI Corp.*, No. 04-cv-3223(GEB), 2005 WL 1703200, \*9 (D.N.J. July 20, 2005) ("Generally, pleadings alleging breaches of fiduciary duties under ERISA are scrutinized under the notice pleading standard of Federal Rule of Civil Procedure 8(a).").  Nothing about Rule 8(a)'s notice pleading standard compels the Funds, prior to the commencement of discovery, to provide a transaction-by-transaction description of defendants' imprudent purchases or the specific asset

allocations that defendants themselves adopted for each of the different funds.  The Complaint more than adequately describes the types of imprudent investments and the various ways in which defendants breached their fiduciary duties.  (*See, e.g.,* Compl. ¶¶ 1-2, 28-31, 44, 63-66, 87-90.)

Similarly, defendants' argument that the Complaint "makes no showing that Defendants failed to conduct an adequate investigation into the merits of the investments" (Def. Br. at 16) is equally faulty.  The Complaint specifically alleges that defendants knew or should have known that the fixed-income portfolios' substantial investment in non-agency MBSs and CMOs was imprudent (Compl. ¶ 56), it identifies certain public information confirming the imprudence of these investments (*id.* ¶¶ 44-49, 56-59), it alleges that an adequate investigation would have revealed the imprudence (*id.* ¶ 65), and it alleges that a prudent fiduciary acting under similar circumstances would have taken steps to protect the Funds (*id.*).  Thus, the Complaint plainly states a claim for breach of fiduciary duty against defendants.

Defendants also improperly demand certain detailed "showings" – of an inadequate investigation (Def. Br. at 17), proof that over-weighting in non-agency MBSs and CMOs violated the duty to diversify (Def. Br. at 19), and facts showing that defendants failed to comply with applicable investment guidelines (Def. Br. at 21) – that go far beyond the minimal notice pleading standards of Rule 8(a).  The

Funds are not required to prove the merit of their claims at the pleadings stage, before discovery has even commenced.[7]   Moreover, defendants' demand for detailed factual "showings" conflicts with the well-recognized standard that specificity is not required when the facts are within the knowledge of defendants. Even in fraud cases – which are governed by the heightened pleading standard of Rule 9(b) – the requirement for pleading with particularity is relaxed when the relevant element is within the defendant's knowledge.   *See, e.g., In re Rockefeller Center Properties, Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) ("Where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control, the rigid requirements of Rule 9(b) may be relaxed."); *Weiner v. Quaker Oats Co.*, 129 F.3d 310, 319 (3d Cir. 1997) ("[W]e have relaxed the particularity rule when factual information is peculiarly within the defendant's

---

[7]   In any event, defendants' demand for a "showing" on the merits should be more than satisfied by the May 14, 2009 article in *Bloomberg* that Wells Fargo may fire Tattersall as manager of Evergreen's fixed-income funds after experiencing "unheard of" losses in fixed-income investments.   *See* Dan Reichl, *Wells Fargo May Replace Tattersall as Fund Manager*, Bloomberg (May 14, 2009), *available at* http://www.bloomberg.com/apps/news?pid=newsarchive &sid= afmMu9jwfKfQ (last accessed May 18, 2009), a copy of which is attached as Exhibit A.   The article reports that the Evergreen Core Bond Fund that was managed by Tattersall – in which the Finast Fund, the Office Staff Plan and the Building Fund were invested – declined 28% in 2008.   *Id.*   Hillary Fazzone, an analyst for Morningstar, expressed shock at the news: "That kind of loss for an intermediate bond fund is completely unheard of. . . .   The fixed-income markets have been turbulent, but that is staggering."   *Id.*   Therefore, although it is inappropriate to require the level of factual specificity in a complaint that defendants demand, the "plausibility" of the Funds' entitlement to relief in this matter cannot reasonably be denied.

knowledge or control.") (internal quotations omitted).   Defendants improperly demand detailed allegations about the investigation, if any, that they undertook before purchasing the non-agency MBSs and CMOs and the asset allocations that they in their own discretion selected for the various portfolios. This information is peculiarly within defendants' own knowledge or possession and the absence of any such detail from the Complaint is not a proper basis to dismiss Count One.

Defendants also improperly assert a number of merits-based arguments that are not grounds for dismissal under Rule 12(b)(6).  For instance, defendants

- attempt to explain away the numerous "warning signs" identified in the Complaint as relating to sub-prime MBSs and CMOs, which defendants argue differ from the instruments in which they invested the Funds' assets  (Def. Br. at 17);

- contend that, because they were supposed to exceed (rather than track) the Lehman Index, they necessarily had to make investments that differed from those in the index (Def. Br. at 21); and

- argue that they complied with their duty to provide relevant information through the "extensive public disclosures made by Evergreen concerning the Evergreen Core Bond Fund."  (Def. Br. at 24.)[8]

---

[8] Throughout the brief, defendants repeatedly reference and rely upon the prospectuses, annual reports and other disclosures of the Evergreen Core Bond Fund.  (*See, e.g.,* Def. Br. at 5-6, 24-25.)  However, as alleged in the Complaint (*see* Compl. ¶ 18) and as expressly recognized by defendants (*see* Def. Br. at 4-5), the Pension Fund did not invest in the Evergreen Core Bond Fund but, instead, had an individual account purportedly managed by Wachovia.  Any disclosures relating to the Evergreen Core Bond Fund obviously have no applicability to the Pension Fund's fixed-income investments.  In any event, defendants' disclosure arguments are inappropriate merits-based attacks and not grounds for dismissal.

While defendants are free to argue, on summary judgment or at trial, that they were not aware of the riskiness of the mortgage-related financial instruments in which they invested the Funds' assets, or that they complied with all of their fiduciary obligations (including the duty to follow governing documents and the duty to disclose), defendants are not entitled to dismissal of the Complaint simply because they disagree with certain factual allegations.   While it comes as no surprise that defendants deny any liability in this matter, those denials are not grounds for finding the Complaint to be legally deficient.

Finally, neither of the two decisions (other than *Twombly* and *Phillips*) on which defendants rely – *New Jersey Carpenters Fund v. Kullman Industries, Inc.*, No. 05-cv-4795 (JAP), 2007 WL 3014660 (D.N.J. Oct. 12, 2007) and *Edgar v. Avaya, Inc.*, 503 F.3d 340 (3d Cir. 2007) (*see* Def. Br. at 14) – actually supports dismissal of the Complaint.   In *New Jersey Carpenters Fund*, the court dismissed an ERISA breach of fiduciary duty because, unlike here, "Plaintiff's factual allegations fail to set forth any basis on which the Court could conclude that [defendant] breached a fiduciary duty;" instead, the court found that the complaint merely contained a "formulaic recitation of the elements of a cause of action." 2007 WL 3014660 at *4.   The court noted that plaintiffs there had not alleged that the individual defendant affirmatively misled or otherwise failed to disclose material facts.   *Id.*   In contrast, the Complaint here plainly alleges that defendants

breached their fiduciary duties in numerous ways, including by failing to disclose complete and accurate information about the true level of risk associated with the investment strategy they adopted. (*See, e.g.,* Compl. ¶ 89.)

Moreover, while the Third Circuit, in *Avaya*, affirmed the dismissal of a complaint asserting claims for breach of fiduciary duty under ERISA, it did so not because it found the factual allegations of the complaint to be insufficiently specific – as defendants argue here – but because the plaintiffs in that case could not state a claim on which relief could be granted. The *Avaya* court found that, in light of an evidentiary presumption to which defendants there were entitled, plaintiffs could not establish the requisite abuse of discretion even assuming the truth of their factual allegations. 503 F.3d at 348-49. Thus, the issue in *Avaya* concerned whether plaintiffs' complaint stated a cognizable claim – not whether plaintiffs had alleged facts with sufficient specificity as to demonstrate the "plausibility" of their entitlement to relief.

The Complaint in this action alleges that defendants acted in a fiduciary capacity, that they breached their fiduciary duties in a number of different ways, including by investing and holding the Funds' assets in imprudent mortgage-related financial instruments, and that defendants' breaches of duty directly and proximately caused the Funds to suffer harm. Nothing more is required by the Federal Rules of Civil Procedure or the controlling decisions of *Twombly* and

*Phillips.  See Serio*, 2007 WL 2462626 at *7; *Operant*, 2008 WL 4601792 at *4.

Accordingly, defendant's motion to dismiss the Complaint should be denied.

### D.    Wells Fargo is Liable as a Successor to Wachovia

Finally, Wells Fargo argues that all claims should be dismissed against it because the Complaint "fails to allege a single fact showing that Wells Fargo had any contractual or other relationship whatsoever with Plaintiffs, the Local 464A Funds or the investments at issue."  (Def. Br. at 29.)

The Complaint makes plain that Wells Fargo is sued "as successor-in-interest to Wachovia Corp., its businesses and obligations" as a result of a stock-for-stock merger that took place effective December 31, 2008.  (Compl. ¶ 14.)  The Third Circuit has held that the surviving entity after a merger remains liable for the predecessor's liabilities under ERISA.  *See Teamsters Pension Trust Fund of Philadelphia & Vicinity v. Littlejohn*, 155 F.3d 206, 209 (3d Cir. 1998).  "[W]hen an obligation imposed by federal labor or environmental law is involved, merger or consolidation automatically operates to transfer the debts of the predecessor to the surviving entity."  *Id.*  That is precisely what the Complaint alleges against Wells Fargo.  Accordingly, Wells Fargo's argument lacks merit.[9]

---

[9] Contrary to defendants' suggestion (*see* Def. Br. at 29), Wells Fargo is named in all four counts of the Complaint.  Although Count Two is asserted in name against Wachovia only, Wells Fargo is liable for Wachovia's actions under the theory of successor liability, as alleged in paragraph 14 of the Complaint.

## III.   CONCLUSION

For the foregoing reasons, the Funds respectfully request that the Court deny

defendants' motion to dismiss in its entirety.

Respectfully submitted,

DATE:  May 18, 2009                    /s/ Peter H. LeVan, Jr.

Joseph H. Meltzer
Peter H. LeVan, Jr.
Edward W. Ciolko
**BARROWAY TOPAZ KESSLER
 MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706

Mark Hanna
**MURPHY ANDERSON PLLC**
1389 Broad St.
Clifton, NJ 07013
(973) 916-0999

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRUSTEES OF THE LOCAL 464A UNITED FOOD AND COMMERCIAL WORKERS UNION PENSION FUND, TRUSTEES OF THE LOCAL 464A FINAST PENSION FUND, TRUSTEES OF THE LOCAL 464A OFFICERS, BUSINESS REPRESENTATIVES & OFFICE EMPLOYEES RETIREMENT PLAN, TRUSTEES OF THE LOCAL 464A WELFARE AND PENSION BUILDING FUND, and the OFFICERS OF UFCW LOCAL 464A,<br><br>                              Plaintiffs,<br><br>        v.<br><br>WACHOVIA BANK, N.A., EVERGREEN INVESTMENT MANAGEMENT COMPANY, LLC, TATTERSALL ADVISORY GROUP and WELLS FARGO & CO.,<br><br>                              Defendants. | ) **Civil Action No**.  2:09-cv-668-WJM-MF<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) **CERTIFICATE OF SERVICE**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

I hereby certify that on May 18, 2009, a true and correct copy of the foregoing was served electronically upon the following counsel, in accordance with Local Rule of Civil Procedure 5.2(14)(b)(1), through the Court's ECF system:

> Diane A. Bettino
> dbettino@reedsmith.com

Thomas L. Allen
tallen@reedsmith.com

*Counsel for Defendants*

/s/ Peter H. LeVan, Jr.
Peter H. LeVan, Jr.