# U N I T E D   S T A T E S   D I S T R I C T   C O U R T
## D I S T R I C T   O F   N E W   J E R S E Y



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-6340

WILLIAM J. MARTINI
     JUDGE

<u>**LETTER OPINION**</u>

November 24, 2009


Edward W. Ciolko
Joseph H. Meltzer
Peter Houghton Levan, Jr.
Barroway Topaz Kessler Meltzer & Check, LLP
280 King of Prussia Road
Radnor, Pennsylvania 19087

Mark Hanna
Murphy Anderson PLLC
1701 K Street, NW  Suite 210
Washington, D.C.  20006
     (*Attorneys for Plaintiff*)

Diane A. Bettino
Reed Smith, LLP
Princeton Forrestal Village
136 Main Street
Suite 250
Princeton, New Jersey  08540
     (*Attorney for Defendant*)


    **RE:   Trustees of the Local 464A United Food and Commercial Workers
         Union Pension Fund, et al. v. Wachovia Bank, N.A. et al.
         <u>Civ. No. 09-668 (WJM)</u>**

Dear Counsel:

    This matter comes before the Court on Plaintiffs' motion to strike certain of

Defendants' affirmative defenses pursuant to Fed. R. Civ. P. 12(f). There was no oral argument. Fed. R. Civ. P. 78.  For the reasons that follow, Plaintiffs' motion is **GRANTED IN PART** and **DENIED IN PART.**

## I.     BACKGROUND

This is an ERISA action brought by union pension funds against their investment managers.   Plaintiffs are the trustees of the Local 464A United Food and Commercial Worker Union's pension, retirement, welfare and building funds, as well as the Union itself.  Defendants are Wachovia Bank, N.A. ("Wachovia"), Evergreen Investment Management ("Evergreen"), and Tattersall Advisory Group ("Tattersall").[1]

In their complaint, Plaintiffs bring Employee Retirement Income Security Act ("ERISA") and common law breach of fiduciary duty claims. Specifically, Plaintiffs claim that investment losses suffered in their fixed-income portfolios were due to Defendants' investment in mortgage-backed securities and collateralized mortgage obligations.

After this Court denied Defendants' motion to dismiss, *see* Docket No. 21, Defendants filed their answer, which included seventeen affirmative defenses.  Plaintiffs now move to strike eleven of Defendants' affirmative defenses.

## II.    DISCUSSION

Plaintiffs put forth three general arguments in support of their motion to strike: (1) Defendants' affirmative defenses are improperly pled because they merely deny allegations in the complaint; (2) the affirmative defenses are legally insufficient; and (3) the affirmative defenses are "bare bones conclusory allegations" that fail to provide plaintiffs with notice and an opportunity to respond.

### A.     <u>Rule 12(f) Standard</u>

An affirmative defense constitutes a "defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true." BLACK'S LAW DICTIONARY 451 (8th ed. 2004).  Federal Rule of Civil Procedure 12(f) provides, in relevant part, that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Generally, courts are reluctant to grant motions to strike affirmative defenses

---

[1] While Plaintiffs also brought suit against Wells Fargo, this Court granted Wells Fargo's motion to dismiss in July 2009. *See* Docket No. 21.

since they require a premature evaluation of a defense's merits, before the necessary factual background is developed. *See United States v. Sentient Colors, Inc.*, 580 F. Supp. 2d 369, 374 (D.N.J. 2008). Nonetheless, a motion to strike will be granted where the insufficiency of the defense is clearly apparent. *Sentient Colors*, 580 F. Supp. 2d at 374.

An affirmative defense is legally insufficient where it cannot succeed under any set of facts which may be inferred from the allegations of the pleading. *Glenside West Corp. v. Exxon Corp.*, 761 F. Supp. 1100, 1115 (D.N.J. 1991). However, an affirmative defense pled in general terms will not be deemed insufficient as long as it gives plaintiffs fair notice of the nature of the defense. *See Huertas v. U.S. Dep't of Educ.*, Civ. No. 08-3959, 2009 WL 2132429, at *2 (D.N.J. July 13, 2009) (citation omitted). On the other hand, where defenses pled are nothing more than "bare bones conclusory allegations," they may be stricken. *F.D.I.C. v. Modular Homes, Inc.*, 859 F.Supp. 117, 120-21 (D.N.J. 1994).

## B.   Affirmative Defenses Improperly Pled

Plaintiffs move to strike affirmative defenses one, four, eight, twelve, fifteen, and seventeen, arguing that they are improperly pled because they merely deny allegations set forth in the complaint. Defendants concede in their briefing that numbers eight, twelve, fifteen and seventeen technically are not affirmative defenses. *See* Defs.' Br. 6-10. Accordingly, the Court grants Defendants leave to amend their answer to remove these defenses. With these removed, there are two remaining affirmative defenses in this category – one and four.[2]

### 1.    *First Affirmative Defense*

The first affirmative defense states: "Plaintiffs' Complaint fails to state any claim upon which relief may be granted." Plaintiffs argue that this defense should be stricken because this Court already denied Defendants' motion to dismiss. Defendants counter that Fed. R. Civ. P. 12(b) requires the assertion of this affirmative defense.

Under Rule 12(b), every defense to a claim for relief – such as failure to state a claim – must be asserted in a responsive pleading. Further, Rule 12(h)(2) specifically allows the defense of failure to state a claim at different points of the litigation – in any responsive pleading, by motion under 12(c) and at trial. The text of Rule 12, however, is

---

[2] In discussing the viability of the affirmative defenses put forth by Defendants, the Court emphasizes that it is speaking hypothetically, as it must given the preliminary stages of this case. As such, the Court reserves the right to reassess the state of the law and the applicability of the facts of this case to the law on subsequent motions.

silent as to whether such a defense may be asserted following a Court's consideration and denial of a motion to dismiss.

While the Court notes Defendants' position that the complaint fails to state *any* claim, the Court already has expressly addressed and rejected this argument. Defendants' argument that the Court did not consider each of its stated bases for Rule 12(b)(6) dismissal is unpersuasive in this instance. The Court made a legal determination that Plaintiffs' complaint stated a claim for relief. Thus, Defendants are not permitted to reassert this argument, which the Court has already deemed insufficient, in the guise of an affirmative defense. *See In re Modern Creative Serv., Inc. v. Dell, Inc.*, Civ. No. 08-3591, 2008 WL 305747, at *3-*4 (D.N.J. Jan. 28, 2008) (striking affirmative defenses already considered and rejected by the court on a motion to dismiss); *AMEC Civil, LLC v. DMJM Harris, Inc.*, Civ. No. 06-0064, 2007 WL 433328, at *5 (D.N.J. Feb. 6, 2007) ("[I]n light of the fact that Defenses 1 and 16 were already decided by this Court, I will strike DMJM's First and Sixteenth Affirmative Defenses."). As such, Plaintiffs' motion to strike the first affirmative defense is granted.

2.      *Fourth Affirmative Defense*

Defendants' fourth affirmative defense is as follows: "Plaintiffs' claims are barred, in whole or in part, because plaintiffs are not as a matter of law entitled to the forms of relief they seek in this action." At dispute is whether Plaintiffs can recover compensatory damages under ERISA. While Plaintiffs seek legal damages, Defendants contend that the Supreme Court held that only equitable relief is available for ERISA violations in *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) and *Mertens v. Hewitt Assoc.*, 508 U.S. 248 (1993). *See* Defs.' Br. 6. Plaintiffs distinguish *Great-West Life* and *Merten*, arguing that their holdings pertain only to actions brought under Section 502(a)(3) of ERISA. 29 U.S.C. § 1132(a)(3). Instead, Plaintiffs represent that they bring their ERISA claims under § 502(a)(2), which allows a plan to recover any losses from a fiduciary resulting from a breach of fiduciary duty. *See* Pls.' Reply Br. 4-5; 29 U.S.C. § 1132(a)(2).

Plaintiffs' characterization of ERISA Section 502(a)(2) is correct. Compensatory damages are available under this provision. *See Graden v. Conexant Systems Inc.*, 496 F.3d 291, 300-01 (3d Cir. 2007) ("Unlike [Section 502(a)(3)], nothing in [Section 502(a)(2)] limits the relief available to equitable relief."); *see also Faulman v. Security Mut. Financial Life Ins. Co.*, Civ. No. 04-5083, 2006 WL 2482926, at *7 (D.N.J. Aug. 28, 2006). ("Although Defendant contends that Plaintiffs cannot seek relief for monetary damages under ERISA § 502(a)(3) ... the Court notes that Plaintiffs can seek such relief through ERISA § 502(a)(2)... That provision ... requires a fiduciary to "make good to

4

such plan any losses to the plan resulting from [a breach of fiduciary duty].")

As such, the sufficiency of the fourth affirmative defense appears to turn on whether Plaintiffs are entitled as a matter of law to compensatory damages.  A decision on this question is premature at this time, as it likely will depend on facts to be adduced during discovery.  Accordingly, Plaintiffs' motion to strike the fourth affirmative defense is denied.

## C.   Legally Insufficient Defenses

Plaintiffs next move to strike the fifth, sixth, ninth and fourteenth affirmative defenses, arguing that they are legally insufficient.  As noted, *supra*, an affirmative defense is legally insufficient if it is not recognized as a legal defense to a cause of action. *F.D.I.C. v. Modular Homes, Inc.*, 859 F. Supp. 117, 120 (D.N.J. 1994).  After consideration of the parties' briefing, Plaintiffs' motion to strike will be granted as to the fifth and ninth affirmative defenses.

### 1.   Fifth Affirmative Defense

Defendants' fifth affirmative defense states: "Plaintiffs' claims are barred, in whole or in part, by breaches of fiduciary duties by some or all of the Plaintiffs."  In their papers, Defendants argue that the investments in the complaint were executed at Plaintiffs' direction.  *See* Defs.' Br. 12.  As such, Defendants contend that equity dictates that they be able to assert Plaintiffs' purported fiduciary breaches in order to mitigate or negate its own potential liability in these "extreme and unusual circumstances."  *See id.*

Unfortunately, Defendants cite no case law or provision of ERISA supporting this proposition.  In fact, such a proposition appears "antithetical to the provisions of ERISA which tailor [ ] fiduciary liability to fit particular breaches." *Openshaw v. Cohen, Klingenstein & Marks, Inc.*, 320 F.Supp.2d 357, 364 (D.Md. 2004) (citations omitted). Plaintiffs bring ERISA claims under Section 502(a), which provides that a plan fiduciary may bring an action for relief under Section 409, 29 U.S.C. § 1109.  *See* 29 U.S.C. § 1132(a)(2).  Section 409 provides, in relevant part, that:

> [a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall personally be liable to make good to such plan any losses to the plan resulting from each such breach ...

*See* 29 U.S.C. 1109.  Under a plain reading of this section, a fiduciary is held liable for

5

those losses resulting from each breach of his fiduciary duties.  Defendants' affirmative defense does not comport with this statutory mandate of individualized liability.

Further, any fiduciary duty owed by Plaintiffs with regard to the management of the Plans' assets was to the Plans themselves and their beneficiaries – not to Defendants. *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985) ("[R]ecovery for a violation of § 409 inures to the benefit of the plan as a whole. We find this contention supported by the text of § 409, by the statutory provisions defining the duties of a fiduciary, and by the provisions defining the rights of a beneficiary."); *see Graden*, 496 F.3d at 295 ("As § 1132(a)(2) addresses losses to ERISA plans resulting from fiduciary misconduct, the Supreme Court has held that suits under it are derivative in nature-that is, while various parties are entitled to bring suit ... participants, beneficiaries, fiduciaries, and the Secretary of Labor... they do so on behalf of the plan itself. Consequently, the plan takes legal title to any recovery, which then inures to the benefit of its participants and beneficiaries."). Thus, Plaintiffs' breach of their duties would not absolve Defendants of liability for their breaches to the Plan.  If anything, it could simply give rise to a cause of action to be asserted on behalf of the Plan against Plaintiffs.  As such, the fifth affirmative defense is legally insufficient and will be stricken.

2.  *Sixth Affirmative Defense*

The sixth affirmative defense states: "Plaintiffs assumed the risk that any investment of any sort could result in loss."  This appears to be a legally sufficient defense.

In considering whether ERISA permits the assertion of an assumption of risk defense, it is helpful to look beyond the text of the Act.  For example, the Third Circuit has noted that the common law of trusts provides useful insight into ERISA's provisions. *See In re Unisys Sav. Plan Litigation*, 74 F.3d 420, 446 n.24 (3d Cir. 1996) (citing the Restatement and noting that Congress directed the Courts to look to the common law to construe ERISA). Under the common law of trusts, consent is a cognizable defense to a claim for breach of fiduciary duty.  *See* RESTATEMENT (SECOND) OF TRUSTS, § 216 ("[A] beneficiary cannot hold the trustee liable for an act or omission of the trustee as a breach of trust if the beneficiary prior to or at the time of the act or omission consented to it.")

Thus, to the extent that discovery reveals facts indicating that Plaintiffs consented to Defendants' investment strategy, Defendants may have a viable defense.[3]  While

---

[3] Again, in discussing whether a defense may be viable following discovery, the Court emphasizes that it is speaking hypothetically, as it must at this preliminary juncture. After

Plaintiffs take issue with the factual underpinning of this defense, *see* Pls.' Reply Br. 6-7, a motion to strike should not be granted where the sufficiency of a defense depends on disputed issues of fact. *Glenside West Corp. v. Exxon Co.*, 761 F. Supp. 1100, 1115 (D.N.J. 1991). Plaintiffs' motion to strike the sixth affirmative defense is denied.

　　　3.　　*Ninth Affirmative Defense*

　　　The ninth affirmative defense states: "Plaintiffs' claims are barred, in whole or in part, because Plaintiffs' investments benefitted during periods of rising markets more than they allegedly were damaged during a period of declining markets as a result of Defendants' alleged breaches of fiduciary duty." This affirmative defense is derived from the RESTATEMENT (SECOND) OF TRUSTS § 213: "A trustee who is liable for a loss occasioned by one breach of trust cannot reduce the amount of his liability by deducting the amount of a gain which has accrued through another and distinct breach of trust; *but if the two breaches of trust are not distinct, the trustee is accountable only for the net gain or chargeable only with the net loss resulting therefrom*." (emphasis added). As noted with the sixth affirmative defense, Congress has advised the Courts to look to the common law of trusts in construing ERISA. *See In re Unisys Sav. Plan Litigation*, 74 F.3d 420, 446 n.24 (3d Cir. 1996). Accordingly, the Court will weigh the sufficiency of this defense derived from the Restatement.

　　　While the ninth affirmative defense is appealing on its face, the Plans' net performance is inconsequential to a determination of liability or damages under ERISA. In calculating damages resulting from a fiduciary's breach of duty to a plan or to plan beneficiaries, it is necessary to determine the plan's "losses" resulting from the breach. Construing potential damages available under Section 502(a)(2), the Supreme Court has counseled that:

　　　　"[Section] 502(a)(2) encompasses appropriate claims for "lost profits." ... Under the common law of trusts, which informs our interpretation of ERISA's fiduciary duties ... trustees are chargeable with ... any profit which would have accrued to the trust estate if there had been no breach of trust...."

*LaRue v. DeWolff, Boberg & Associates, Inc.* (citations omitted). Likewise, where a fiduciary is found to have breached his duty to invest prudently, courts have assessed damages based on the difference between the actual performance of the investment and the value of a prudent investment. *See Graden v. Conexant Systems Inc.*, 496 F.3d 291,

discovery, the Court may determine that an assumption of risk defense is inappropriate in this matter.

301 (3d Cir. 2007) (finding that measure of damages in a Section 502(a)(2) action would equal "the amount that affected accounts would have earned if prudently invested."); *see also Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir.1985) ("In determining what the Plan would have earned had the funds been available for other Plan purposes, the district court should presume that the funds would have been treated like other funds being invested during the same period in proper transactions. Where several alternative investment strategies were equally plausible, the court should presume that the funds would have been used in the most profitable of these.").  As such, Defendants cannot negate liability or damages by arguing that Plaintiffs realized gains at some point during the investment period.  Instead, if liability is established, the Court must look to how the Plans' investments would have performed in the absence of a fiduciary breach.  Accordingly, the ninth affirmative defense is stricken as legally insufficient.

4.     <em>Fourteenth Affirmative Defense</em>

The fourteenth affirmative defense alleges: "Plaintiffs are themselves liable for any losses due to their failure to accurately and timely disclose and inform Defendants regarding the accepted level of risk they were willing to accept, and any concern that they had concerning the market, the economy or the investments of their plan."  To the extent that Defendants allege here that they relied upon Plaintiffs' risk disclosures in determining the proper investment strategy, the fourteenth affirmative defense appears legally sufficient.  For example, in assessing whether Defendants' met their duty of prudence, the Court must gauge whether Defendants used appropriate methods to investigate the merits of the investments described in the Complaint, based on the character and the aims of the Plan. *See In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir. 1996).  Plaintiffs' representations regarding risk tolerance could be highly relevant to this prudence determination. As such, given the limited factual development of this case and the possibility that this defense could be successful, Plaintiffs motion to strike the fourteenth affirmative defense is denied.

**D.     "Bare Bones Conclusory Allegations"**

Plaintiffs move to strike the eleventh affirmative defense, arguing that it fails to provide them with notice as to the nature of the defense and the legal basis upon which it rests.  The eleventh affirmative defense states: "Plaintiffs' claims are barred ... because Defendants have complied with all disclosure requirements under all applicable laws and informed Plaintiffs regarding matters concerning investments and risk."

Plaintiffs are correct that this affirmative defense – particularly the last clause – is sufficiently vague as to fail to provide sufficient notice.  While Defendants counter that

they addressed the factual underpinning of this defense in the motion to dismiss, *see* Defs.' Br. 16-17, nothing in the language of the affirmative defense ties it to the disclosure discussed in the motion. While Defendants are correct that motions to strike are disfavored, the affirmative defense here is sufficiently vague as to warrant striking. *See United States v. Sentient Colors, Inc.*, 580 F. Supp. 2d 369, 378 (D.N.J. 2008) (striking affirmative defense that referred to unspecified statutes of repose because it failed to comply with the notice pleading requirement of Rule 8). As such, the eleventh affirmative defense is stricken. Since Defendants contend that the factual information contained in the motion to dismiss and their briefing on this motion describes the basis for this affirmative defense, the granting of the motion to strike will be without prejudice to Defendants' right to amend their answer within twenty days to comport with the requirements of Rule 8.

## III.   CONCLUSION

For the foregoing reasons, the motion to strike is **GRANTED** as to the affirmative defenses numbered one, five, nine, and eleven and **DENIED** as to affirmative defenses four, six, and fourteen. Further, the Court grants Defendants leave to amend their answer to replead affirmative defense eleven and to remove affirmative defenses eight, twelve, fifteen, and seventeen within twenty days of the accompanying Order.


/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

9