**REED SMITH LLP**
*Formed in the State of Delaware*
**Diane A. Bettino, Esquire**
**Princeton Forrestal Village**
**136 Main Street, Suite 250**
**Princeton, N.J. 08540**
**Tel. (609) 987-0050**

**REED SMITH LLP**
*Formed in the State of Delaware*
**Thomas L. Allen, Esquire**
**George M. Linge, Esquire**
**225 Fifth Avenue**
**Pittsburgh, PA 15222**
**Tel. (412) 288-3131**

**Attorneys for Defendants**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY – NEWARK VICINAGE

------------------------------------------------------X
TRUTEES OF THE LOCAL 464A         :
UNITED FOOD AND COMMERCIAL        :   Civil Action No: 2:09-cv-668-WJM-MF
WORKERS UNION PENSION FUND, et    :
al.,                              :
                Plaintiffs,   :
                              :
      v.                         :
                             :
WACHOVIA BANK, N.A., et al.,      :
                Defendants.   :
                              :

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' APPEAL
FROM MAGISTRATE JUDGE FALK'S ORDER DATED OCTOBER 6, 2010**

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................1

II. STATEMENT OF THE CASE............................................................................1

III. STANDARD OF REVIEW ..................................................................................6

IV. ARGUMENT.........................................................................................................7

    A. Judge Falk Properly Concluded That Plaintiffs Had Not Met the Fed. R. Civ. P. 16 Standard of Showing Good Cause to Modify the Pretrial Scheduling Order and Allow the Filing of Their Untimely Motion For Leave to Amend. ...............................................................................................7

    B. Judge Falk Properly Applied the Rule 16 Good Cause Standard in Addressing Plaintiffs' Request for Leave to Amend ...........................................10

    C. Regardless Of The Applicability of the Deadline for Motions to Amend in the Pretrial Scheduling Order, Plaintiffs' Request for Leave to Amend Should be Denied Under Rule 15(a) .....................................................................12

V. CONCLUSION....................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Gould Inc.*,
  739 F.2d 858 (3d Cir. 1984) .................................................................................. 12

*Assadourian v. Harb*,
  No. 06-896, 2008 WL 4056361 (D.N.J. Aug. 28, 2008) ........................................ 13

*Cardona v. General Motors Corp.*,
  942 F. Supp. 968 (D.N.J. 1996) ............................................................................... 6

*Cureton v. National Collegiate Athletic Ass'n*,
  252 F.3d 267 (3d Cir. 2001) ............................................................................ 13, 15

*Doe v. Hartford Life and Acc. Ins. Co.*,
  237 F.R.D. 545 (D.N.J. 2006) .................................................................................. 6

*Falzo v. County of Essex*,
  No. 03-1922, 2005 WL 2129927 (D.N.J. Aug. 31, 2005) ....................................... 7

*Hitchens v. United Parcel Service*,
  No. 01 CV 1462 (WJM), 2005 WL 1793695 (D.N.J. July 26, 2005) ............. 5, 6, 7

*In re Madera*,
  586 F.3d 228 (3d Cir. 2009) .................................................................................. 15

*Lorenz v. CSX Corp.*,
  1 F.3d 1406 (3d Cir. 1993) .................................................................................... 13

*U.S. v. Sensient Colors, Inc.*,
  649 F. Supp. 2d 309 (D.N.J. 2009) ...................................................................... 6, 7

*United States v. U.S. Gypsum Co.*,
  333 U.S. 364 (1948) ................................................................................................. 6

*USX Corp v. Banhart*,
  395 F.3d 161 (3d Cir. 2004) ............................................................................ 12, 13

**Statutes**

28 U.S.C. § 636(b)(1)(A) .................................................................................................. 6

**Rules**

Fed. R. Civ. P. 15 ....................................................................................................... 5, 12

Fed. R. Civ. P. 15(a) ................................................................................................. 4, 12

Fed. R. Civ. P. 15(a)(2) .............................................................................................. 1, 7

Fed. R. Civ. P. 16(b)(4) ........................................................................................ passim

Fed. R. Civ. P. 72 .................................................................................................... 16

Fed. R. Civ. P. 72(a) .................................................................................................. 6

L. Civ. R. 72 ............................................................................................................. 16

L. Civ. R. 72.1(a)(2) .................................................................................................. 7

L. Civ. R. 72.1(c)(1)(A) ......................................................................................... 6, 7

## I. INTRODUCTION

In this action alleging breach of fiduciary duty arising out of Defendants' management of Plaintiffs' fixed income investments, Plaintiffs requested leave to amend their Complaint eighteen months after the original Complaint was filed and more than seven months after the deadline for motions to amend in the Court's Pretrial Scheduling Order. The proposed amendment would dramatically change and expand Plaintiffs' claims. While Plaintiffs' original Complaint challenged only Defendants' investments in non-agency mortgage-backed securities, Plaintiffs' proposed amended Complaint added claims challenging Defendants' 2007 investments in "financial sector" corporate bonds, including bonds of Goldman Sachs, PNC and Bank of America.

After briefing and a hearing on October 5, 2010, Magistrate Judge Mark Falk denied Plaintiffs' request for leave to amend (hereinafter referred to as "the October 6 Order"). Judge Falk concluded that Plaintiffs' request was untimely under the Pretrial Scheduling Order and that Plaintiffs had not demonstrated "good cause" to modify the deadline for pleading amendments in the Pretrial Scheduling Order as required by Fed. R. Civ. P. 16(b)(4). Judge Falk also considered the factors relevant to a motion for leave to amend under Fed. R. Civ. P. 15(a)(2) and found them to support denial of Plaintiffs' request for leave to amend.

Plaintiffs have now appealed Judge Falk's October 6 Order to this Court. Plaintiffs claim that Judge Falk's findings and conclusions were clearly erroneous and contrary to law. As we show below, however, Judge Falk's findings were well supported by the record evidence and his application of the law was plainly correct.

## II. STATEMENT OF THE CASE

Plaintiffs commenced this action on February 13, 2009, on behalf of certain pension and other funds ("the Funds"), alleging that Defendants had violated fiduciary duties under ERISA and the common law in the management of certain fixed income assets of the Funds. The

gravamen of Plaintiffs' original Complaint was that Defendants had improperly invested the Funds' assets in "speculative non-agency mortgage-backed securities (MBSs) and collateralized mortgage obligations (CMOs)." Complaint at ¶2 (Dkt. #1). Among other things, Plaintiffs alleged in their original Complaint that Defendants had overweighted non-agency MBS and CMOs, and underweighted corporate bonds, treasuries and government agency securities, in the Funds' accounts. *Id.*, at ¶29.

Following this Court's denial of Defendants' motion to dismiss on July 14, 2009 (Dkt. #21), the parties on August 4, 2009, filed their Joint Discovery Plan (Dkt. #24), which among other things proposed a deadline for amending pleadings of December 31, 2009. *See* Dkt. #21 at p. 5. On September 23, 2009, Judge Falk issued a Pretrial Scheduling Order (Dkt. #34), largely adopting the schedule proposed by the parties. In particular, paragraph 14 of the Pretrial Scheduling Order provides that: "Any motion to amend pleadings must be returnable no later than **December 31, 2009**." (emphasis in the original).

Discovery moved forward vigorously in the fall of 2009. On November 18, 2009, Plaintiffs responded to Defendants' initial set of interrogatories. In response to an interrogatory asking Plaintiffs to identify the securities that were being challenged in the case, Plaintiffs identified only MBS. *See* Plaintiffs' Objections and Answers to Defendants' First Set of Interrogatories, at pp. 13-19 (served November 18, 2009)(attached as Ex. 1 to The Declaration of Counsel by Thomas L. Allen ("Allen Decl.")). In the same set of interrogatory responses, Plaintiffs reiterated the claim made in their original Complaint that Defendants had breached their fiduciary duty by overweighting non-agency MBS and underweighting corporate bonds in the fixed income portfolios that Defendants were managing for Plaintiffs. *Id.*, at 18-20.

On August 11, 2010, by letter to Judge Falk (attached as Ex. H to Plaintiffs' Appeal), Plaintiffs requested leave to file an Amended Complaint (attached as Ex. A to Plaintiffs' Appeal). Although Plaintiffs characterized the proposed Amended Complaint as an effort "to

clarify the nature and extent" of Defendants' alleged breaches of fiduciary duty, the proposed amendments actually would expand and alter Plaintiffs' basic theory of liability as alleged in their original Complaint. In particular, Plaintiffs purported to assert new claims challenging Defendants' 2007 investments in certain "financial sector" corporate bonds, including corporate bonds issued by Goldman Sachs, PNC, Bank of America and others. *See* Proposed Amended Complaint, at ¶¶ 76-77 (Ex. A to Plaintiffs' Appeal). This represented a dramatic shift from Plaintiffs' original theory of liability, in which they challenged only non-agency MBS and CMOs. Moreover, while Plaintiffs in their original Complaint and interrogatory responses had claimed that Defendants breached their fiduciary duty by *underweighting* corporate bonds in Plaintiffs' fixed income portfolios, Plaintiffs in their proposed Amended Complaint made a complete flip-flop and claimed that Defendants had breached their fiduciary duty by *overweighting* corporate bonds.

On August 16, 2010, Defendants submitted a letter brief in opposition to Plaintiffs' request for leave to amend. (attached as Ex. 2 to Allen Decl.). Defendants argued that the Pretrial Scheduling Order included a December 31, 2009, deadline for motions to amend, which had expired several months before Plaintiffs requested leave to amend. Defendants further argued that Plaintiffs could not meet the Fed. R. Civ. P. 16(b)(4) good cause standard for modifying such a deadline, because the factual basis of the proposed amendments was available to Plaintiffs long before the December 31, 2009, deadline, indeed long before the original Complaint was filed. Defendants attached as Exhibit C to their letter brief excerpts from monthly statements that itemized each of the investments made for Plaintiffs' accounts. *See* Ex. 2, at Ex. C. Defendants further submitted excerpts from the deposition of Gary Sherman, Plaintiffs' accountant, who testified that he and Plaintiffs received the monthly statements and that he and his staff reviewed them on a monthly basis. *See* Ex. 2, at Ex. B. Defendants also noted that many of the new paragraphs in the proposed Amended Complaint merely stated information from public sources that were available to Plaintiffs well before the litigation was

even commenced. *See* Proposed Amended Complaint, at ¶¶ 95-124. Based on this evidence, Defendants argued that Plaintiffs had all the information needed to make their claims about financial sector corporate bonds at the time they filed their original Complaint and long before the December 31, 2009 deadline for pleading amendments.

In their letter brief Defendants further argued that Plaintiffs' request should be denied based on the factors set forth in Fed. R. Civ. P. 15(a). In particular, Defendants showed that they would suffer extreme prejudice if the amendment were allowed. Defendants noted that they had prepared their defense based on Plaintiffs' repeated statements that Plaintiffs were challenging only MBS, and that Defendants would be forced to incur substantial additional expense if Plaintiffs were permitted to expand their case to include financial sector corporate bonds. Defendants further described the additional discovery that would be needed – and the additional delay that would be experienced – if Plaintiffs were allowed to amend their Complaint.

On October 5, 2010, Judge Falk conducted a hearing on Plaintiffs' request for leave to amend. After hearing argument from both sides, Judge Falk denied Plaintiffs' request for leave to amend. Judge Falk explained his findings and conclusions on the record. *See* Transcript of Oct. 5, 2010 Hearing ("Tr."), at 27-34 (attached as Ex. 3 to Allen Decl.).

Judge Falk noted that Plaintiffs' request for leave to amend came after the December 31, 2009, deadline for motions to amend set in the Pretrial Scheduling Order. Judge Falk found that the Pretrial Scheduling Order was "certainly in effect" as of December 31, 2009, even though subsequent electronic discovery disputes had caused the Pretrial Scheduling Order to become "stale." *Id.* at 31-32. Accordingly, Judge Falk concluded that, in order to proceed with their request for leave to amend, Plaintiffs first needed to show that "good cause" existed for modification of the December 31, 2009, deadline for motions to amend, as required by Fed. R. Civ. P. 16(b)(4). *Id.* at 31. "And to establish good cause," Judge Falk stated, "the movant must show that despite its diligence, it could not reasonably have met the scheduling order deadline."

*Id.* at 31 (citing *Hitchens v. United Parcel Service*, No. 01 CV 1462 (WJM), 2005 WL 1793695 (D.N.J. July 26, 2005) (Martini, J.)).

Based on the evidence presented by the parties, Judge Falk concluded "the plaintiff has not demonstrated good cause in the sense that it is unable to establish that despite its diligence it could not have met the scheduling order deadline." Tr. 33. Judge Falk explained the basis for this conclusion as follows:

> [T]he Court finds and I think it has been convincingly shown by the defendants that the information that forms the basis of the amended complaint was certainly available to and in possession of the plaintiffs at the time the original complaint was filed. It may not have been presented in such an easy format, maybe they didn't get a perfect chart, but [Plaintiffs had] letters and statements that indicated precisely which securities were purchased and sold and held by the fund at all time[s].

Tr. at 32.

Judge Falk also addressed the factors relevant to granting leave to amend under Fed. R. Civ. P. 15 (although acknowledging that "having found the lack of good cause, it's not really necessary to go into the Rule 15 factors ... ."). *Id.* at 33. Judge Falk stated that "[t]he issue of prejudice is a genuine one." *Id.* Judge Falk added:

> In the context of Rule 15, in order to establish prejudice, the non-moving party would – must demonstrate that the amendment would require the opponent to expend significant additional resources to prepare the case and conduct discovery, would delay the resolution of the dispute or prevent the plaintiff from bringing a timely action in another jurisdiction. I think the defendant has established that there would be some delay and certainly would require significant additional resources to conduct discovery and prepare for trial.

Tr. at 33-34.

For all these reasons Judge Falk denied the request for leave to amend. This appeal followed.

### III. STANDARD OF REVIEW

A district court reviews a magistrate judge's non-dispositive order under the "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); Federal Rule of Civil Procedure 72(a); L.Civ.R. 72.1(c)(1)(A). "The district court is bound by the clearly erroneous rule as to findings of fact while the phrase 'contrary to law' indicates plenary review as to matters of law." *Hitchens v. United Parcel Service*, No. 01 CV 1462 (WJM), 2005 WL 1793695, at *1 (D.N.J. July 26, 2005) (Martini, J.). A magistrate judge's decision is clearly erroneous if, after consideration of the entirety of the evidence, the district court is "'left with the definite and firm conviction that a mistake has been made.'" *U.S. v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 315 (D.N.J. 2009) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A district court should accept a magistrate's findings under the "clearly erroneous" standard even if it "could have decided the issue differently." *Cardona v. General Motors Corp.*, 942 F. Supp. 968, 971 (D.N.J. 1996). A decision is contrary to law if the magistrate judge "misinterpreted or misapplied applicable law." *Doe v. Hartford Life and Acc. Ins. Co.*, 237 F.R.D. 545, 548 (D.N.J. 2006).

Plaintiffs imply that Judge Falk's October 6 Order may not be subject to the "clearly erroneous or contrary to law" standard, but instead may be subject to *de novo* review by this Court to the extent it may be considered a dispositive order. Plaintiffs' Memorandum of Law in Support of Their Appeal From Magistrate Judge Mark Falk's Order Dated October 6, 2010, at 4-5 (hereinafter "Plaintiffs' Memo"). The Magistrate Judge's Act, however, provides that all decisions on "pretrial matters" by Magistrate Judges are subject to the "clearly erroneous or contrary to law standard" except certain matters specifically named in the statute. 28 U.S.C. 636(b)(1)(A). Neither motions to modify a Pretrial Scheduling Order under Fed. R. Civ. P.

16(b)(4) nor motions for leave to amend under Fed. R. Civ. P. 15(a)(2) are named in that section of the statute. *See also*, L. Civ. R. 72.1(c)(1)(A), 72.1(a)(2) (listing the dispositive motions that are subject to *de novo* review; does not include motion to modify scheduling order or motion for leave to amend). Moreover, district courts routinely review magistrate judge decisions on Fed. R. Civ. P. 16(b)(4) and Fed. R. Civ. P. 15(a)(2) motions under a clearly erroneous or contrary to law standard. *See, e.g.*, *Sensient Colors*, 649 F. Supp. 2d at 314 n.5; *see also Falzo v. County of Essex*, No. 03-1922, 2005 WL 2129927, at *2 (D.N.J. Aug. 31, 2005) (concluding that a denial of defendant's motion seeking leave to amend the pleadings in order to assert counterclaims was non-dispositive even though court based its denial on the futility of those counterclaims); *Hitchens*, 2005 WL 1793695 at *1 (Martini, J.). In any event, Plaintiffs do not even take the position that Judge Falk's October 6 Order was in fact "dispositive." Accordingly, this Court should review that order under the clearly erroneous or contrary to law standard.

## IV. ARGUMENT

A.  **Judge Falk Properly Concluded That Plaintiffs Had Not Met the Fed. R. Civ. P. 16 Standard of Showing Good Cause to Modify the Pretrial Scheduling Order and Allow the Filing of Their Untimely Motion For Leave to Amend.**

In denying Plaintiffs' request for leave to amend, Judge Falk concluded that Plaintiffs had not established good cause for modifying the December 31, 2009, deadline for motions to amend in the Pretrial Scheduling Order, which required that Plaintiffs show that "despite [their] diligence, [they] could not have reasonably met the scheduling order deadline." *Hitchens*, 2005 WL 1793695 at *3 (Martini, J.). Judge Falk based this conclusion on his finding that "the information that forms the basis of the amended complaint was certainly available to and in possession of the plaintiffs at the time the original complaint was filed." Tr. at 32. This finding was supported by evidence submitted by Defendants showing that Plaintiffs and their representatives received monthly statements and other regular reports identifying each

investment made for Plaintiffs' accounts. *See* Ex. 2, at p. 3 and cited exhibits thereto. In light of this evidence, Plaintiffs clearly had all the information needed to make their claims about corporate bonds at the time they filed their original Complaint and long before the December 31, 2009 deadline for pleading amendments. *Id.*

In this appeal, Plaintiffs challenge Judge Falk's conclusions and factual findings on the good cause standard as "erroneous and contrary to law." Plaintiffs' Memo at 15. Plaintiffs claim that the monthly statements provided by Defendants were "long and complicated," amounting to approximately 72,000 pages of information over the period that Plaintiffs contend is relevant to the case. *Id.* at 17. As a result, according to Plaintiffs, they needed the information in electronic "native format" before they could ascertain their claim that Defendants had breached their fiduciary duty by investing in financial sector corporate bonds. *Id.* at 18 (Notwithstanding availability of monthly statements, Plaintiffs needed "additional analysis to determine which securities or asset classes were being overweighted or underweighted as compared to the benchmark index."). It was only after Plaintiffs had received the "native transactional data" for Plaintiffs' Plans, Plaintiffs claim, and "had reviewed and analyzed the native holdings and transactional data that they learned that Defendants, in addition to breaching their fiduciary obligations by investing in risky and imprudent non-agency MBS and CMOs, also invested and maintained investment in imprudent financial sector corporate debt." *Id.* at 16. Indeed, Plaintiffs go so far as to claim that Defendants' failure to produce the transactional data in native form "made it *impossible* for Plaintiffs to seek leave to amend the Complaint prior to the deadline set forth in the Pretrial Scheduling Order." *Id.* at 10 (emphasis added).

Even a cursory look at the account statement submitted by Plaintiffs to this Court shows that Judge Falk was correct in finding that Plaintiffs had the information that forms the basis of their new claims about financial sector corporate bonds long before the December 31, 2009 deadline for motions to amend. The monthly statement presents the account information in a clear and orderly fashion. Using the December, 2008 Pension Fund statement attached as

Exhibit G to Plaintiffs' Appeal as an example,[1] a quick look at the table of contents (the fifth page of Exhibit G) indicates that the section entitled "Investment Review" begins at page 359 of the document. The "Investment Review" section starts with a two page "Summary of Investments" containing a simple chart describing the allocation of the account assets among various categories of investments (e.g., CMOs, corporate bonds, etc.) *See* Exhibit G-3, at 359. The following 13 pages of the "Investment Review" section is a "Schedule of Investments" that identifies each fixed income security broken down according to categories with headings such as "Mortgage-Backed Pass-Throughs," Collateralized Mortgage Obligations" and "Corporate Bonds – Nonconvertible." *See* Exhibit G-3, at 361-373. The section under the heading "Corporate Bonds – Nonconvertible" is five pages long and lists each of the corporate bonds held in the account, including the value of each bond. *See* Exhibit G-3, at 368-372. From this information, Plaintiffs could readily determine the portion of the fixed income portfolio allocated to any particular corporate bond, as well as the portion allocated to financial sector corporate bonds. Because Plaintiffs and their representatives received these same statements on a monthly basis, Plaintiffs could just as easily have analyzed Defendants' allocation of Plaintiffs' assets to financial sector corporate bonds over time before the original Complaint was filed and long before the deadline for pleading amendments in the Pretrial Scheduling Order.

Plaintiffs' own original Complaint in this action shows that Plaintiffs were able to ascertain this information without the help of the so-called "native format" data. Long before any discovery was undertaken in this case, indeed before the Complaint was even filed, Plaintiffs were able to determine the asset allocations of their investments being managed by Defendants. Paragraph 53 of the original Complaint, for instance, alleges that "[a]s of November 11, 2008,

---

[1] Defendants produced this December 2008 Pension Fund statement, along with many others, in the course of discovery. *See* EVERG-0019289-19760. It is worth noting, however, that the document attached as Exhibit G to Plaintiffs' papers on appeal is not Bates numbered, meaning Plaintiffs had it in their possession all along.

the portfolio held only 5% of its assets in U.S. Treasuries, while holding 31% in collateralized mortgage obligations." More broadly, the Complaint alleged that Defendants overweighted non-agency MBS investments in Plaintiffs' portfolios and underweighted corporate bonds. *See* Complaint, at ¶ 29 (Dkt. #1). *See also* Plaintiffs' Objections and Answers to Defendants' First Set of Interrogatories, at pp. 13-20 (served November 18, 2009) (Ex. 2). In other words, even before the original Complaint was filed in February, 2009, Plaintiffs did, in fact, do what they now say was "impossible"; they "determine[d] which specific ... asset classes were being overweighted or underweighted as compared to the benchmark index." Plaintiffs' Memo at 18.

In sum, the evidence submitted to this Court by Plaintiffs and their own original Complaint – along with the evidence submitted by Defendants to Judge Falk - show that Judge Falk's findings supporting the denial of Plaintiffs' request for leave to amend were not clearly erroneous and indeed were well supported by the record evidence.

**B.     Judge Falk Properly Applied the Rule 16 Good Cause Standard in Addressing Plaintiffs' Request for Leave to Amend.**

In their letter to Judge Falk requesting leave to amend, Plaintiffs' counsel took the position that the Pretrial Scheduling Order had "lapsed" and hence the December 31, 2009 deadline for motion to amend was not operative. (Ex. H to Plaintiffs' Appeal). Judge Falk, however, rejected this position, finding that the Pretrial Scheduling Order was "certainly in effect" as of December 31, 2009, even though subsequent electronic discovery disputes had caused the Pretrial Scheduling Order to become "stale." Tr. at 31-32. Accordingly, Judge Falk concluded that, in order to proceed with their request for leave to amend, Plaintiffs first needed to show that "good cause" existed for modification of the December 31, 2009, deadline for motions to amend, as required by Fed. R. Civ. P. 16(b)(4). *Id.* at 31.

In their appeal Plaintiffs claim that Judge Falk erred in applying the Rule 16 good cause requirement. Plaintiffs' Memo at 7-11. Plaintiffs, however, do not challenge Judge Falk's key finding that the Pretrial Scheduling Order was "certainly in effect" as of December 31, 2009, the

deadline for motions to amend. Plaintiffs' Memo at 10 ("plaintiffs do not contend that the current electronic discovery disputes somehow had invalidated the Pretrial Scheduling Order as of December 31.") Accordingly, there seems to be no basis whatsoever for this Court to reject Judge Falk's finding that the Pretrial Scheduling Order was in effect as of December 31, 2009.

Given that the Pretrial Scheduling Order was in effect as of December 31, 2009 – and given that Plaintiffs did not file their motion to amend until long after that date – Fed. R. Civ. P. 16(b)(4) requires on its face that Plaintiffs meet the good cause standard in order to file their motion to amend. Nonetheless, Plaintiffs contend that the good cause standard does not apply because "Defendants delayed producing the necessary holdings information in native form until after the December 31 deadline had lapsed and … they should not benefit from their own dilatory conduct." *Id.* at 10. Plaintiffs add that "[i]t was Defendants' improper delay in producing the requested data in native form – not the parties' current electronic discovery disputes – that made it impossible for Plaintiffs to seek leave to amend the Complaint prior to the deadline set forth in the Pretrial Scheduling Order." *Id.*

The first and most obvious flaw in this argument is that, as explained above, it was not "impossible" for Plaintiffs to ascertain the information that forms the basis of the proposed amended complaint prior to receiving the transactional data in native form. To the contrary, as Judge Falk specifically found, "the information that forms the basis of the amended complaint was certainly available to and in possession of the plaintiffs at the time the original complaint was filed." Tr. at 32.

Second, Plaintiffs' argument is circular. Plaintiffs claim that the Rule 16 good cause standard does not apply because they could not have sought leave to amend prior to the deadline due to the unavailability of the data in native form. But that is exactly what the good cause standard requires. If Plaintiffs could show that with diligence they could not have obtained the information forming the basis of their proposed amendment prior to the deadline, then they may

possibly be able to satisfy the good cause requirement. As Judge Falk found, however, that information in fact was available to Plaintiffs long before the December 31, 2009 deadline.

Finally, to the extent Plaintiffs are claiming that they need not meet a deadline for pleading amendments merely because Defendants produced information after the deadline –even though Plaintiffs had the *same* information in a different format long before the deadline – that position has no support whatsoever in the law. Rule 16(b)(4) provides the standard for modifying a Pretrial Scheduling Order, and that standard plainly is not consistent with Plaintiffs' vague position that Defendants' alleged delay in producing certain discovery invalidated the deadline even though Plaintiffs had the information forming the basis of their proposed amendment long before the deadline passed.

### C.   Regardless Of The Applicability of the Deadline for Motions to Amend in the Pretrial Scheduling Order, Plaintiffs' Request for Leave to Amend Should be Denied Under Rule 15(a).

Even if the deadline for motions to amend in the Pretrial Scheduling Order had never been set, Plaintiffs' request for leave to amend should still be denied based on the standards in Fed. R. Civ. P. 15. Plaintiffs' lengthy and unjustified delay in asserting their new claims challenging Defendants' investment in financial sector corporate bonds – coupled with the resulting prejudice to Defendants if such claims were allowed – justify denial of the motion for leave to amend under Fed. R. Civ. P. 15.

Under Fed. R. Civ. P. 15(a), a court may properly deny leave to amend if the requesting party's delay in seeking an amendment is "undue, motivated by bad faith, or prejudicial to the opposing party." *Adams v. Gould Inc.*, 739 F.2d 858, 864 (3d Cir. 1984). Delay is undue when it places an unwarranted burden on the court or places an unfair burden on the opposing party. *USX Corp v. Banhart*, 395 F.3d 161, 167 (3d Cir. 2004). A court, in determining whether delay is undue, "must… focus on the movant's reasons for not amending

sooner." *Id.* at 168 (citation and quotes omitted). Prejudice requires a court to focus on the hardship to the non-moving party if leave to amend is granted and requires a court to determine whether an amendment would result in "additional discovery, cost, and preparation to defend against new facts or new theories." *Cureton v. National Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).

As discussed at length above, Plaintiffs have unduly delayed in making their request for leave to amend. Plaintiffs delayed requesting leave to amend until eighteen months after their Complaint was originally filed even though they had in their possession all the information that ultimately formed the basis for their proposed amendment. The format of the information is irrelevant. Courts faced with similar situations in which a party had the information or evidence supporting an amendment well in advance of seeking leave under Rule 15 have denied the party's request based on undue delay. *See, e.g., Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (upholding district court's denial of leave to amend where "most of the facts were available…before [plaintiff] filed her original complaint"); *USX Corp.*, 395 F.3d at 169 (determining that denial of leave to amend was not abuse of discretion where facts underlying amendment were known well in advance of plaintiff seeking leave); *Assadourian v. Harb*, No. 06-896, 2008 WL 4056361, at *4 (D.N.J. Aug. 28, 2008)(finding undue delay under Rule 15 when plaintiff had documents that potentially raised the new claim a year prior to seeking leave to amend).

Perhaps more importantly, permitting the Plaintiffs to amend their Complaint would result in severe prejudice to the Defendants. As noted above, Plaintiffs' requested amendment would profoundly change their theory of Defendants' liability in this action by expanding the kinds of securities that are at issue here to include "financial sector" corporate bonds. Moreover,

after claiming in the original Complaint and their discovery responses that Defendants violated their fiduciary duty by *underweighting* corporate bonds in the Funds' portfolios, Plaintiffs now claim that Defendants breached their fiduciary duty by *overweighting* corporate bonds in those portfolios.[2] In the twenty months since the Complaint was filed, Defendants have prepared their defense based on the liability theory alleged in the original Complaint and Plaintiffs' discovery responses. Defendants and their counsel have expended substantial resources preparing their defense to Plaintiffs' claims, working with fact and expert witnesses to develop their litigation strategy.

If Plaintiffs are allowed to amend their Complaint, Defendants would need to revise and supplement the theory of their defense, expending significant additional resources to do so. Preparing a defense to this expanded theory of liability would require both in-depth analysis of the corporate securities that are newly at issue as well as additional analysis of the non-agency MBS in conjunction with those corporate securities. Defendants would also need to consult further with experts, as well as locating and working with a number of potential new fact witnesses. The additional expenditures of both time and money that Defendants would need to

---

[2] Plaintiffs attempt to downplay this flip-flop in their liability theory by claiming a "nuance" between their original theory and that stated in their proposed amended complaint: "although Defendants underweighted 'good' non-financial sector corporate bonds, as alleged in the original Complaint, they also overweighted risky financial sector corporate debt at the very time the financial sector of the economy was facing monumental obstacles." Plaintiffs' Memo at 9, n.2. This "nuance" is meaningless to the issue of whether Defendants will suffer prejudice if the proposed amendment is allowed. Plaintiffs alleged in their original complaint that Defendants underweighted "corporate bonds," without any qualifiers or limitations. For the last twenty months or so, Defendants have relied on that statement in conducting their factual investigation, working with fact and expert witnesses and generally framing their litigation strategy. Now Plaintiffs seek to shift gears and claim that Defendants overweighted certain corporate bonds – a position plainly in conflict with their original theory. If Plaintiffs are permitted to change their theory in this fashion, Defendants will need to go back and re-do a substantial portion of the analytical work they have done in this case. Regardless of the "nuanced" distinction Plaintiffs try to make, the prejudice to Defendants is obvious.

undertake would result in substantial prejudice to the Defendants. The Third Circuit has determined that there was no abuse of discretion when a court found prejudice where newly asserted legal theories would result in "additional costs in preparing for…new theories of liability." *In re Madera*, 586 F.3d 228, 234 (3d Cir. 2009).

Allowing amendment of Plaintiffs' Complaint would also substantially enlarge the contours of discovery in a case where discovery has already consumed an inordinate amount of the parties' time and resources. Plaintiffs' proposed Amended Complaint expands the universe of challenged securities beyond non-agency MBS to include 15 corporate bonds that were issued by 12 different corporations purchased over a 10-month time period in 2007. Plaintiffs have represented that they "do not anticipate that additional requests [for discovery] would be required" if leave to amend is granted. Plaintiffs' Memo at 12. Even in the unlikely event that Plaintiffs do not propound additional discovery requests, Defendants would still be faced with a substantial burden simply to bring discovery up to date in light of the amendments. Defendants will be required to: (i) amend their initial disclosures to identify the persons responsible for purchasing the bonds at issue as well as any documents that Defendants intend to rely upon to defend against Plaintiffs' claims; and (ii) produce these documents in response to Plaintiffs' prior document requests. Defendants have already produced approximately 3.5 million pages of ESI and hard copy documents in this litigation. The parties have only just resolved a number of discovery disputes with the assistance of Judge Falk, and Plaintiffs have expressed an intent to serve even more document requests relating to the securities currently at issue. The Third Circuit has determined that denial of leave to amend is not an abuse of discretion when a court has determined that "amendment would lead to further discovery requests and significant new preparation." *Cureton*, 252 F.3d at 274.

Finally, additional discovery would result in further unwarranted delay in the resolution of this action. Plaintiffs filed their Complaint more than twenty months ago. This action has been bogged down for months in a morass of disputes over electronic discovery and the production of ESI. These discovery disputes will likely mushroom if Plaintiffs are granted leave to amend their Complaint and dramatically expand the types of securities that are at issue in this litigation. This kind of unwarranted delay is another justification for affirming Judge Falk's Order denying Plaintiffs' request for leave to amend.

## V. CONCLUSION

For all of the reasons stated herein, Defendants ask this Court to deny, pursuant to Fed. R. Civ. P. 72 and L. Civ. R. 72, Plaintiffs' appeal of Judge Falk's order denying Plaintiffs' request for leave to amend their complaint.

/s/ Diane A. Bettino
**Diane A. Bettino, Esquire**
**REED SMITH LLP**
**Princeton Forrestal Village**
**136 Main Street, Suite 250**
**Princeton, N.J. 08540**
**Tel. (609) 987-0050**

**Thomas L. Allen, Esquire**
**George M. Linge, Esquire**
**REED SMITH LLP**
**225 Fifth Avenue**
**Pittsburgh, PA 15222**
**Tel. (412) 288-3131**

Dated: November 1, 2010

**Attorneys for Defendants**