

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

**LETTER OPINION**

February 15, 2011

Edward W. Ciolko
Joseph H. Meltzer
Peter Houghton Levan, Jr.
Shannon O. Lack
Tyler Stephen Graden
Barroway Topaz Kessler Meltzer & Check, LLP
280 King of Prussia Road
Radnor, Pennsylvania 19087

Mark Hanna
Murphy Anderson PLLC
1701 K Street, NW  Suite 210
Washington, D.C.  20006
    (*Attorneys for Plaintiff*s)

Diane A. Bettino
Reed Smith, LLP
Princeton Forrestal Village
136 Main Street
Suite 250
Princeton, New Jersey  08540
    (*Attorney for Defendant*s)


    RE:    Trustees of the Local 464A United Food and Commercial Workers
            Union Pension Fund, et al. v. Wachovia Bank, N.A. et al.
            **Civ. No. 09-668 (WJM-MF)**

Dear Counsel:

This matter comes before the Court on Plaintiffs' appeal of Magistrate Judge Falk's October 6, 2010 Order denying Plaintiffs' informal request for leave to file an amended complaint. There was no oral argument. Fed. R. Civ. P. 78. For the reasons that follow, Plaintiffs' appeal is **DENIED**, and Judge Falk's Order denying Plaintiffs' informal request for leave to file an amended complaint is **AFFIRMED.**

## I.   BACKGROUND

This is an Employee Retirement Income Security Act ("ERISA") action brought by union pension funds against their investment managers. Plaintiffs are the trustees of the Local 464A United Food and Commercial Worker Union's pension, retirement, welfare and building funds ("Funds"), as well as the Union itself. Defendants are Wachovia Bank, N.A. ("Wachovia"), Evergreen Investment Management ("Evergreen"), and Tattersall Advisory Group ("Tattersall").[1] The Funds' fixed-income assets were invested in various securities, including non-agency mortgage-backed securities ("MBSs") and collateralized mortgage obligations ("CMOs"). Plaintiffs allege breach of fiduciary duty by Defendants, arising from alleged investment losses suffered in these fixed-income portfolios due to their heavy concentration in the non-agency MBSs and CMOs. (Compl. ¶¶ 52-55.)

On August 4, 2009, the parties submitted a joint discovery plan proposing a December 31, 2009 deadline for amending pleadings. On September 23, 2009, Judge Falk issued a Pretrial Scheduling Order which included a December 31, 2009 deadline for amending the pleadings. No amendment of the complaint was made and the parties continued with discovery efforts. As discovery progressed, multiple discovery disputes led to the Scheduling Order becoming "stale" as the parties could no longer keep up with the deadlines.

On August 11, 2010, Plaintiffs sought leave to file an amended complaint, in order to conform the pleadings to the evidence produced in discovery. On October 5, 2010, Judge Falk held a hearing on multiple issues. Judge Falk stated on the record during the hearing his reasons for denying Plaintiffs leave to amend the complaint, and then issued an Order on October 6, 2010, denying Plaintiffs' request.

## II.   DISCUSSION

---

[1] While Plaintiffs also brought suit against Wells Fargo, this Court granted Wells Fargo's motion to dismiss in July 2009. *See* Docket No. 21.

Plaintiffs request leave to amend their complaint for two reasons: (1) to clarify and provide details about Defendants' imprudent decision to materially alter their investment strategy, and (2) to distinguish between corporate debt generally and financial sector corporate debt specifically. (Pls.' Ap. 8-9.) While the original Complaint challenged Defendants' investments in non-agency MBSs and CMOs, the proposed Amended Complaint also challenges Defendants' 2007 investments in "financial sector" corporate bonds, including bonds of Goldman Sachs, PNC and Bank of America. The Amended Complaint does not include any new parties or any additional causes of action; however, it expands the theory of liability. (Hr'g Tr. at 29-30.) Judge Falk denied Plaintiffs' request for leave to amend, finding that Plaintiffs' request was untimely under the Pretrial Scheduling Order and that Plaintiffs had not demonstrated "good cause" to modify the deadline set in the Scheduling Order as required by Fed. R. Civ. P. 16(b)(4).

In their appeal, Plaintiffs argue the following: (1) Judge Falk erred in applying Rule 16's "good cause" standard governing amendment of pretrial orders as opposed to Rule 15's "prejudice" standard governing amendment of pleadings; (2) Defendants failed to show that the amendment will cause any real prejudice; and (3) Plaintiffs can establish "good cause" for not seeking leave to file an Amended Complaint prior the December 31, 2009 deadline.

### A.     Standard of Review

A district court may reverse a Magistrate Judge's order if it finds the ruling to be clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A). The district court is bound by the clearly erroneous rule as to findings of fact, while the phrase "contrary to law" indicates plenary review as to matters of law. *Haines v. Liggett Group Inc.*, 975 F.2d 81, 91 (3d Cir. 1992). A finding is considered "clearly erroneous" when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). A decision is considered contrary to law if the magistrate judge has "misinterpreted or misapplied applicable law." *Doe v. Hartford Life Acc. Ins. Co.*, 237 F.R.D. 545, 548 (D.N.J. 2006).

### B.     Applicability of Rule 16

Plaintiffs argue that since the Pretrial Scheduling Order is no longer in effect, Judge Falk should not have applied Rule 16's "good cause" standard, which governs requests to amend pleadings once a scheduling order has been entered. *See Eastern Minerals & Chem. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir.2000). Instead, Plaintiffs

maintain that Judge Falk should have applied the regular standard for amending pleadings, which counsels courts to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Judge Falk, however, found that even though subsequent electronic discovery disputes caused the Order to become "stale," the Scheduling Order was "certainly in effect" at the time the December 31, 2009 deadline for amended pleadings lapsed. (Hr'g Tr. at 31-32.) In their appeal, Plaintiffs argue that they were unable to amend the complaint until Defendants produced holdings and transactional data in native format, and that Defendants should not be allowed to benefit from their delay in producing such data.

In this age of electronic discovery, cases are frequently bogged down by disagreements between the parties regarding all the intricate details involved in producing information stored electronically. These disputes often lead to delays, and allowing parties to ignore applicable scheduling deadlines every time this occurs would prevent effective case management. Therefore, so long as a scheduling order is still in effect, parties must adhere to the deadlines or show good cause under Rule 16 for not doing so.

Here, the Court agrees with Judge Falk that simply because electronic discovery disputes caused some delay and ultimately led to the Scheduling Order becoming "stale," does not mean the Scheduling Order was not in effect on December 31, 2009. Judge Falk specifically found that "the information that forms the basis of the amended complaint was certainly available to and in possession of the plaintiffs at the time the original complaint was filed." (Hr'g Tr. at 32.) The fact that Defendants produced more detailed information after the deadline had passed does not make that deadline inapplicable. To the contrary, the entire purpose of Rule 16's "good cause" standard is to determine whether subsequent events, such as the additional information provided by Defendants here, provide good cause for the court to amend the original deadline. Since Plaintiffs have failed to show any valid reason why the Scheduling Order should be ignored, the Court finds that Judge Falk did not err in applying Rule 16 to determine whether or not to allow Plaintiffs to amend that order.

      C.     **<u>Prejudice Under Rule 15</u>**

Despite Judge Falk's holding that Rule 16 applies, Plaintiffs argue that Defendants failed to show, pursuant to Rule 15, that the amendment of the complaint will cause any real prejudice. (Appeal Br. at 11.) Under Rule 15's liberal standard, leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). While the decision to grant leave to amend rests within the discretion of the court, it should only be denied if the requesting party's delay is "undue, motivated by bad faith, or prejudicial to the opposing party." *Adams v. Gould Inc.*, 730 F.2d 858, 864 (3d Cir. 1984). In

determining whether to allow a party to amend a pleading, "prejudice to the non-moving party is the touchstone for the denial of an amendment." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006). Judge Falk, while pointing out that an analysis of the Rule 15 factors is not necessary since Rule 16 applies, found that Defendants have "established that there would be some delay and certainly would require significant additional resources to conduct discovery and prepare for trial." (Hr'g Tr. at 33.)

As stated above, the Court agrees with Judge Falk that Rule 16, not Rule 15, applies here. While Judge Falk states that "Rule 16 is considered often along with the standards of Rule 15," the applicable standard is still Rule 16's good cause standard. (Hr'g Tr. at 31.) Therefore, while the Rule 15 factors entered into Judge Falk's analysis, showing a lack of undue prejudice is not enough for Plaintiffs to prevail under Rule 16. *See Santiago v. McDonald's Rest.s of N.J., Inc.*, Civ. No. 06-2983, 2009 WL 223407, at *3 (D.N.J. Jan. 27, 2009) ("absence of prejudice is not a consideration under the good cause standard"). Plaintiffs' arguments regarding lack of prejudice to Defendants under Rule 15 are only relevant insofar as Judge Falk's finding of prejudice factored into his Rule 16 analysis. As discussed below, regardless of whether Defendants provided evidence of undue prejudice, there is enough other evidence on the record to support Judge Falk's denial of Plaintiffs' motion to amend.

### D.     Good Cause Under Rule 16(b)

Under Rule 16(b), a scheduling order "may be modified only for good cause." Fed. R. Civ. P. 16(b). Such "good cause" exists when the schedule cannot reasonably be met despite the diligence of the party seeking the extension. *Hutchins v. United Parcel Service*, Civ. No. 01-1462, 2005 WL 1793695, at *3 (D.N.J. July 26, 2005). Plaintiffs argue that they established good cause for the amendment, since they did not receive the necessary transactional data from Defendants in the format they requested until after the deadline for amending pleadings. (Appeal Br. at 15-16.)

Judge Falk addressed this argument during the October 5, 2010 hearing, and applied the standard stated in *Hutchins* that requires the movant to "show that despite its diligence, it could not reasonably have met the scheduling order deadline." (Hr'g Tr. at 31.) Based on the evidence presented by the parties, Judge Falk found that "it has been convincingly shown by the defendants that the information that forms the basis of the amended complaint was certainly available to and in the possession of the plaintiffs at the time the original complaint was filed." (Hr'g Tr. at 32.)

While Plaintiffs argue on appeal that the information was not technically available to them until it was presented in native format, Judge Falk considered this argument and

rejected it.  As he pointed out, Plaintiffs had the relevant data, and could have converted it into another format in order to review it more easily.  (Hr'g Tr. at 33.)  Defendants specifically point to the monthly Pension Fund statements Plaintiffs received from Wachovia, which clearly identify the corporate bonds held in the account, as well as the value of each bond.  (Opp. Br. at 9.)  These statements show that Plaintiffs possessed information regarding Defendants' allocation of Plaintiffs' assets to financial sector corporate bonds well before the original Complaint was filed.

Additionally, if Plaintiffs were having difficulty parsing through the financial data, they could have retained an expert to analyze the data.  (*Id.* at 32.)  In fact, as Judge Falk aptly points out, "one could argue, that when you're complaining about investments made by a mutual fund which were all known, that that analysis perhaps should have taken place."  (*Id.*)  While these methods require more work on the part of Plaintiffs, Rule 16's standard requires that the moving party exercise diligence in meeting the set schedule.  The discovery process in a case involving electronic discovery is often rife with disagreements between the parties regarding the proper format, scope, search terms, etc.  The fact that it took Plaintiffs a while to get the holdings and transactional data in the format they preferred does not give them a free pass to delay amending the complaint for months beyond the deadline that had been agreed to in the Scheduling Order.  Finally, since Plaintiffs' proposed Amended Complaint simply adds another category of investments to their allegations, there has been no showing that the particular data at issue was necessary for Plaintiffs to make the proposed changes.  Therefore, Judge Falk's finding that Plaintiffs' failed to show good cause for amending the Scheduling Order was well supported by evidence on the record, and was neither clearly erroneous nor contrary to law.

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs' appeal is **DENIED**, and Judge Falk's Order denying Plaintiffs' request to amend the complaint is **AFFIRMED**.  An order accompanies this Letter Opinion.


　　　　　　　　　　　　　　　　　　　　 s/ William J. Martini
　　　　　　　　　　　　　　　　　　　　**WILLIAM J. MARTINI, U.S.D.J.**